# EXHIBIT 10

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated, | Case No.  CVRI2500253 |
| Plaintiff, | Assigned to the Hon. Eric A. Keen Dept. 6 |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| GAINFUL HEALTH INC., a Delaware corporation, | |
| Defendant. | Complaint Filed: January 15, 2025 Trial Date: None Set |

### **INTRODUCTION**

1.      Defendant Gainful Health Inc. ("Defendant") manufactures and sells a popular whey protein powder nutritional supplement food product under the Gainful brand name with a net weight of 14.8 ounces (420 grams) ("the Product").  To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in oversized packaging that does not reasonably inform consumers that they are buying approximately 40 percent of a pouch significantly full of air.  In short, Defendant dupes consumers into paying extra for empty space.

2.      Several state and federal courts have found that cases involving materially identical claims are actionable and meritorious. *See, e.g.*, *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 975-80 (C.D. Cal. 2024); *Coleman v. Mondelez Int'l Inc.*, Case No. 2:20-cv-08100 (C.D. Cal. July 26, 2021); *Iglesias v. Ferrara Snack Co.*, Case No. 3:17-cv-00849 (N.D. Cal. July 25, 2017); *Gordon v. Tootsie Roll Industries, Inc.*, Case No. 2:17-cv-02664 (C.D. Cal. Oct. 4, 2017); *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826 (C.D. Cal. June 12, 2017); and *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020).

3.      The below pictures illustrate the deceptive nature of the packaging and the substantial non-functional slack fill inside the package.  In summary, actual product only occupies approximately 60% of the exterior space represented by the Product's packaging container purchased by Plaintiff:

 



**PARTIES**

4.      Plaintiff Annette Cody ("Plaintiff") is a resident and a citizen of California.

5.      Defendant is a Delaware corporation that manufactures, distributes, and sells certain food products including the Product addressed herein.

**JURISDICTION AND VENUE**

6.      As a court of general jurisdiction, this Court has jurisdiction over all claims presented to it.

7.      Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."    Defendant distributes the Product through online retailers to consumers nationwide, including in California.   Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California.

8.      Venue is proper in this County pursuant to California Code of Civil Procedure section 395(a).

**FACTUAL BACKGROUND**

9.      While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they felt "duped" or

"misled" by food packaging of items that they have purchased.[1]  The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[2] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[3]

10.    Defendant chose a certain size package for its Product to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

11.    Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

12.    Defendant falsely represents the quantity of product in the Product's package, which is opaque.  That is, Defendant packages the Product in a container that does not allow the consumer to fully view its contents.  The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

13.    Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of product meaningfully different from the size of the package.   Low income consumers, like Plaintiff, are most likely to be misled by slack fill misrepresentations.[4]

---

[1]  https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited Feb. 5, 2025).
[2]  Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/ (last visited November 2023).
[3]  P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).
[4]   https://www.canr.msu.edu/news/americans-pay-attention-to-food-labels-but-are-confused-by-what-information-matters (last accessed Aug. 2024).

14.     Prior to the point of sale, the Product's packaging significantly impairs consumers from confirming the volume of the contents of the Product.  As mentioned above, the Product's packaging, which is opaque, precludes a consumer from observing the contents before opening.   That is, Defendant packages the Product in a container that does not allow the consumer to fully view its contents.   Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of significant quantities of nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

15.     The information that Defendant provides about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size (*i.e.*, volume) of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

16.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Product's packages that would be different from a consumer's expectation that the quantity of product is commensurate with the size of the package.

17.     "[C]omparator products may provide evidence of non-functional slack-fill…."  *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 188 (E.D.N.Y. 2018).   Comparator products have significantly less empty space in similar containers.   For example, one comparator product is the "Blueberry Nut Trail Mix" product branded under Target Corporation's house brand known as "Good & Gather," which is distributed by Target Corporation and sold at Target retail stores (the "Comparator Product").  Like the Product, the Comparator Product is:  (1) a food; and packaged in the same type of pouch type of packaging as used in the packaging of the Product.   The Comparator Product contains approximately 89 percent fill level, which is far greater than the Product's level of fill.  An image of the Comparator Product advertised for sale on Target's grocery store website at:

1

https://www.target.com/p/blueberry-nut-trail-mix-12oz-good-38-gather-8482/-/A-

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17

18

19

20    18.    Another comparator product is the "organic Powdered Sugar" product branded under

21    Albertsons Companies, Inc.'s house brand for Pavilions grocery stores known as "organics," which is

22    distributed by Lucerne Foods, Inc. and sold at Pavilions retail grocery stores (the "Comparator

23    Product") in California.  Like the Product, the Comparator Product is:  (1) a food item; and (2)

24    packaged in a similar type of pouch style of packaging as used in the packaging of the Product.  The

25    Comparator Product contains approximately 86 percent fill level, which is far greater than the

26    Product's level of fill.  An image of the Comparator Product advertised for sale on Pavilions's grocery

27    store website at:  https://www.pavilions.com/shop/product-details.960462035.html (last visited Aug.

