JACOB M. HARPER (State Bar No. 259463)
  jharper@dwt.com
KATELYN A. FELICIANO (State Bar No. 350385)
  katelynfeliciano@dwt.com
DANIEL IMAKYURE (State Bar No. 356869)
  danielimakyure@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant Gainful Health Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY,<br><br>                        Plaintiff,<br><br>    vs.<br><br>GAINFUL HEALTH INC., a Delaware company,<br><br>                        Defendant. | Case No. 5:25-cv-01373 KK (SPx)<br><br>**DEFENDANT GAINFUL HEALTH INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[*Request for Judicial Notice, Declaration of Daniel Imakyure, and Proposed Order filed concurrently*]<br><br>Dept.:          Courtroom 3<br>Date:           November 20, 2025<br>Time:           9:30 AM<br><br>Action Filed:    January 15, 2025<br>FAC Filed:       May 2, 2025<br>Action Removed: May 30, 2025<br>SAC Filed:       August 29, 2025 |

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 20, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the above-titled Court, located at 3470 12th Street, 3rd Floor, Courtroom 3, Riverside, CA 92501, Defendant Gainful Health Inc. (Gainful) will and hereby does move this Court for an order dismissing Plaintiff Annette Cody's (Cody) Second Amended Complaint (SAC), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), with prejudice.

Ms. Cody asserts causes of action for common law fraud; and violations of the Consumer Legal Remedies Act (CLRA), Cal. Civil Code § 1750, *et seq.*; False Advertising Law (FAL), Business and Professions Code § 17500, *et seq.*; and Unfair Competition Law (UCL), Business and Professions Code § 17200, *et seq*. The Motion is made on the grounds that (A) Ms. Cody cannot a claim because she (1) has not alleged her common law fraud and fraud-based consumer deception claims, as she (a) fails to plead with particularity under Rule 9(b); (b) cannot plausibly plead justifiable reliance; and (c) does not plausibly plead misrepresentation or intent, as required for her common law fraud claim. Additionally, Ms. Cody failed to plausibly state her claims under the UCL, FAL, and CLRA because she fails to plead: (2) "non-functional slack-fill," which forms the gravamen of her claims; and (3) that a "significant portion" of reasonable consumers would adopt her unsupported interpretation.  (B) Ms. Cody lacks standing for requested injunctive relief.  (C) Ms. Cody lacks standing to pursue claims for products she did not purchase.

Gainful's Motion is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice, Declaration of Daniel Imakyure, and [Proposed] Order; all matters of which the Court may take judicial notice; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on Gainful's Motion.

1

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 8, 2025, as detailed in paragraph 7 of the concurrently filed Declaration of Daniel Imakyure.

Dated: September 12, 2025        DAVIS WRIGHT TREMAINE LLP
By: /s/ Jacob M. Harper
        Jacob M. Harper

*Attorneys for Defendant*
*Gainful Health Inc.*

GAINFUL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND.............................................................. 2

    A.    Gainful Discloses Protein Quantity on Labeling and Advertising...... 2

    B.    This Is One of Ms. Cody's Many Search-and-Sue Lawsuits. .............. 3

    C.    Mr. Ferrell Sends a Demand Based on "Gainful Whey Package
        Protein."............................................................................................ 5

    D.    Ms. Cody Sues Based on Unidentified "Protein Powder" and
        Amends Identifying Contradictory Products....................................... 5

III.  THE SAC SHOULD BE DISMISSED WITHOUT LEAVE TO
     AMEND. ....................................................................................... 7

    A.    Ms. Cody's Fails to State Her Claims. ............................................... 7

        1.    Fraud-Based Claims Are Subject to Dismissal.......................... 7

            a.    Ms. Cody Fails to Plead Fraud with Particularity. .......... 7

            b.    Ms. Cody Has Not and Cannot Allege Reliance. ............. 9

                (1)    No Plausible or Particularized Allegations of
                      Reliance. .............................................................. 10

                (2)    Litigation History Precludes Plausible
                      Reliance. .............................................................. 10

            c.    Ms. Cody's Fraud Claim Fails for Additional
                Reasons. ....................................................................... 11

                (1)    No Misrepresentation or Actionable
                      Omission................................................................ 12

                (2)    No Intent. ............................................................. 13

         2.    Ms. Cody Fails to Allege "Nonfunctional Slack-Fill.".......... 13

        3.    Ms. Cody Fails to Meet the Reasonable Consumer
            Standard...................................................................... 15

    B.    Ms. Cody Lacks Standing for Injunctive Relief................................ 17

    C.    Ms. Cody Cannot State Claims for Unpurchased Products. ............. 18

IV.   CONCLUSION................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliya Medcare Fin., LLC v. Nickell*,
    156 F. Supp. 3d 1105 (C.D. Cal. 2015) ................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................. 10

*Bradford v. Hernandez*,
    2019 WL 4383948 (C.D. Cal. Jan. 16, 2019) ....................... 18

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156 (2018) ..................................... 16

*Bush v. Mondelez Int'l*,
    2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ....................... 12

*Buso v. ACH Food Co.'s, Inc.*,
    445 F. Supp. 3d 1033 (S.D. Cal. Apr. 20, 2020) ............ 12, 14, 16

*Buso v. Vigo Importing Co.*,
    2018 WL 6191390 (S.D. Cal. Nov. 28, 2018) ..................... 16

*Byars v. Hot Topic, Inc.*,
    656 F. Supp. 3d 1051 (C.D. Cal. 2023) ........................... 1, 4

*Byars v. Sterling Jewelers, Inc.*,
    2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ..................... 5, 10

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .....................................8

*Cantu v. Gen. Mills, Inc.*,
    2025 WL 942609 (C.D. Cal. Mar. 21, 2025).................... *passim*

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ......................... 10, 11

*Cody v. FullBeauty Brands, Inc.*,
    No. 25-cv-01334-KK-SHK, ECF No. 24 ....................... 11

*Cody v. Ring LLC*,
    No. 23-562 (C.D. Cal. filed Feb. 8, 2023) .........................4