28    29, 2024) is as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

21

    19.    In October 2024, Plaintiff purchased the Product, which was purchased as part of a bundle containing two units of the Product, for personal use from a commercial website, amazon.com, at a price of $65.00. Defendant used such amazon.com website as its storefront to advertise and sell the Product.

22
23
24

    20.    The bundle also contained Gainful-branded "Flavor Boost" packets or "sticks" in four different cartons including: (1) Rich Chocolate, (2) Madagascar Vanilla, (3) Strawberry Cream, and (4) Variety Pack flavors. The Variety Pack flavors include Chocolate Peanut Butter, Strawberry Cream,

25
26
27
28

Rich Chocolate, Cookies & Cream, Sea Salt Caramel, Madagascar Vanilla, and Cinnamon Toast.  Each "Flavor Boost" carton contains 7 packets or "sticks".

21.    In making the purchase, Plaintiff relied upon the packaging (depicted on the amazon.com website), which is opaque, including the size of the package, which was designed to encourage consumers like Plaintiff to purchase the Product.  Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Product, or would not have paid a price premium for the Product, had Plaintiff known that the size of the package and product label were false and misleading.

22.    Plaintiff had dual motivations for purchasing the product.  First, Plaintiff is a consumer rights "tester" who creates public benefit by ensuring that companies comply with their obligations under California law.  Second, Plaintiff was genuinely interested in consuming and enjoying the Product, and did so – with disappointment that the package had significant amounts of empty space.

23.    Plaintiff's status as a dual motivation tester is both necessary and appropriate.  First, it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023).  Second, nearly all consumers have dual motives, as there are usually multiple reasons behind their purchasing decisions. *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.).

24.    To be clear, Plaintiff would not have purchased the Product had Plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to Plaintiff's expectations.

25.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

26.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's claim under the Consumers Legal Remedies Act

("CLRA"), Cal. Civil Code § 1750 *et seq.*, is subject to the reasonable consumer test. Plaintiff may be able to prove Plaintiff's claim for fraud while not being able to prove one or more elements of Plaintiff's legal claim under the CLRA seeking damages.

27.     In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

28.     Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

29.     Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's packaging of the Product.

30.     Plaintiff would purchase the Product from Defendant again in the future if Plaintiff could feel sure that Defendant's filling of the Product is accurate and lawful. But, without an injunction, Plaintiff has no realistic way to know whether Defendant's filling of its Product is not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's packaging of the Product in the future, and so Plaintiff cannot purchase the Product even though Plaintiff would like to purchase it.

31.     The injuries of Plaintiff cannot be wholly remedied by monetary relief and such remedies at law are inadequate. While monetary damages would compensate Plaintiff for past harm, monetary damages alone would be insufficient to remedy the ongoing harm experienced by Plaintiff from Defendant's conduct. Monetary damages would not guarantee that Plaintiff would avoid being misled by the deceptive practice of filling of Defendant's containers in the future with non-functional empty space. Plaintiff will continue to be misled. Because retrospective monetary damages will not prevent the future harm only remediable by an injunction ordering Defendant to add a cost effective conspicuous "fill line" to its packaging, injunctive relief is being sought herein.

**<u>None of the Slack-Fill Statutory Exceptions Apply to the Product</u>**

32.     Under California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, "Any food is misbranded if its container is so made, formed, or ***filled*** as to be misleading." *Id.* § 110690 (emphasis added).  Similarly, California's Fair Packaging and Labeling Act ("CFPLA"), Cal. Bus. and Prof. Code § 12601 *et seq.*, provides, "No food containers shall be made, formed, or ***filled*** as to be misleading."  (Cal. Bus. & Prof. Code § 12606.2(b) (emphasis added).)

33.     "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." *Id.* § 12606.2(c). "Slack fill is the difference between the actual capacity of a container and the volume of product contained therein." *Id.*  "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of [enumerated exceptions]." *Id.*

**A.     Cal. Bus. & Prof. Code § 12606.2(c)(1) – Protection of the Contents**

34.     The empty space in the Product's container does not protect the contents of the Product, which is whey protein powder.  There is no risk of the powder breaking or sustaining damage if there was less empty space in the Product's container.