*Coldwell Banker Residential Brokerage Co. v. Sup. Ct.*,
    117 Cal. App. 4th 158 (2004) ..................................... 13

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ......................... 12, 15

*Davidson v. Kimberly-Clark Corp.*,
 889 F.3d 956 (9th Cir. 2018) ................................................ 17, 18

*Diaz v. Fed. Express Corp.*,
 373 F. Supp. 2d 1034 (C.D. Cal. 2005) ........................................ 11

*Ebner v. Fresh, Inc.*,
 838 F.3d 958 (9th Cir. 2016) ................................................ 15, 16

*Forouzesh v. Starbucks Corp.*,
 714 F. App'x 776 (9th Cir. 2018) ..............................................9

*Game v. Zero Day Nutrition Co.*,
 2023 U.S. Dist. LEXIS 78442 (C.D. Cal. May 3, 2023) ...................... 17

*Gonzales v. Natural Food Nutritional Prods., Inc.*,
 2024 WL 4609853 (C.D. Cal. June 28, 2024) ............................... 19

*Hayde v. Arcadia Consumer Healthcare Inc.*,
 2025 WL 1386779 (C.D. Cal. Mar. 28, 2025) ............................... 19

*Hodsdon v. Mars, Inc.*,
 891 F.3d 857 (9th Cir. 2018) ................................................ 12, 13

*Jackson v. Gen. Mills, Inc.*,
 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ............................... 14, 18

*Khan v. CitiMortgage, Inc.*,
 975 F. Supp. 2d 1127 (E.D. Cal. 2013) ........................................7

*Licea v. Caraway Home Inc.*,
 655 F. Supp. 3d 954 (C.D. Cal. 2023) .........................................4

*Lorentzen v. The Kroger Co.*,
 532 F. Supp. 3d 901 (C.D. Cal. 2021) ........................................ 18

*Martin v. Sephora USA, Inc.*,
 2023 WL 2717636, n.7 (E.D. Cal. Mar. 20, 2023), *R&R adopted*, 2023
 WL 3061957 (E.D. Cal. Apr. 24, 2024) ...................................... 5, 11

*Martinez-Leander v. Wellnx Life Scis., Inc.*,
 2017 WL 2616918 (C.D. Cal. Mar. 6, 2017)................................... 14

*Miao Xin Hu v. Iovate Health Scis. U.S.A. Inc.*,
 2018 WL 4954105 (S.D.N.Y. Oct. 12, 2018)................................... 17

*Oh v. Fresh Bellies, Inc.*,
 2024 WL 4500727 (C.D. Cal. Oct. 15, 2024)................................. 19

*Park v. Welch Foods, Inc.*,
 2013 WL 5405318 (N.D. Cal. Sept. 26, 2013) ............................... 15

*Reider v. Immaculate Baking Co.*,
 2018 WL 6930890 (C.D. Cal. Nov. 8, 2018)................................. 16

iii

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ........................................................ 10

*Shaeffer v. Califia Farms, LLC*,
  44 Cal. App. 5th 1125 (2020) .........................................................9

*Sheibe v. Esupplements LLC*,
  681 F. Supp. 3d 1101 (C.D. Cal. Feb. 13, 2023) .............................. 10

*Stevens v. Britax Child Safety, Inc.*,
  2021 WL 4706702 (C.D. Cal. July 13, 2021).....................................9

*Stewart v. Kodiak Cakes, LLC*,
  537 F. Supp. 3d 1103 (S.D. Cal. 2021).............................................. 18

*Tarvin v. Olly Pub. Benefit Corp.*,
  2024 WL 4866271 (C.D. Cal. Nov. 12, 2024)..................................... 12

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
  745 F. Supp. 3d 869 (N.D. Cal. 2024) .............................................. 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................ 11

*Victor v. R.C. Bigelow, Inc.*,
  2014 WL 1028881 (N.D. Cal. Mar. 14, 2014)..................................... 14

*Wilson v. Frito-Lay N. Am., Inc.*,
  2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) .......................................9

**Statutes**

Cal. Bus. & Prof. Code
  § 12606.2(b) ................................................................................ 13
  § 12606.2(c) ................................................................................ 14
  § 12606.2(d) ................................................................................ 13

California Consumers Legal Remedies Act....................................... *passim*

False Advertising Law ............................................... 2, 6, 13, 15

Unfair Competition Law ............................................................. *passim*

**Rules**

Fed. R. Civ. P. 9(b) ................................................................. 2, 7, 9, 10

**Constitutional Provisions**

U.S. Const. art. III ...................................................................... 17

# I.    INTRODUCTION

Plaintiff Annette Cody and her counsel Scott Ferrell are serial litigants who together have filed dozens of copy-and-paste class action complaints in this Court and others.  This action is yet another, and one of *27* nearly identical "slack fill" actions Ms. Cody and her counsel recently filed, in which Ms. Cody claims that various products' packaging deceived her into believing she was purchasing more product than the packaging contained.  But she does not (and cannot) dispute that Gainful Health Inc. (Gainful) discloses its protein content and yield—on its labels, its website, and the Amazon listing from which Ms. Cody now claims she purchased the product.  Despite two amendments, Ms. Cody's Second Amended Complaint (SAC) still fails.

Ms. Cody's litigation history provides relevant context here, as it not only explains the defects in her pleadings, but also precludes her from plausibly stating her claims.  This lawsuit is just the latest in a string of fill-in-the-blank class actions Ms. Cody and Mr. Ferrell have filed, apparently to extract nuisance settlements.  As Judge Bernal observed when dismissing one of Mr. Ferrell's last wave of complaints (there, asserting privacy claims), "the central dynamic in this litigation, underscoring all deficiencies in the FAC" is "Scott Ferrell" and his clients, who "are serial litigants bringing numerous 'cookie cutter' lawsuits," with "the goal … to file as many lawsuits as possible in the least amount of time" apparently with hope defendants will "offer quick cash settlement."  *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060-61 (C.D. Cal. 2023).