**B.     Cal. Bus. & Prof. Code § 12606.2(c)(2) – Requirements of the Machines**

35.     The machines used for enclosing the contents of the package would not be affected if there was more fill of the Product added. At most, a simple recalibration of the machines would be required.  Plaintiff is informed and believes and thereon alleges that adjusting these machines would be rather simple.  Indeed, comparator products that use the same type of stand-up pouch packaging used for the Product show that it is possible to significantly increase the level of fill in the Product.

36.     Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling in a clear and conspicuous manner to inform consumers of the amount of the Product actually in the package.

37.    In other words, the machines used for enclosing the contents of the package have the capacity to add more content to the containers used to enclose the contents of the Product.

**C.    Cal. Bus. & Prof. Code § 12606.2(c)(3) – Unavoidable Product Settling During Shipping and Handling**

38.    The slack-fill present in the Product's packages is not a result of unavoidable product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

**D.    Cal. Bus. & Prof. Code § 12606.2(c)(4) – Specific Function of Package**

39.    The package of the Product does not perform a specific function that necessitates the slack-fill "such as where packaging plays a role in the preparation or consumption of a food…." (Cal. Bus. & Prof. Code § 12606.2(c)(4).)  The packages of the Product do not perform a specific function inherent to the nature of the food that necessitates the slack-fill.  And, Defendant has failed to clearly communicate to consumers via the Product's packaging or otherwise the need for the package to perform any specific function.

40.    The Product's packaging literally contains no instructions to consumers that they should mix together the Product's whey protein powder with any Flavor Boost within the Product's pouch container.

41.    The Product's rear label provides instructions on how to use the Product as follows:

"**Enjoy your Personalized Protein Powder (plus a tasty Flavor Boost) in a variety of ways:**

**SHAKE**

Mix with 8oz of ice cold milk or plant-based milk in a shaker.  Then, add your desired Flavor Boost and shake vigorously.  For a sweeter, more flavorful shake, try using less liquid."

**BLEND**

Make a nutrient-packed smoothie by blending with 8oz of your favorite beverage, then add

frozen fruit, fresh veggies or nut butter.

**BAKE**

Add a scoop to your favorite baked good recipe to pack a protein punch."

42.    Thus, the Product's instructions on using a Flavor Boost packet or "stick" in combination with the Product's whey protein powder indicate that the Product's powder should be mixed with 8 ounces of ice cold milk or plant-based milk "in a shaker" and then the Flavor Boost packet's contents should be added in such "shaker" and shook vigorously.   In other words, the Product's instructions do not instruct consumers to mix together the contents of any Flavor Boost packet or "stick" into the Product's stand-up pouch container.

43.    Each Flavor Boost packet contains a small amount of Flavor Boost powder, which is approximately the volume of a teaspoon (or slightly less).  Thus, if a hypothetical consumer decided to mix together an individual Flavor Boost packet within the Product's pouch container, then significant headspace at the top of the Product's pouch packaging would be unnecessary to accommodate the contents of a Flavor Boost packet because of the de minimis volume of the contents of each Flavor Boost packet.

**E.    Cal. Bus. & Prof. Code § 12606.2(c)(5) – Reusable Package**

44.    The Product's package is not reusable or of any significant value to the Product independent of its function to hold the Product. The package is intended to be discarded immediately after the Product is consumed.

45.    The Product package is not a durable commemorative package.  The Product's package is not a promotional package.

**F.    Cal. Bus. & Prof. Code § 12606.2(c)(6) – Inability to Increase Fill or Further Reduce Package Size**

46.    The size of the container is not at some minimum package size necessary to accommodate required food labeling exclusive of any nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

47.    Defendant can easily increase the quantity of the Product in each package (or, alternatively, decrease the size of the packages) significantly.

48.    There is no need to use a larger than required container to provide adequate space for the legible presentation of mandatory and necessary labeling information.

**G.    Cal. Bus. & Prof. Code § 12606.2(c)(7)(A) – Visibility of Product's Dimensions Through Exterior Packaging**

49.    The Product's dimensions are not visible through the exterior packaging because the Product's packaging is opaque.