Here, in their rush to file as many slack-fill claims as possible, Ms. Cody and her counsel have not consistently identified the Gainful product she allegedly purchased or where she purchased it from—calling into question exactly what representations Ms. Cody relied upon.  In fact, of their nearly three dozen slack-fill claims together, 15 of them pre-date Ms. Cody's purchase here, which undermines the plausibility that Ms. Cody relied the same type of "misrepresentation" she's

sued over again and again.  The Central District recently dismissed an identical slack-fill claim brought by Mr. Ferrell because the plaintiff "wavered with respect to key details regarding the specific variety of the [product] purchased"—as Ms. Cody does here—and thereby failed to even plead what product was issue and how it was misleading .  *See Cantu v. Gen. Mills, Inc.*, 2025 WL 942609 (C.D. Cal. Mar. 21, 2025).  The SAC suffers the same and many more defects.

*First*, Ms. Cody fails to state any of her claims.  (A) Her common law fraud and fraud-based claims under the California's Consumers Legal Remedies Act (CLRA), False Advertising Law (FAL), Unfair Competition Law (UCL) fail because she (1) does not plead with particularity the "what," "where," and "how" of her fraud allegations under Rule 9(b); (2) she cannot plausibly plead justifiable reliance; and (3) she fails to allege a misrepresentation or omission and intent, as required to state a common law fraud claim.  (B) She offers only conclusory allegations that the empty space in Gainful's products is "nonfunctional" in support of her statutory slack fill claims.  (C) Ms. Cody cannot show a "significant portion" of reasonable consumers would believe the protein products contain more powder than labeled or advertised to state her consumer deception claims.

*Second*, Ms. Cody lacks standing to request injunctive relief because she cannot plausibly plead she would be injured in the future.

*Third*, Ms. Cody cannot bring claims premised on products she did not purchase.

The Court should dismiss the SAC with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Gainful Discloses Protein Quantity on Labeling and Advertising.

Gainful sells health supplements, including protein powder.  (Declaration of Daniel Imakyure (Imakyure Decl.), Ex. F (FAC) ¶ 1.)  Gainful's line of Customized Protein, available only on Gainful's website until July 2025, allowed customers to select from four types of protein (Whey, Plant/Vegan, Low Lactose Whey, and

Ketogenic) and four goals (Build Muscle, Lose Weight, Gain Weight, Get Lean), constituting 16 available products. (Request for Judicial Notice (RJN), Ex. B (Gainful Website) at 1.) Customers then selected a size option of 14, 28, or 42 servings and added the protein to their cart, which again displayed the quantity selected. (*Id*.) The protein powder shipped in bags displaying net weight (420 grams/14.8 oz) on its label. (RJN, Ex. A (Label) at 1.) Each label disclosed the number of servings in each bag— "14 servings" of "30g" scoops per bag, reflecting the quantity selected by the customer. (*Id*. at 2.) Gainful's label directed customers to "[a]dd one scoop [of protein] to 8 oz of cold milk or plant-milk in a shaker." (*Id*.)

Gainful also sold a Whey Protein Bundle (Bundle) on Amazon, listed as "Gainful Whey Protein Powder [fitness goal type] Bundle, Meal Replacement, Post Workout Support, Whey Isolate + Concentrate, Unflavored w/Chocolate, Vanilla, Strawberry & Variety Pack Flavor Boosts, 28 Servings." (RJN, Ex. C (Amazon Listing) at 1; SAC ¶ 1.) The Bundle came in seven variants—Build Muscle, Collagen, Everyday, Get Lean, Isolate, Lean, and Performance. (Ex. C at 1.) Both the product name and description disclosed the quantity as "28 servings" (*id.*), and the listing depicted package labeling of "420g" and "14.8 oz" (*id*. at 10), and "14 servings per container" of "1 scoop (30g)" servings on the Nutrition Facts Label. (*Id*. at 16.) Customers added the Bundle to their Amazon cart, which reflected a description "28 servings" before completing the purchase. (*Id*. at 18.) The Amazon protein powder is distinguishable from the Customized Protein only available via Gainful.com by its plain front "GAINFUL" labeling—whereas the Amazon Bundle is labeled, e.g., "GAINFUL Whey Isolate Protein for Getting Lean." (*Compare* Ex. A at 1 *with* Ex. C at 1, 10.)

**B.    This Is One of Ms. Cody's Many Search-and-Sue Lawsuits.**

Before addressing Ms. Cody's defective SAC, context matters. Ms. Cody and her long-time counsel, Mr. Ferrell, have made a business of filing copy-and-

paste lawsuits in an apparent effort to "extract" unwarranted nuisance settlements. *See Hot Topic*, 656 F. Supp. 3d at 1059–61 ("Scott Ferrell [and his client] are serial litigants bringing numerous 'cookie cutter' lawsuits").

Over the past year, Mr. Ferrell has filed at least ***208*** similar "slack-fill" cases against various defendants using serial plaintiffs (Imakyure Decl., Ex. H at 2–5)—at least ***27*** of which name Ms. Cody as a plaintiff (*id.* at 1). In the previous round of nuisance lawsuits, Mr. Ferrell inundated California courts with hundreds of copy-and-paste class actions alleging violations of California's Invasion of Privacy Act (CIPA), in dozens of which Ms. Cody served as a named plaintiff. (*Id.* at 2–5.) In those actions, Ms. Cody explicitly described herself—as she does here—as a "consumer privacy advocate" and "tester" of websites to check if they purported violated CIPA. *E.g.*, *Cody v. Ring LLC*, No. 23-562 (C.D. Cal. filed Feb. 8, 2023) (ECF No. 1 ¶ 16 & n.3.) Courts, however, became wise to Mr. Ferrell and his serial plaintiffs' search-and-sue practices, dismissing in opinions worth excerpting here:

> Ferrell [and his client] are serial litigants bringing numerous 'cookie cutter' lawsuits. … Mr. Ferrell appears to work with multiple 'tester' plaintiffs to drum up these lawsuits[.] … [W]hen the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. … surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far.