50.    Moreover, paragraph (7) (A) of subdivision (c) of section 12606.2 of the California Business and Professions Code is inconsistent with any of the safe harbors set forth in 21 C.F.R. § 100.100(a).  Thus, this provision is not consistent with the requirements imposed by Section 403(d) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d)), or any regulation promulgated pursuant thereto.  Thus, this provision is not operative because it is not identical to the federal requirements.  (*See* Cal. Bus. & Prof. Code § 12606.2(f)); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1155 (S.D. Cal. 2021) (finding that California's "mode of commerce" safe harbor at Cal. Bus. & Prof. Code § 12606.2(c)(8) was "not operative" because it was inconsistent with both the FDCA and 21 C.F.R. § 100.100); *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 978 (C.D. Cal. 2024) (Vera, J.) ("the actual size exemption in the CLRA is not identical to the federal requirements and is therefore not operative") (citing *Stewart*, 537 F. Supp. 3d at 1154-56).

**H.    Cal. Bus. & Prof. Code § 12606.2(c)(7)(B) – Depiction of Actual Size of the Product**

51.    The actual size of the Product is not clearly and conspicuously depicted on any side of the exterior packaging, excluding the bottom, accompanied by a clear and conspicuous disclosure that the depiction is the "actual size" of the Product.

52.    Moreover, paragraph (7) (B) of subdivision (c) of section 12606.2 of the California Business and Professions Code is inconsistent with any of the safe harbors set forth in 21 C.F.R. § 100.100(a).  Thus, this provision is not consistent with the requirements imposed by Section 403(d) of

FDCA, 21 U.S.C. § 343(d), or any regulation promulgated pursuant thereto. Thus, this provision is not operative because it is not identical to the federal requirements. (*See* Cal. Bus. & Prof. Code § 12606.2(f)); *Stewart*, 537 F. Supp. 3d at 1155 (finding that California's "mode of commerce" safe harbor at Cal. Bus. & Prof. Code § 12606.2(c)(8) was "not operative" because it was inconsistent with both the FDCA and 21 C.F.R. § 100.100); *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d at 978 ("the actual size exemption in the CLRA is not identical to the federal requirements and is therefore not operative") (citing *Stewart*, 537 F. Supp. 3d at 1154-56).

**I.      Cal. Bus. & Prof. Code § 12606.2(c)(7)(C) – Fill Line**

53.      A line or a graphic that represents the Product and a statement communicating that the line or a graphic represents the Product such as "Fill Line" are not clearly and conspicuously depicted on exterior packaging of the Product.

**J.      Cal. Bus. & Prof. Code § 12606.2(c)(8) – Mode of Commerce**

54.      The mode of commerce allows the consumer to view or handle the physical container or product. In particular, the website at amazon.com allows the consumer to view the physical container or product.

**K.      The Operative Slack-Fill Safe Harbor Provisions Do Not Apply Here.**

55.      Because none of the safe harbor provisions in the CFPLA that are operative because they are consistent with the FDCA apply to the Product's container or packaging, the container contains nonfunctional slack-fill in violation of section 110690 of the California Health and Safety Code and section 12606.2 of the California Business and Professions Code, and are, therefore, misleading as a matter of law.

56.      Defendant's false, deceptive, and misleading filling of the Product containers is unlawful under state consumer protection and packaging laws.

57.      Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

**CLASS ACTION ALLEGATIONS**

58.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within the state of California who purchased the Product containing nonfunctional slack-fill from a retailer within the statute of limitations period and whose rights were violated as described above.**

59.     <u>NUMEROSITY</u>: Plaintiff does not know the number of Class members but believes the number to be in the tens of thousands, at minimum. The exact identities of Class members may be ascertained by the records maintained by Defendant or California retailers.

60.     <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

a.     Whether Defendant engaged in the wrongful conduct described above;

b.     Whether Plaintiff and Class members are entitled to actual damages in the form of a price premium to be calculated on a classwide basis; and

c.     Whether Class members are entitled to injunctive relief.

61.     <u>TYPICALITY</u>: As a person located in California who purchased the Product from a retailer, who was misled by the size of the Product's container, Plaintiff is asserting claims that are typical of the Class.

62.     <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

63.     <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient.  Even

if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### COMMON LAW FRAUD

64.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

65.     The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage.  *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

66.     Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

    a.  **Who**: The false or misleading representations were made by the Defendant and the individuals employed by Defendant who make packaging and labeling decisions.

    b.  **What**: The false or misleading representation was the filling of the Product in an oversized container, which implied to the reasonable consumer that the container had more whey protein powder than it actually contained.

    c.  **When**: The false or misleading representation has been made continuously through the statute of limitations period, as it is made each time a package is sold – including when Plaintiff purchased the Product in October 2024.

    d.  **Where**: The false or misleading representation was made on Defendant's packaging of the Product sold at retailers in California including online retailers including amazon.com at which Plaintiff purchased the Product.

    e.  **Why**: Defendant made the false or misleading representation to induce consumers to purchase the Product, to cause them to pay more for the Product, and to take market share and profits from its competitors.