*Byars*, 656 F. Supp. 3d at 1059–61 (Bernal, J.); *accord Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023).

Ms. Cody filed 15 of her 27 near-identical slack-fill lawsuits ***prior to making her alleged purchase in this action***—in those actions, she claims she was deceived by the size of various food packaging *before* she purchased Gainful's products and purportedly deceived by the same scheme here. (Imakyure Decl. Ex. H at 1.)

Courts have advised Mr. Ferrell that his plaintiffs' status as serial litigants (like Ms. Cody) undermine the plausibility of their claims: "the undisputed fact that

she filed numerous similar lawsuits before visiting Defendant's website casts doubt on any suggestion that she was surprised by surreptitious recording of her information.  To the contrary, it appears … Plaintiff visited Defendant's website looking for chat features that would track her conversations so that she could allege statutory violations." *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 n.4 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, S.); *accord Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *8 n.7 (E.D. Cal. Mar. 20, 2023), *R&R adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2024) ("observations of this fact [were] not irrelevant to the Court's plausibility analysis").  Mr. Ferrell continues with this new wave of class actions (among others).

### C.   Mr. Ferrell Sends a Demand Based on "Gainful Whey Package Protein."

On December 10, 2024, Mr. Ferrell sent Gainful a one-page demand letter alleging his unnamed "client recently purchased a package of Gainful Whey Package Protein and later learned that the package was over 50% empty." (Imakyure Decl., Ex. D (Letter) at 1.)  He concluded "the slack fill serves no functional purpose exempted by any statutory safe harbor" in violation of the CLRA.  (*Id*.)  On these threadbare allegations, he demanded Gainful cease selling the unidentified products and "refund the purchase price" of sales in the "class period."  (*Id*.)

### D.   Ms. Cody Sues Based on Unidentified "Protein Powder" and Amends Identifying Contradictory Products.

On January 15, 2025, Mr. Ferrell filed Ms. Cody's "individual action," (Imakyure Decl., Ex. E (Compl.) ¶ 32) alleging she purchased an unspecified "protein powder" from Gainful, which led her to believe she should have received more powder than indicated or that she chose to purchase.  (*Id*. ¶ 1.)  The complaint provided only low-resolution images of Gainful's Customized Protein, sold exclusively on Gainful's website.  (*Id*. ¶ 3.)  Despite the packaging's disclosures of

net weight, grams of protein, serving size, and yield, she claimed she understood
"the amount of product contained therein [to be] commensurate with the size of the
package." (*Id*. ¶ 4.) She alleged causes of action for common law fraud and
violation of the CLRA. (*Id.* ¶¶ 33–47.)

On April 11, 2025, the parties' counsel conferred by videoconference. Ms.
Cody's attorney first identified the product purchased as Gainful's "Personalized
Protein," before claiming she purchased a different "Gainful Whey Protein Powder
Get Lean Bundle, Meal Replacement, Post Workout Support, Whey Isolate +
Concentrate, Unflavored" product from Amazon. (Imakyure Decl. ¶ 7.) Gainful's
lawyers provided a hyperlink to the Customized Protein sold on Gainful's website,
and Ms. Cody's counsel confirmed it was the product she purchased. (*Id*. (citing
https://www.gainful.com/products/customized-protein).) Her attorney also admitted
the product purchased was "14.8 oz. net weight." (*Id*.)

On May 2, 2025, Ms. Cody filed her FAC, alleging for the first time she
purchased the product at issue from Amazon. (FAC ¶ 19.) Despite this new
allegation, the FAC included images of Gainful's Customized Protein sold only on
Gainful's website. (*Id*. ¶ 3.) Rather than identify a specific product, Ms. Cody
made only a vague weight reference to the product at issue. (*Id*. ¶ 1.) The FAC
also now purported to satisfy CLRA *pre-litigation* notice requirements because
"[m]ore than 30 days [had] elapsed since Defendant was served with the original
Complaint[.]" (*Id*. ¶ 82.) The FAC now sought relief on behalf of a proposed class.
(*Id.* ¶¶ 59–63.)

On May 30, 2025, Gainful removed the action to this Court (ECF No. 1) and
moved to dismiss on June 6, 2025 (ECF No. 11). On August 15, 2025, the Court
dismissed the FAC with leave to amend following Ms. Cody's failure to oppose the
motion to dismiss. (ECF No. 13.) On August 29, 2025, Ms. Cody filed her SAC
(ECF No. 14), now asserting additional causes of action under the UCL and FAL.
Ms. Cody claims for the first time she purchased a "Build Muscle" bundle from

Amazon and premises her claims on that purchase. (SAC ¶ 1, Ex. 4.) Yet the SAC still provides images of the Customized Protein only available on Gainful.com. (*Id*., Exs. 1, 2.)

This Motion to Dismiss timely follows.

## III. THE SAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

Dismissal of the SAC with prejudice is warranted. (A) Ms. Cody fails to state her claims on multiple grounds: (1) her fraud-based claims fails because she (a) does not plead the "what," "where," and "how" of the alleged fraud with particularity, (b) fails to plead facts necessary to show justifiable reliance, and (c) fails to adequately allege misrepresentation and intent; (2) she only alleges conclusory allegations in support of non-functional slack fill statutory claims; (3) she does not and cannot plead a reasonable consumer would be deceived by Gainful's packaging and label. (B) Her claim for injunctive relief fails because she cannot plausibly be deceived by the packaging in the future. (C) Dismissal is also warranted for Ms. Cody's claims premised on products she did not purchase as she lacks standing to assert those claims.

### A. Ms. Cody's Fails to State Her Claims.

#### 1. Fraud-Based Claims Are Subject to Dismissal.

Ms. Cody's common law fraud and consumer deception claims are subject to dismissal because (a) the copy-and-paste SAC does not satisfy Rule 9(b)'s particularity requirements; (b) Ms. Cody cannot allege reliance required to state her claims; and (c) Ms. Cody fails to allege misrepresentation or intent.