67.    **Knowledge**: Defendant knows that the Product's packaging has significant quantities of nonfunctional slack-fill or empty space, knows that consumers are influenced by the size and volume of the Product container to purchase the Product, knows that consumers believe that it is full, and knows that it is deceiving consumers.

68.    **Intent to defraud**: Defendant intends for consumers to purchase the Product under the mistaken belief that the package is full so that Defendant can capture sales it would not have otherwise received and can increase profits.

69.    **Justifiable reliance**: Plaintiff's reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size.

70.    **Resulting damage**: Plaintiff was damaged by paying more for the Product than Plaintiff would have paid and receiving less Product than Plaintiff expected to receive.  To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the Product) and was damaged by that change of position (by receiving less than Plaintiff paid for and reasonably expected to receive).

## <u>SECOND CAUSE OF ACTION</u>

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### CALIFORNIA CIVIL CODE § 1750, *et seq.*

71.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

72.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

73.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(5) and 1770(a)(9) of the CLRA by: (1) representing the Product has characteristics or quantities that it does not have; and (2) advertising and packaging the Product with intent not to sell it as advertised and packaged.

74.    Defendant deceived Plaintiff by filling the Product's packaging, which includes significant nonfunctional slack-fill, in a misleading manner contrary to California slack-fill statutes including the Sherman Law and the CFPLA.

75.    Defendant packaged the Product in packages that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and all consumers.

76.    Defendant deceived Plaintiff by misrepresenting the Product as having characteristics and quantities that it does not have, *e.g.*, that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

77.    Defendant knew that the Product's packaging was misleading and deceptive.

78.    Defendant's packaging of the Product was a material factor in Plaintiff's decision to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff reasonably believed that Plaintiff would receive more product than actually received. Had Plaintiff known the truth of the matter, Plaintiff would have not have purchased the Product.

79.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's deceptive, unfair, and unlawful conduct. Specifically, Plaintiff paid for Product never received.

80.    On or about December 10, 2024, Plaintiff sent a letter notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct, repair, replace, or provide another appropriate remedy of the violations to the putative class. The notice was in writing and sent by certified mail, return receipt requested to Defendant's state of New York mailing address because Defendant has no principal place of business in California. Defendant's website identifies such mailing address on the bottom footer of its website at https://www.gainful.com.

81.    More than 30 days have elapsed since Plaintiff sent such demand letter to Defendant, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

82.    In addition, Plaintiff filed the original Complaint in this action on January 15, 2025, which provided a specific description of Defendant's wrongdoing in violation of the CLRA, and expressed Plaintiff's intention to amend the Complaint to assert claims on behalf of a putative class if

Defendant failed to take all appropriate remedial measures. Plaintiff served the original Complaint on February 1, 2025 via substituted service. More than 30 days have elapsed since Defendant was served with the original Complaint, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

83.    Plaintiff seeks injunctive relief, actual damages, statutory damages, and punitive damages under the CLRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief on all causes of action as follows:

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

B.    For all available legal, equitable, and declaratory relief;

C.    An order enjoining Defendant from continuing to package and/or label the Product as challenged herein;

D.    Actual, statutory, and punitive damages;

E.    Reasonable attorneys' fees and costs; and

F.    All other relief at law or in equity that may be just and proper.

Dated: May 2, 2025                         PACIFIC TRIAL ATTORNEYS, APC

                                          By:_____
                                          Scott J. Ferrell
                                          Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On May 2, 2025, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY FEDERAL EXPRESS OVERNIGHT) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document to be delivered by hand to the addressee(s) designated.

☒ (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email or electronic transmission via USA Legal sent on the date shown below to the email addresses of the persons listed in the attached service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on May 2, 2025, at Newport Beach, California.

_____
Mandy K. Jung

FIRST AMENDED CLASS ACTION COMPLAINT

**SERVICE LIST**

Jacob M. Harper, Esq.                          Attorneys for Defendant
Peter K. Bae, Esq.                             GAINFUL HEALTH INC.
Daniel Imakyure, Esq.
Davis Wright Tremaine LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Email: jacobharper@dwt.com
Email: peterbae@dwt.com
Email: danielimakyure@dwt.com

FIRST AMENDED COMPLAINT