##### a. Ms. Cody Fails to Plead Fraud with Particularity.

Ms. Cody's claims fails under Rule 9(b). "[C]laims for fraud … must meet Rule 9(b)'s particularity requirements." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1139 (E.D. Cal. 2013); *Cantu*, 2025 WL 942609, at *4 (particularity requirements apply to CLRA). Ms. Cody must identify the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or

misleading about" it, and "why it is false."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  She fails to do so.

Ms. Cody fails to plead with particularity the "what," "where," and "how" of her fraud claims.

Following *two* amendments, Ms. Cody cannot decide exactly what product she purchased and on what website.  Ms. Cody's CLRA demand letter alleged an unnamed client "purchased a package of Gainful Whey Package Protein." (Imakyure Decl., Ex. D.)  Her complaint alleged Ms. Cody purchased an unidentified "protein powder" from Gainful while depicting images of Gainful's Customized Protein, sold exclusively on Gainful's website.  (Compl. ¶¶ 1, 3.)  Upon conferring on the complaint, Ms. Cody's counsel first identified the "Gainful Whey Protein Powder Get Lean Bundle, Meal Replacement, Post Workout Support, Whey Isolate + Concentrate, Unflavored" product *from Amazon*, but then claimed she purchased the "Customized Protein" sold on *Gainful's website*.  (Imakyure Decl. ¶ 7.)  The FAC then alleged for the first time the purchase occurred on Amazon, despite still retaining images of the Customized Protein from Gainful website. (FAC ¶¶ 1, 3.)  At last, the SAC identified Gainful's "Build Muscle" bundle sold on Amazon, but yet again, retained images of the "Customized Protein" sold on Gainful's website.  (SAC ¶ 1, Ex. 2.)

Ms. Cody "has wavered with respect to key details regarding the specific variety [of Gainful's protein products] [s]he purchased and the packaging that it came within; [and] as mentioned, *supra*, the images included within the FAC [and SAC] are inconsistent with the description of" product in the complaints.  *Cantu*, 2025 WL 942609, at *4.  The discrepancy between Ms. Cody's allegations regarding the product purchased and the product she depicts also raises issues with whether it was purchased on Amazon or Gainful's website.  Given these contradictory allegations over Ms. Cody's three complaints, Ms. Cody fails to allege with particularity the "where" and "what" of her purchase "in a way sufficient for

GAINFUL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

[Gainful] to be on notice of the products [and representations] that are actually at issue." *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013) (dismissing mislabeling claim for failure to meet Rule 8 and 9(b) where plaintiff failed to "provide details about th[e] products, or about the advertisements and websites they frequently quote to support their claims").

Absent particular facts as to which product on what website is at issue, Ms. Cody also fails to allege "how" the products were misleading. Gainful and Amazon's websites present the weight and yield in different manners and at different points in the purchase transaction. (*Compare* RJN, Ex. B (Gainful's website requires purchaser to select product weight before purchase) *with* RJN, Ex. C (Amazon's product name and description lists the product net weight).) Ms. Cody "contends that the allegation of the misrepresentation is to the size itself" and that answers "how" the product is misleading, but she does not specify "how what the [product] ultimately yielded differed from [her] expectations, or even what [her] expectations as to the [product's] yield were." *Cantu*, 2025 WL 942609, at *4. Ms. Cody's unidentified expectations based on unspecified website descriptions and purchase context, and her failure to identify "how" the product failed to meet those expectations, falls short of Rule 9(b)'s particularity requirements. *See Stevens v. Britax Child Safety, Inc.*, 2021 WL 4706702, at *5 (C.D. Cal. July 13, 2021) (no facts regarding circumstances of misrepresentation violated Rule 9(b)).

Ms. Cody's SAC fails to identify the "what," "where," and "how" of her fraud claim in violation of Rule 9(b).

### b.    Ms. Cody Has Not and Cannot Allege Reliance.

The Court should dismiss the SAC with prejudice because Ms. Cody fails to plead justifiable reliance for either her fraud or consumer deception claims. *Forouzesh v. Starbucks Corp.*, 714 F. App'x 776, 777 (9th Cir. 2018) (no fraud claim absent justifiable reliance); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143–44 (2020) (no fraud-based CLRA because plaintiff could not truthfully

allege that she would not have bought the product but for its labeling).

Absent plausible and particularized allegations that the plaintiff actually relied on the alleged misrepresentation in making her purchase, the claims are dismissed under Rule 9(b).  *Sheibe v. Esupplements LLC*, 681 F. Supp. 3d 1101, 1115–15 (C.D. Cal. Feb. 13, 2023) (dismissing CLRA, FAL, and UCL claims for failure to plead reliance with specificity required by Rule 9(b)); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (affirming dismissal of fraud-based claim for failure to allege reliance).

### (1)    No Plausible or Particularized Allegations of Reliance.

Ms. Cody only offers conclusory allegations of reliance, which "do not suffice" under the plausibility standard, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), nor Rule 9(b), *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007) (no reliance where complaint offered conclusory allegation that "the advertising resulted in the sale of goods"). All Ms. Cody alleges that she "relied on the … size of the package and product label," and that her "reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size."  (SAC ¶¶ 52, 78.)  These bare allegations fall short of plausibly pleading reliance.

### (2)    Litigation History Precludes Plausible Reliance.

Beyond her insufficient conclusory allegations, Ms. Cody cannot truthfully allege plausible reliance.  Ms. Cody—a serial "tester" litigant engaged in "search-and-sue" tactics (SAC ¶ 53) —cannot plausibly allege she was deceived by and purchased a product in reliance on its package size alone, particularly after claiming to uncover and sue for the same alleged deception in *27* lawsuits, *15* of which were filed which prior to her purchase.  (*See* Imakuyre Ex. H at 1.)  *Sterling Jewelers*, 2023 WL 2996686, at *3 n.4 ("[T]he undisputed fact that [Mr. Ferrell's plaintiff]

filed numerous similar lawsuits … casts doubt on any suggestion she was surprised by surreptitious recording of her information.  To the contrary, it appears … that Plaintiff visited Defendant's website … so that she could allege statutory violations."); *accord Martin*, 2023 WL 2717636, at *8 n.7 (Mr. Ferrell's plaintiff's prior lawsuits were "not irrelevant to the Court's plausibility analysis"); *Cody v. FullBeauty Brands, Inc.*, No. 25-cv-01334-KK-SHK, ECF No. 24 ("[G]iven the record reflects Plaintiff has filed six similar 'deceptive reference price' actions, indicating a degree of sophistication with respect to the issue presented here, the Court is skeptical as to Plaintiff's claim she was unaware and did not receive actual notice[.]").

This reliance requirement—enumerated through Proposition 64—was enacted specifically to "curb[] abusive lawsuits by plaintiffs who had not suffered actual harm." *Cattie*, 504 F. Supp. 2d at 948.  It specifically precludes suing on a "token purchase" where "[a]n attorney … [attempts to] 'create' a client with standing to sue by directing a willing party who was not deceived by the advertising to make a purchase." *Id.*  Ms. Cody's litigation history combined with her inability to consistently identify the product at issue (*see supra* Section III.A.1.a.) seriously calls into question her purported reliance.  *See id.* at 947 (conclusory allegations of reliance were "a particular concern because … Plaintiff … filed a nationwide lawsuit in four different states[.]").  The only plausible conclusion is that her purchase was made to generate a lawsuit, and not the result of any actual reliance.

### c.      Ms. Cody's Fraud Claim Fails for Additional Reasons.

Ms. Cody also fails to plead the other basic elements of her common law fraud claim.  To assert a common law fraud claim, plaintiffs must plead (1) misrepresentation, (2) scienter (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  All elements must be present for an actionable claim of fraud; one missing element precludes recovery. *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d

1034, 1066-67 (C.D. Cal. 2005). Here, Ms. Cody alleges no misrepresentation or intent, let alone with the requisite particularity.

### (1)  No Misrepresentation or Actionable Omission.

Ms. Cody fails to plead an actionable misrepresentation or omission.

A misrepresentation requires an affirmative statement that is actually false, which Ms. Cody fails to allege. *Tarvin v. Olly Pub. Benefit Corp.*, 2024 WL 4866271, at \*6 (C.D. Cal. Nov. 12, 2024). She identifies only accurate disclosures of quantity by weight and number of servings. (SAC ¶ 1, Exs. 1–2; RJN Exs. A–C.) Ms. Cody cannot ignore those affirmative disclosures to manufacture an "actually false" statement. *Bush v. Mondelez Int'l*, 2016 WL 5886886, at \*5 (N.D. Cal. Oct. 7, 2016) (no slack-fill claim where packaging indicated the exact amount of product within); *Buso v. ACH Food Co.'s, Inc.*, 445 F. Supp. 3d 1033, 1038 (S.D. Cal. Apr. 20, 2020) (same, where label disclosed the amount of product made by the powder within). As her own authorities state, "[s]ince a simple 'investigation' [of the product's label] would have dispelled any misrepresentation … [Ms. Cody's] common law fraud claim is foreclosed as a matter of law." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199–200 (E.D.N.Y. 2018).

Further, Ms. Cody's omission theory fails as a matter of law. "[T]o be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (affirming dismissal of omission-based consumer claims). Here, Ms. Cody identifies no fact that Gainful was required to disclose, never mind an omitted fact that contradicts Gainful's accurate quantity disclosures. Her theory that the opaque packaging failed to reveal the headspace merely repackages her affirmative-misrepresentation theory and does not create an independent duty to disclose. Without an actionable omission, her

fraud claim fails.[1]

### (2)    No Intent.

Ms. Cody fails to plead intent.  She merely alleges "Defendant intends for consumers to purchase the product under the mistaken belief that the package is full[.]"  (SAC ¶ 77.)  Such "conclusionary allegations" cannot support her fraud claim, especially when she admits Gainful disclosed the amount of protein powder in its products.  *Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1128 (C.D. Cal. 2015) (conclusory intent allegations insufficient to state a fraud claim, collecting cases).  Because Ms. Cody cannot plead facts to show that Gainful "intended to induce [her] to act to [her] detriment in reliance on the false representation …, [s]he cannot state a cause of action for fraud or misrepresentation."  *Coldwell Banker Residential Brokerage Co. v. Sup. Ct.*, 117 Cal. App. 4th 158, 168 (2004).

Ms. Cody fails to state a fraud claim.

### 2.    Ms. Cody Fails to Allege "Nonfunctional Slack-Fill."

Ms. Cody purports to premise her newly alleged UCL and FAL claims on a purported violation of the slack-fill statute (SAC ¶¶ 57–58 (citing Cal. Bus. & Prof. Code § 12606.2(b)), but critically fails to allege the threshold facts required: that any slack-fill (i.e., "empty space") is "nonfunctional."

California law expressly provides "[s]lack fill in a package," i.e., the "empty space in a package that is filled to substantially less than its capacity," cannot establish violation of the slack-fill statute "*unless it is nonfunctional slack fill*."  Cal. Bus. & Prof. Code § 12606.2(d) (emphasis added).  In other words, Ms. Cody cannot bring a claim based on *functional* slack-fill.  The statute provides examples of non-actionable, *functional* slack fill, including slack-fill caused by

---

[1] Moreover, no statutory consumer protection claim may arise from an omission theory where no duty to disclose exists.  *Hodsdon*, 891 F.3d at 865 ("Absent a duty to disclose, Plaintiff's CLRA, UCL and FAL claims are foreclosed.").

GAINFUL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

"[u]navoidable product settling during shipping and handling," or for "protection of the contents," or "requirements of the machines used." *Id.* § 12606.2(c). Thus, to survive a motion to dismiss, Ms. Cody is required to "affirmatively plead" "*facts* to support the conclusion that the slack fill is nonfunctional [or] safe harbors do not apply." *Buso*, 445 F. Supp. 3d at 1040-41 (collecting cases); *Jackson v. Gen. Mills, Inc.*, 2020 WL 5106652, at *6 (S.D. Cal. Aug. 28, 2020) (no slack-fill claim absent facts supporting assertions of nonfunctional slack-fill).

Now on her third complaint, Ms. Cody still only pleads legal conclusions and unwarranted inferences regarding purported "nonfunctional slack-fill." She declares—with no factual support—that "[t]here is no risk of the powder … sustaining damage" (ignoring the packaging's cushioning effect to remediate ruptures), that "no measurable product settling" of a fine powder "occurs during subsequent shipping and handling[,]" and Gainful could "increase the Product's fill level significantly," or perform a "simple recalibration of [its production] machines." (SAC ¶¶ 22–47.) She also alleges conclusions that Gainful's packaging does not necessitate slack-fill, is "not reusable[,]" and "intended to be discarded" because it is not "commemorative" or "promotional." (*Id.* ¶ 34–35.)

But "merely reciting the statutory exceptions [and] alleging that 'none of these circumstances apply here,' is insufficient to support a claim for unlawful packaging[.]" *Buso*, 445 F. Supp. 3d at 1041; *accord Martinez-Leander v. Wellnx Life Scis., Inc.*, 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) (mere recitation of slack-fill exceptions were not met insufficient). Ms. Cody alleges no "facts to support the conclusion that the slack fill is nonfunctional, nor facts to allege the safe harbors do not apply," warranting dismissal. *Buso*, 445 F. Supp. 3d at 1041; *see also Jackson*, 2020 WL 5106652, at *3 (claim that cereal does not settle enough to cause slack-fill insufficiently to allege non-functional slack fill); *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *16 (N.D. Cal. Mar. 14, 2014) (dismissing claim based on "nothing more than a litany of FDA regulations and federal

statutes," with "no factual allegation about how [defendant's] actions run afoul of

them"); *Park v. Welch Foods, Inc.*, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26,

2013) (dismissing where "[p]laintiffs' SAC provides little more than a long

summary of the FDCA and its food labeling regulations, a formulaic recitation of

how these regulations apply to Defendants' products, and conclusory allegations

regarding Defendants' unlawfulness").

Ms. Cody quotes *Daniel*, claiming "[c]omparator products may provide

evidence of non-functional slack-fill[.]"  (SAC ¶ 20 (citing 287 F. Supp. 3d at 188).)

But *Daniel* found "comparator" arguments unpersuasive where the plaintiff, like

Ms. Cody, failed "to allege any facts to support its assertion that the [comparator

products] and their packaging share any meaningful similarities to validate the

comparisons."  287 F. Supp. 3d at 188 (granting motion to dismiss).  Ms. Cody

alleges only that the "comparative" products are "a food" and packaged in "a

pouch" and conflates products (such as sugar and trail mix) with different settling

properties and headspace requirements (e.g., for measuring scoops) with the protein

powder at issue.  (SAC ¶¶ 20–21.)  On her own authorities, such allegations fail.

*Daniel*, 287 F. Supp. 3d at 188 (alleging the "*same* kind of product in the *same* kind

of packaging" does not explain "why the [comparators] and their packaging are the

same or sufficiently similar").

The Court should thus dismiss Ms. Cody's claims, which are premised on

unsupported nonfunctional slack-fill theory.

### 3.    Ms. Cody Fails to Meet the Reasonable Consumer Standard.

Ms. Cody also fails to show "a significant portion" of reasonable consumers,

"acting reasonably in the circumstances," would believe Gainful's products contain

more protein powder than stated on their packaging or advertising, as required to

plead her statutory consumer protection claims under the CLRA, FAL, or UCL.

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 966–67 (9th Cir. 2016).

"A claim of misleading labeling [that] runs counter to ordinary common

sense or the obvious nature of the product … is fit for disposition at the [pleading] stage." *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1165 (2018).  A mere possibility that a product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner" is not enough.  *Ebner*, 838. F.3d at 965.  In *Ebner*, Ninth Circuit affirmed dismissal of a complaint alleging superfluous cosmetics packaging with "an accurate net weight label[,]" because given the "widespread nature of [packaging] practices," "no reasonable consumer expects the … overall size of the packaging to reflect directly the quantity of the product contained therein."  *Id.* at 967.

Courts evaluating slack fill claims—including at least three brought by Mr. Ferrell—have followed *Ebner*, finding no reasonable consumer would be plausibly deceived when a "package discloses the product's net weight and the approximate number of servings per container," which provide a consumer with a "rough estimate" of the amount of final product that can be made from its contents.  *Buso*, 445 F. Supp. 3d at 1038; *see also Reider v. Immaculate Baking Co.*, 2018 WL 6930890, at *3 (C.D. Cal. Nov. 8, 2018) (dismissing Ferrell slack-fill claim where label included preparation instructions and "quantity of prepared cake that box will yield"); *Buso v. Vigo Importing Co.*, 2018 WL 6191390, at *4 (S.D. Cal. Nov. 28, 2018) (dismissing Ferrell slack fill claim based on risotto mix where the "net weight on the label is accurately stated"); *Cantu*, 2025 WL 942609, at *6 (dismissing Ferrell slack fill claim, noting "packing disclosures recontextualize [slack fill] claims," including "weight, serving, and yield information thus made").

Here, Ms. Cody alleges the product was labeled "with a net weight of 14.8 ounces" and she understood that "[e]ach stand-up pouch or bag within such bundled packages, which included two pouches or bags, contained 14 servings per container."  (SAC ¶ 1.)  The label also confirms "1 scoop" of "30g" of protein yields "14 servings."  (*Id.* at Ex. 2.) "[T]he Product's rear label provides instructions on how to use the Product" by "mix[ing]" or "blend[ing]" it with "8oz"

of "milk" or "favorite beverage." (*Id.* ¶ 31.) Taken together, no reasonable consumer of protein powder would be deceived by Gainful's package size when the label explains, as Ms. Cody alleges, that each bag yields 14 servings of 8 oz beverages using one scoop of protein. Other courts have dismissed protein powder slack fill claims predicated on similar allegations. *Game v. Zero Day Nutrition Co.*, 2023 U.S. Dist. LEXIS 78442, at \*17–21 (C.D. Cal. May 3, 2023) (dismissing slack fill claims where protein powder label quantified number of beverages that could be made); *Miao Xin Hu v. Iovate Health Scis. U.S.A. Inc.*, 2018 WL 4954105, at \*3 (S.D.N.Y. Oct. 12, 2018) (no slack fill claim where "package discloses … the actual amount of protein powder in each package").

Moreover, Ms. Cody allegations regarding a reasonable consumer's understanding of physical packaging relies on instances when consumers are "deciding whether to make an in-store purchase." (SAC ¶ 12.) But Ms. Cody alleges she purchased the product online, where reasonable consumers must read product descriptions before placing their order—which on Gainful's Amazon listing, the name of product itself includes the number of servings. (*Id.* ¶ 1.) Whether on Amazon or Gainful's website, customers must affirmatively select a number of servings to place an order and review the quantity of the product in their checkout cart before completing their purchase. (Ex. B at 1; Ex. C at 1.)

Gainful's packaging and online advertising thus disclose, prior to purchase, the product net weight, the number of servings, and yield using 8 oz of liquid, which forecloses Ms. Cody's consumer deception claims. No reasonable consumer could be misled as to the amount of product they were purchasing.

**B.    Ms. Cody Lacks Standing for Injunctive Relief.**

Ms. Cody lacks standing to maintain her claim for injunctive relief.

Article III requires a plaintiff allege "constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). For injunctive relief, a plaintiff must allege a 'threat' of future

GAINFUL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

injury this is "'actual and imminent, not conjectural or hypothetical'"—"the 'threatened injury must be *certainly impending* to constitute injury in fact,' and 'allegations of *possible* future injury are not sufficient.'" *Id.*

Ms. Cody alleges no threatened injury at all, let alone one that is "*certainly impending*." Rather, she supplies vague allegations that she "intends to purchase the Product … in the future but cannot reasonably do so without [] injunctive relief" *(id.* ¶ 63), but such "conclusory statement[s] of irreparable harm [are] insufficient to warrant injunctive relief." *Bradford v. Hernandez*, 2019 WL 4383948, at *2 (C.D. Cal. Jan. 16, 2019); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 745 F. Supp. 3d 869, 909 (N.D. Cal. 2024) ("A bare allegation that Plaintiffs are unable to purchase Uber's product as advertised does not establish an injury.").

Further, Ms. Cody cannot plausibly be deceived in the future because she "can cross-check [her] previous disappointing purchases by examining the undisputed net weight on the face of [Gainful's] product and the serving size [] and servings per container on the nutrition facts label." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1127 (S.D. Cal. 2021); *Jackson*, 2020 WL 5106652, at *5 (no injunction on slack-fill claim "[g]iven that [plaintiff] now knows she can ascertain the amount of cereal she is buying by looking at the label").

As such, Ms. Cody lacks standing to pursue her claim for injunctive relief.

### C.    Ms. Cody Cannot State Claims for Unpurchased Products.

Despite her inability to even identify the single product she purchased, Ms. Cody attempts to expand her claims to cover "all varieties and types of Defendant's protein powder products contain similar amounts of non-functional slack-fill regardless of the specific variety." (SAC ¶ 49.) The law makes it clear she cannot.

Many courts in this Circuit have recognized that as a matter of law, a putative class representative, like Ms. Cody, lacks standing to pursue claims for products she did not purchase. *Lorentzen v. The Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) ("plaintiff … cannot claim injury from similarly false advertising upon

which [she] did not injuriously rely (by buying a similar product or otherwise).");

*Oh v. Fresh Bellies, Inc.*, 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024)

(dismissing claims for unpurchased products for lack of CLRA statutory standing).

These cases justify blanket dismissal of Ms. Cody's claims and class allegations

based on the broad unpurchased products for which she purports to sue.

Other courts have found a plaintiff lacks standing to assert claims for

unpurchased products unless the product purchased is "substantially similar" to the

product for unpurchased products. *Gonzales v. Natural Food Nutritional Prods.,*

*Inc.*, 2024 WL 4609853, at *5 (C.D. Cal. June 28, 2024) (dismissing where "[i]t is

unclear whether [plaintiff] is alleging that the containers for all sizes and varieties

of [defendant's] whey protein contain slack-fill … [T]here are no facts … to

support the assertion these products are substantially similar."). Ms. Cody's claims

as to unpurchased products fail under this line of authority too, as she fails to allege

requisite facts of "substantial similarity" among Gainful's several distinct

packaging types across Amazon and its websites—which each present information

regarding the net weight, serving size, and yield of the products in different

manners at different points in the transaction. Ms. Cody lacks standing to pursue

claims for products she never purchased and representations upon which she never

relied. *Hayde v. Arcadia Consumer Healthcare Inc.,* 2025 WL 1386779, at *11

(C.D. Cal. Mar. 28, 2025) ("Plaintiff has not pleaded sufficient facts regarding the

product he purchased versus the products he did not purchase … Plaintiff lacks

standing to assert claims based on products he did not purchase.").

## IV.    CONCLUSION

Gainful respectfully requests that the Court dismiss Ms. Cody's SAC without

leave to amend.

GAINFUL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

DATED: September 12, 2025

DAVIS WRIGHT TREMAINE LLP
JACOB M. HARPER
KATELYN A. FELICIANO
DANIEL IMAKYURE

By: /s/ Jacob M. Harper
Jacob M. Harper

*Attorneys for Defendant
Gainful Health Inc.*

## LOCAL RULE 11-6.2 CERTIFICATION

The undersigned, counsel of record for Gainful Health Inc., certifies that this brief contains 6275 words, which complies with the word limit of L.R. 11-6.1.

DATED:  September 12, 2025          By: */s/ Jacob M. Harper*
Jacob M. Harper

GAINFUL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT