JACOB M. HARPER (State Bar No. 259463)
 jharper@dwt.com
KATELYN A. FELICIANO (State Bar No. 350385)
 katelynfeliciano@dwt.com
DANIEL IMAKYURE (State Bar No. 356869)
 danielimakyure@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant Gainful Health Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANNETTE CODY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>GAINFUL HEALTH INC., a Delaware company,<br><br>                    Defendant. | Case No. 5:25-cv-01373 KK (SPx)<br><br>**DECLARATION OF DANIEL IMAKYURE IN SUPPORT OF DEFENDANT GAINFUL HEALTH INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[*Motion to Dismiss*, *Request for Judicial Notice, and Proposed Order filed concurrently*]<br><br>Dept.:         Courtroom 3<br>Date:          November 20, 2025<br>Time:          9:30 AM<br><br>Action Filed:      January 15, 2025<br>FAC Filed:         May 2, 2025<br>Action Removed:  May 30, 2025<br>SAC Filed:         August 29, 2025 |

## DECLARATION OF DANIEL IMAKYURE

I, Daniel Imakyure, declare and state as follows:

1.      I am an attorney with the law firm Davis Wright Tremaine LLP, counsel for defendant Gainful Health Inc. (Gainful).  I make this declaration in support of Gainful's Motion to Dismiss plaintiff Annette Cody's Second Amended Complaint. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify to them.

2.      Attached as **Exhibit D** is a true and correct copy of Scott Ferrell's demand letter dated December 10, 2024, which my office received after that date.

3.      Attached as **Exhibit E** is a true and correct copy of Annette Cody's Complaint, which she filed on January 15, 2025.

4.      Attached as **Exhibit F** is a true and correct copy of Annette Cody's First Amended Complaint (FAC), which she filed on May 2, 2025.

5.      Attached as **Exhibit G** is a true and correct copy of Annette Cody's Second Amended Complaint (SAC), which she filed on August 29, 2025.

6.      Attached as **Exhibit H** is a true and correct copy of a list of slack-fill cases filed by Scott Ferrell or his office Pacific Trial Attorneys.  This Exhibit also lists examples of cases in which Annette Cody is a named plaintiff, including slack-fill cases.  My law firm compiled this list based on a review of publicly available docket information and a manual review of the operative complaint in each case listed.  All information in the Exhibit is publicly available.  Based on a similar review of publicly available docket information, my firm is aware of at least 208 cases filed by Pacific Trial Attorneys alleging slack-fill violations and at least 76 class actions with Ms. Cody as plaintiff.

7.      On April 11, 2025, I met and conferred by videoconference with counsel of record for plaintiff Annette Cody on Gainful's Demurrer to her Complaint which was filed in the Superior Court for the State of California for the County of Riverside under case no. CVRI2500253 on April 17, 2025.  On the

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

conferral, Ms. Cody's attorney first identified the product his client purchased as Gainful's "Personalized Protein," before claiming she purchased a different "Gainful Whey Protein Powder Get Lean Bundle, Meal Replacement, Post Workout Support, Whey Isolate + Concentrate, Unflavored" product.  I then provided a hyperlink to the Customized Protein sold on Gainful's website in the videoconference chat (https://www.gainful.com/products/customized-protein), and Ms. Cody's counsel confirmed it was the product she purchased.  Her attorney also claims the product purchased was "14.8 oz. net weight."

8.    On September 8, 2025, I met and conferred by telephone with counsel of record for plaintiff Annette Cody on Gainful's concurrently-filed Motion to Dismiss.  On the conferral I advised Ms. Cody's attorney that Ms. Cody's second amended complaint retained all of its initial defects, including the contradictory identification of the product at issue, failure to allege an actionable slack-fill violation, failure to meet the reasonable consumer standard required by the CLRA, and failure to allege the elements of her fraud claim.  I additionally advised Ms. Cody's attorney that her added FAL and UCL claims were inadequately pled as to both specificity of factual allegations and the reasonable consumer standard.  The parties could not otherwise reach agreement as to the defects in Ms. Cody's complaint.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of September, 2025, at Los Angeles, California.

_____
*/s/ Daniel Imakyure*
Daniel Imakyure

DECLARATION OF DANIEL IMAKYURE

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT D



**P**ACIFIC TRIAL ATTORNEYS
A NATIONAL LITIGATION FIRM

December 10, 2024

**SENT VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

GAINFUL Inc.
137 W 25th Street, 6th Floor
New York, NY 10001
**Attention: Legal Department**

     **Re:**   *Slack Fill Lawsuit – California Consumer Legal Remedies Act*

Ladies and Gentlemen:

     This law firm has been retained by a California consumer to prosecute a lawsuit against you for violation of multiple California laws prohibiting the unlawful practice of packaging products in containers with substantial non-functional slack-fill.

     Our client recently purchased a package of Gainful Whey Protein and later learned that the package was over 50% empty. We have consulted with a qualified expert who opines that the slack fill serves no functional purpose exempted by any statutory safe harbor.[1] We request that you (1) cease and desist from continued sale of any products containing non-functional slack-fill; and (2) refund the purchase price of all violative products sold during the class period.

     We intend to file suit in the very near future. If you wish to receive the additional information offered above, your counsel should promptly contact me via e-mail.

Sincerely,

Scott J. Ferrell, Esq.
For Pacific Trial Attorneys

---

[1]     This letter provides statutory notice that you have violated California Civil Code Section 1750, including without limitations sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) by: (1) misrepresenting the approval of the Product as compliant with the Sherman Act; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of product contained within it. Upon reasonable request and subject to an agreement consistent with *Campbell-Ewald v. Gomez*, 577 U.S. 153 (2016), we will provide you additional information about our client's purchase and provide you with photographic evidence of the violation.

4100 NEWPORT PLACE DRIVE, SUITE 800 NEWPORT BEACH, CA 92660

Tel: (949) 706-6464 | Fax: (949) 706-6469 | Web: PacificTrialAttorneys.com

# EXHIBIT E

Electronically FILED by Superior Court of California, County of Riverside on 01/15/2025 11:30 PM
Case Number CVRI2500253 0000117016373 - Jason B. Galkin, Executive Officer/Clerk of the Court By Courtney Flores, Clerk

1   PACIFIC TRIAL ATTORNEYS
    A Professional Corporation
2   Scott J. Ferrell, Bar No. 202091
    sferrell@pacifictrialattorneys.com
3   Victoria C. Knowles, Bar No. 277231
    vknowles@pacifictrialattorneys.com
4   4100 Newport Place Drive, Ste. 800
    Newport Beach, CA  92660
5   Tel: (949) 706-6464
    Fax: (949) 706-6469
6
7   Attorneys for Plaintiff

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF RIVERSIDE

10

11  ANNETTE CODY,                          Case No.  CVRI2500253

12          Plaintiff,                     **COMPLAINT**

13          v.

14  GAINFUL HEALTH INC., a Delaware company,

15          Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

---

COMPLAINT

## **INTRODUCTION**

1.      Defendant manufactures and sells protein powder ("the Product"). To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in oversized packaging that does not reasonably inform consumers that they are mostly buying air.   In short, Defendant dupes consumers into paying extra for empty space.

2.      Several state and federal courts have found that cases involving materially identical claims are actionable and meritorious. *See, e.g.*, *Reyes v. Just Born, Inc.*, - F. Supp. 3d -, 2024 WL 1748629 (C.D. Cal. Apr. 8, 2024) (Vera, J.); *Coleman v. Mondelez Int'l Inc.*, Case No. 2:20-cv-08100 (C.D. Cal. July 26, 2021); and *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020).

3.      The below pictures illustrate the deceptive nature of the packaging and the substantial non-functional slack fill inside the package.  In summary, actual product occupies only a fraction of the exterior space represented by the package:

 



**PARTIES**

4.      Plaintiff is a resident of California.  Within the statute of limitations period, Plaintiff purchased the Product for personal use.  In making the purchase, Plaintiff relied upon the opaque packaging, including the size of the package and product label, and that was designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Product, or would not have paid a price premium for the Product, had plaintiff known that the size of the package and product label were false and misleading.  Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's representations about the Product.

5.      Defendant markets the product via its website as well as through its agents to consumers nationwide, including in California.  Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California.

**JURISDICTION AND VENUE**

6.      As a court of general jurisdiction, this Court has jurisdiction over all claims presented to it.

7.      Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Since this case partly involves illegal representations and sales from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgi*a, 53 Cal.App.5th 1231 (2020).

8.      Venue is proper in this County because Defendant is not a citizen of California.

## FACTUAL BACKGROUND

9.      While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they have been misled by food packaging and labeling.[1]  The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[2] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[3]

10.     Defendant chose a certain size package for its Product to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

11.     Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

12.     Defendant falsely represents the quantity of product in each of the Product's opaque package. The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

13.     Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity product meaningfully different from the size of the package.  Low income consumers are most likely to be misled by slack fill misrepresentations.[4]

---

[1]  https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited January 2025).
[2]  Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/    (last visited January 2025).
[3]  P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).
[4]  https://www.canr.msu.edu/news/americans-pay-attention-to-food-labels-but-are-confused-by-what-information-matters (last accessed January 2025).

14. Prior to the point of sale, the Product's packaging does not allow for confirmation of the contents of the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

15. The other information that Defendant provides about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

16. Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Products' packages that would be different from their expectation that the quantity of product is commensurate with the size of the package.

17. Plaintiff had dual motivations for purchasing the product. First, Plaintiff is a consumer rights "tester" who creates public benefit by ensuring that companies comply with their obligations under California law. Second, Plaintiff was genuinely interested in consuming and enjoying the product, and did so – with disappointment that the package was mostly empty.

18. Plaintiff's status as a dual motivation tester is both necessary and appropriate. First, it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023). Second, nearly all consumers have dual motives, as there are usually multiple reasons behind their purchasing decisions. *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. 2018).

19. To be clear, Plaintiff would not have purchased the Product had plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to plaintiff's expectations.

**None of the Slack-Fill Statutory Exceptions Apply to the Product**

20.     Under applicable state law, any opaque food package is considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the enumerated slack fill exceptions.

21.     The slack-fill in the Product's packages does not protect the contents of the packages. In fact, empty space does not protect the Product.

22.     The machines used to package the Products would not be affected if there was more product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

23.     Because the packages are filled to less than half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the package, consistent with the law.

24.     The slack-fill present in the Product's packages is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

25.     The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

26.     The Product's packaging is not reusable or of any significant value to the Product independent of its function to hold the product. The packages are intended to be discarded immediately after the product is used.

27.     The slack-fill present in the packages does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

28.     Defendant can easily increase the quantity of product in each package (or, alternatively, decrease the size of the packages) significantly.

29.     Because none of the safe harbor provisions apply to the Product's packaging, the packages contain nonfunctional slack-fill and are, therefore, misleading as a matter of law.

30.     Defendant's false, deceptive, and misleading label statements are unlawful under state consumer protection and packaging laws.

31.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

32.     **Plaintiff brings this lawsuit as an individual action with the hope that Defendant will accept responsibility for its actions and take all appropriate remedial measures. If Defendant refuses, Plaintiff will likely amend this Complaint to assert claims on behalf of a class.**

<u>**CAUSES OF ACTION**</u>

<u>**FIRST CAUSE OF ACTION**</u>

**COMMON LAW FRAUD**

33.     The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

34.     Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

a.  **Who**: The false representations were made by the Defendant and the individuals employed by Defendant who make packaging and labeling decisions.

b.  **What**: The false representation was the representation that the package was full of product, and the specific concealment was that the package was over half empty.

c.  **When**: The misrepresentation has been made continuously through the statute of limitations period, as it is made each time a package is sold – including when Plaintiff purchased the product in the six months prior to filing this Complaint.

d. **Where**: The misrepresentation was made on Defendant's website, marketing materials, and the packaging of the product.

e. **Why**: Defendant made the misrepresentation to induce consumers to purchase the product, to cause them to pay more for the product, and to take market share and profits from its competitors.

35. **Knowledge**: Defendant knows that the packaging is more than half empty, knows that consumers will purchase the product based upon the belief that it is full, and knows that it is deceiving consumers.

36. **Intent to defraud**: Defendant intends for consumers to purchase the product under the mistaken belief that the package is full so that Defendant can capture sales it would not have otherwise received and can increase profits.

37. **Justifiable reliance**: Plaintiff's reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size.

38. **Resulting damage**: Plaintiff was damaged by paying more for a product than Plaintiff would have paid and receiving less product than Plaintiff expected to receive. To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the product) and was damaged by that change of position (by receiving less than Plaintiff paid for and reasonably expected to receive).

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**

**CALIFORNIA CIVIL CODE § 1750,** *et seq.*

39. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

40. The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Product as compliant with 21 C.F.R § 100.100 and the Sherman Law; (2) representing the Product has characteristics and quantities that it does not have; (3) advertising and packaging the Product with intent not to sell it as advertised and

packaged; and (4) representing that the Product has been supplied in accordance with a previous representation as to the quantity of product contained within each package, when it has not.

41.    Defendant deceived Plaintiff by representing that the Product's packaging, which includes significant nonfunctional slack-fill, actually conforms to federal and California slack-fill regulations and statutes including the Sherman Law and 21 C.F.R. § 100.100.

42.    Defendant packaged the Product in packages that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and all consumers.

43.    Defendant deceived Plaintiff by misrepresenting the Product as having characteristics and quantities that it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

44.    Defendant knew that the Product's packaging was misleading and deceptive.

45.    Defendant's packaging of the Product was a material factor in Plaintiff's decisions to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff reasonably believed that Plaintiff would receive more product than actually received.

46.    Plaintiff has suffered injury in fact and have lost money as a result of Defendant's unfair and unlawful conduct. Specifically, Plaintiff paid for product never received.

47.    More than 30 days prior to filing this Complaint, Plaintiff notified Defendant of the particular alleged violations of Section 1770 and demanded that Defendant correct, repair, replace, or otherwise rectify the violation.  Defendant has not fully complied with Plaintiff's request.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief on all causes of action as follows:

A.    An order requiring Defendant to add a conspicuous "fill line" to the front of the Product's packaging sold in California;

B.    Actual, statutory, and punitive damages;

C.    Attorneys' fees and costs; and

D.    All other relief at law or in equity that may be just and proper.

1    Dated:  January 15, 2025                    PACIFIC TRIAL ATTORNEYS, APC

2                                                By:_____

3                                                Scott. J. Ferrell
                                                 Attorneys for Plaintiff
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

1   PACIFIC TRIAL ATTORNEYS
    A Professional Corporation
2   Scott J. Ferrell, Bar No. 202091
    sferrell@pacifictrialattorneys.com
3   Victoria C. Knowles, Bar No. 277231
    vknowles@pacifictrialattorneys.com
4   4100 Newport Place Drive, Ste. 800
    Newport Beach, CA  92660
5   Tel: (949) 706-6464
    Fax: (949) 706-6469
6
7   Attorneys for Plaintiff

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **COUNTY OF RIVERSIDE**

10

11  ANNETTE CODY, individually and on behalf of       Case No.  CVRI2500253
    all others similarly situated,
12                                                     Assigned to the Hon. Eric A. Keen
             Plaintiff,                                Dept. 6
13
             v.                                        **FIRST AMENDED CLASS ACTION**
14                                                     **COMPLAINT**
    GAINFUL HEALTH INC., a Delaware
15  corporation,
                                                       Complaint Filed: January 15, 2025
16           Defendant.                                Trial Date: None Set

17

18

19

20

21

22

23

24

25

26

27

28

---

## **INTRODUCTION**

1.      Defendant Gainful Health Inc. ("Defendant") manufactures and sells a popular whey protein powder nutritional supplement food product under the Gainful brand name with a net weight of 14.8 ounces (420 grams) ("the Product").  To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in oversized packaging that does not reasonably inform consumers that they are buying approximately 40 percent of a pouch significantly full of air.  In short, Defendant dupes consumers into paying extra for empty space.

2.      Several state and federal courts have found that cases involving materially identical claims are actionable and meritorious. *See, e.g.*, *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 975-80 (C.D. Cal. 2024); *Coleman v. Mondelez Int'l Inc.*, Case No. 2:20-cv-08100 (C.D. Cal. July 26, 2021); *Iglesias v. Ferrara Snack Co.*, Case No. 3:17-cv-00849 (N.D. Cal. July 25, 2017); *Gordon v. Tootsie Roll Industries, Inc.*, Case No. 2:17-cv-02664 (C.D. Cal. Oct. 4, 2017); *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826 (C.D. Cal. June 12, 2017); and *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020).

3.      The below pictures illustrate the deceptive nature of the packaging and the substantial non-functional slack fill inside the package.  In summary, actual product only occupies approximately 60% of the exterior space represented by the Product's packaging container purchased by Plaintiff:

 



**PARTIES**

4.     Plaintiff Annette Cody ("Plaintiff") is a resident and a citizen of California.

5.     Defendant is a Delaware corporation that manufactures, distributes, and sells certain food products including the Product addressed herein.

**JURISDICTION AND VENUE**

6.     As a court of general jurisdiction, this Court has jurisdiction over all claims presented to it.

7.     Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."     Defendant distributes the Product through online retailers to consumers nationwide, including in California.  Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California.

8.     Venue is proper in this County pursuant to California Code of Civil Procedure section 395(a).

**FACTUAL BACKGROUND**

9.     While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they felt "duped" or

"misled" by food packaging of items that they have purchased.[1]  The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[2] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[3]

10.    Defendant chose a certain size package for its Product to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

11.    Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

12.    Defendant falsely represents the quantity of product in the Product's package, which is opaque.  That is, Defendant packages the Product in a container that does not allow the consumer to fully view its contents.  The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

13.    Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of product meaningfully different from the size of the package.   Low income consumers, like Plaintiff, are most likely to be misled by slack fill misrepresentations.[4]

---

[1]  https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited Feb. 5, 2025).
[2]  Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/    (last visited November 2023).
[3]  P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).
[4]    https://www.canr.msu.edu/news/americans-pay-attention-to-food-labels-but-are-confused-by-what-information-matters (last accessed Aug. 2024).

14. Prior to the point of sale, the Product's packaging significantly impairs consumers from confirming the volume of the contents of the Product. As mentioned above, the Product's packaging, which is opaque, precludes a consumer from observing the contents before opening. That is, Defendant packages the Product in a container that does not allow the consumer to fully view its contents. Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of significant quantities of nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

15. The information that Defendant provides about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size (*i.e.*, volume) of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

16. Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Product's packages that would be different from a consumer's expectation that the quantity of product is commensurate with the size of the package.

17. "[C]omparator products may provide evidence of non-functional slack-fill…." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 188 (E.D.N.Y. 2018). Comparator products have significantly less empty space in similar containers. For example, one comparator product is the "Blueberry Nut Trail Mix" product branded under Target Corporation's house brand known as "Good & Gather," which is distributed by Target Corporation and sold at Target retail stores (the "Comparator Product"). Like the Product, the Comparator Product is: (1) a food; and packaged in the same type of pouch type of packaging as used in the packaging of the Product. The Comparator Product contains approximately 89 percent fill level, which is far greater than the Product's level of fill. An image of the Comparator Product advertised for sale on Target's grocery store website at:

https://www.target.com/p/blueberry-nut-trail-mix-12oz-good-38-gather-8482/-/A-



18.     Another comparator product is the "organic Powdered Sugar" product branded under Albertsons Companies, Inc.'s house brand for Pavilions grocery stores known as "organics," which is distributed by Lucerne Foods, Inc. and sold at Pavilions retail grocery stores (the "Comparator Product") in California.  Like the Product, the Comparator Product is:  (1) a food item; and (2) packaged in a similar type of pouch style of packaging as used in the packaging of the Product.  The Comparator Product contains approximately 86 percent fill level, which is far greater than the Product's level of fill.  An image of the Comparator Product advertised for sale on Pavilions's grocery store website at:  https://www.pavilions.com/shop/product-details.960462035.html (last visited Aug. 29, 2024) is as follows:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22
23
24

19.    In October 2024, Plaintiff purchased the Product, which was purchased as part of a bundle containing two units of the Product, for personal use from a commercial website, amazon.com, at a price of $65.00.  Defendant used such amazon.com website as its storefront to advertise and sell the Product.

25
26
27
28

20.    The bundle also contained Gainful-branded "Flavor Boost" packets or "sticks" in four different cartons including: (1) Rich Chocolate, (2) Madagascar Vanilla, (3) Strawberry Cream, and (4) Variety Pack flavors.  The Variety Pack flavors include Chocolate Peanut Butter, Strawberry Cream,

Rich Chocolate, Cookies & Cream, Sea Salt Caramel, Madagascar Vanilla, and Cinnamon Toast.  Each "Flavor Boost" carton contains 7 packets or "sticks".

21.     In making the purchase, Plaintiff relied upon the packaging (depicted on the amazon.com website), which is opaque, including the size of the package, which was designed to encourage consumers like Plaintiff to purchase the Product.  Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Product, or would not have paid a price premium for the Product, had Plaintiff known that the size of the package and product label were false and misleading.

22.     Plaintiff had dual motivations for purchasing the product.  First, Plaintiff is a consumer rights "tester" who creates public benefit by ensuring that companies comply with their obligations under California law.  Second, Plaintiff was genuinely interested in consuming and enjoying the Product, and did so – with disappointment that the package had significant amounts of empty space.

23.     Plaintiff's status as a dual motivation tester is both necessary and appropriate.  First, it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023).  Second, nearly all consumers have dual motives, as there are usually multiple reasons behind their purchasing decisions. *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.).

24.     To be clear, Plaintiff would not have purchased the Product had Plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to Plaintiff's expectations.

25.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

26.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's claim under the Consumers Legal Remedies Act

("CLRA"), Cal. Civil Code § 1750 *et seq.*, is subject to the reasonable consumer test. Plaintiff may be able to prove Plaintiff's claim for fraud while not being able to prove one or more elements of Plaintiff's legal claim under the CLRA seeking damages.

27.     In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

28.     Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

29.     Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's packaging of the Product.

30.     Plaintiff would purchase the Product from Defendant again in the future if Plaintiff could feel sure that Defendant's filling of the Product is accurate and lawful. But, without an injunction, Plaintiff has no realistic way to know whether Defendant's filling of its Product is not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's packaging of the Product in the future, and so Plaintiff cannot purchase the Product even though Plaintiff would like to purchase it.

31.     The injuries of Plaintiff cannot be wholly remedied by monetary relief and such remedies at law are inadequate. While monetary damages would compensate Plaintiff for past harm, monetary damages alone would be insufficient to remedy the ongoing harm experienced by Plaintiff from Defendant's conduct. Monetary damages would not guarantee that Plaintiff would avoid being misled by the deceptive practice of filling of Defendant's containers in the future with non-functional empty space. Plaintiff will continue to be misled. Because retrospective monetary damages will not prevent the future harm only remediable by an injunction ordering Defendant to add a cost effective conspicuous "fill line" to its packaging, injunctive relief is being sought herein.

1

### None of the Slack-Fill Statutory Exceptions Apply to the Product

32.     Under California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, "Any food is misbranded if its container is so made, formed, or ***filled*** as to be misleading." *Id.* § 110690 (emphasis added). Similarly, California's Fair Packaging and Labeling Act ("CFPLA"), Cal. Bus. and Prof. Code § 12601 *et seq.*, provides, "No food containers shall be made, formed, or ***filled*** as to be misleading." (Cal. Bus. & Prof. Code § 12606.2(b) (emphasis added).)

33.     "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." *Id.* § 12606.2(c). "Slack fill is the difference between the actual capacity of a container and the volume of product contained therein." *Id.* "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of [enumerated exceptions]." *Id.*

### A.      Cal. Bus. & Prof. Code § 12606.2(c)(1) – Protection of the Contents

34.     The empty space in the Product's container does not protect the contents of the Product, which is whey protein powder. There is no risk of the powder breaking or sustaining damage if there was less empty space in the Product's container.

### B.      Cal. Bus. & Prof. Code § 12606.2(c)(2) – Requirements of the Machines

35.     The machines used for enclosing the contents of the package would not be affected if there was more fill of the Product added. At most, a simple recalibration of the machines would be required. Plaintiff is informed and believes and thereon alleges that adjusting these machines would be rather simple. Indeed, comparator products that use the same type of stand-up pouch packaging used for the Product show that it is possible to significantly increase the level of fill in the Product.

36.     Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling in a clear and conspicuous manner to inform consumers of the amount of the Product actually in the package.

37.     In other words, the machines used for enclosing the contents of the package have the capacity to add more content to the containers used to enclose the contents of the Product.

**C.     Cal. Bus. & Prof. Code § 12606.2(c)(3) – Unavoidable Product Settling During Shipping and Handling**

38.     The slack-fill present in the Product's packages is not a result of unavoidable product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

**D.     Cal. Bus. & Prof. Code § 12606.2(c)(4) – Specific Function of Package**

39.     The package of the Product does not perform a specific function that necessitates the slack-fill "such as where packaging plays a role in the preparation or consumption of a food…." (Cal. Bus. & Prof. Code § 12606.2(c)(4).)  The packages of the Product do not perform a specific function inherent to the nature of the food that necessitates the slack-fill.  And, Defendant has failed to clearly communicate to consumers via the Product's packaging or otherwise the need for the package to perform any specific function.

40.     The Product's packaging literally contains no instructions to consumers that they should mix together the Product's whey protein powder with any Flavor Boost within the Product's pouch container.

41.     The Product's rear label provides instructions on how to use the Product as follows:

"**Enjoy your Personalized Protein Powder (plus a tasty Flavor Boost) in a variety of ways:**

**SHAKE**

Mix with 8oz of ice cold milk or plant-based milk in a shaker.  Then, add your desired Flavor Boost and shake vigorously.  For a sweeter, more flavorful shake, try using less liquid."

**BLEND**

Make a nutrient-packed smoothie by blending with 8oz of your favorite beverage, then add

frozen fruit, fresh veggies or nut butter.

**BAKE**

Add a scoop to your favorite baked good recipe to pack a protein punch."

42.    Thus, the Product's instructions on using a Flavor Boost packet or "stick" in combination with the Product's whey protein powder indicate that the Product's powder should be mixed with 8 ounces of ice cold milk or plant-based milk "in a shaker" and then the Flavor Boost packet's contents should be added in such "shaker" and shook vigorously.  In other words, the Product's instructions do not instruct consumers to mix together the contents of any Flavor Boost packet or "stick" into the Product's stand-up pouch container.

43.    Each Flavor Boost packet contains a small amount of Flavor Boost powder, which is approximately the volume of a teaspoon (or slightly less).  Thus, if a hypothetical consumer decided to mix together an individual Flavor Boost packet within the Product's pouch container, then significant headspace at the top of the Product's pouch packaging would be unnecessary to accommodate the contents of a Flavor Boost packet because of the de minimis volume of the contents of each Flavor Boost packet.

**E.    Cal. Bus. & Prof. Code § 12606.2(c)(5) – Reusable Package**

44.    The Product's package is not reusable or of any significant value to the Product independent of its function to hold the Product. The package is intended to be discarded immediately after the Product is consumed.

45.    The Product package is not a durable commemorative package.  The Product's package is not a promotional package.

**F.    Cal. Bus. & Prof. Code § 12606.2(c)(6) – Inability to Increase Fill or Further Reduce Package Size**

46.    The size of the container is not at some minimum package size necessary to accommodate required food labeling exclusive of any nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

47.    Defendant can easily increase the quantity of the Product in each package (or, alternatively, decrease the size of the packages) significantly.

48.    There is no need to use a larger than required container to provide adequate space for the legible presentation of mandatory and necessary labeling information.

**G.    Cal. Bus. & Prof. Code § 12606.2(c)(7)(A) – Visibility of Product's Dimensions Through Exterior Packaging**

49.    The Product's dimensions are not visible through the exterior packaging because the Product's packaging is opaque.

50.    Moreover, paragraph (7) (A) of subdivision (c) of section 12606.2 of the California Business and Professions Code is inconsistent with any of the safe harbors set forth in 21 C.F.R. § 100.100(a).  Thus, this provision is not consistent with the requirements imposed by Section 403(d) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d)), or any regulation promulgated pursuant thereto.  Thus, this provision is not operative because it is not identical to the federal requirements.  (*See* Cal. Bus. & Prof. Code § 12606.2(f)); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1155 (S.D. Cal. 2021) (finding that California's "mode of commerce" safe harbor at Cal. Bus. & Prof. Code § 12606.2(c)(8) was "not operative" because it was inconsistent with both the FDCA and 21 C.F.R. § 100.100); *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 978 (C.D. Cal. 2024) (Vera, J.) ("the actual size exemption in the CLRA is not identical to the federal requirements and is therefore not operative") (citing *Stewart*, 537 F. Supp. 3d at 1154-56).

**H.    Cal. Bus. & Prof. Code § 12606.2(c)(7)(B) – Depiction of Actual Size of the Product**

51.    The actual size of the Product is not clearly and conspicuously depicted on any side of the exterior packaging, excluding the bottom, accompanied by a clear and conspicuous disclosure that the depiction is the "actual size" of the Product.

52.    Moreover, paragraph (7) (B) of subdivision (c) of section 12606.2 of the California Business and Professions Code is inconsistent with any of the safe harbors set forth in 21 C.F.R. § 100.100(a).  Thus, this provision is not consistent with the requirements imposed by Section 403(d) of

FDCA, 21 U.S.C. § 343(d), or any regulation promulgated pursuant thereto. Thus, this provision is not operative because it is not identical to the federal requirements. (*See* Cal. Bus. & Prof. Code § 12606.2(f)); *Stewart*, 537 F. Supp. 3d at 1155 (finding that California's "mode of commerce" safe harbor at Cal. Bus. & Prof. Code § 12606.2(c)(8) was "not operative" because it was inconsistent with both the FDCA and 21 C.F.R. § 100.100); *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d at 978 ("the actual size exemption in the CLRA is not identical to the federal requirements and is therefore not operative") (citing *Stewart*, 537 F. Supp. 3d at 1154-56).

### I.    Cal. Bus. & Prof. Code § 12606.2(c)(7)(C) – Fill Line

53.    A line or a graphic that represents the Product and a statement communicating that the line or a graphic represents the Product such as "Fill Line" are not clearly and conspicuously depicted on exterior packaging of the Product.

### J.    Cal. Bus. & Prof. Code § 12606.2(c)(8) – Mode of Commerce

54.    The mode of commerce allows the consumer to view or handle the physical container or product. In particular, the website at amazon.com allows the consumer to view the physical container or product.

### K.    The Operative Slack-Fill Safe Harbor Provisions Do Not Apply Here.

55.    Because none of the safe harbor provisions in the CFPLA that are operative because they are consistent with the FDCA apply to the Product's container or packaging, the container contains nonfunctional slack-fill in violation of section 110690 of the California Health and Safety Code and section 12606.2 of the California Business and Professions Code, and are, therefore, misleading as a matter of law.

56.    Defendant's false, deceptive, and misleading filling of the Product containers is unlawful under state consumer protection and packaging laws.

57.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

### CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within the state of California who purchased the Product containing nonfunctional slack-fill from a retailer within the statute of limitations period and whose rights were violated as described above.**

59.     <u>NUMEROSITY</u>: Plaintiff does not know the number of Class members but believes the number to be in the tens of thousands, at minimum. The exact identities of Class members may be ascertained by the records maintained by Defendant or California retailers.

60.     <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

a.     Whether Defendant engaged in the wrongful conduct described above;

b.     Whether Plaintiff and Class members are entitled to actual damages in the form of a price premium to be calculated on a classwide basis; and

c.     Whether Class members are entitled to injunctive relief.

61.     <u>TYPICALITY</u>: As a person located in California who purchased the Product from a retailer, who was misled by the size of the Product's container, Plaintiff is asserting claims that are typical of the Class.

62.     <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

63.     <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient.  Even

if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### COMMON LAW FRAUD

64.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

65.    The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

66.    Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

a.    **Who**: The false or misleading representations were made by the Defendant and the individuals employed by Defendant who make packaging and labeling decisions.

b.    **What**: The false or misleading representation was the filling of the Product in an oversized container, which implied to the reasonable consumer that the container had more whey protein powder than it actually contained.

c.    **When**: The false or misleading representation has been made continuously through the statute of limitations period, as it is made each time a package is sold – including when Plaintiff purchased the Product in October 2024.

d.    **Where**: The false or misleading representation was made on Defendant's packaging of the Product sold at retailers in California including online retailers including amazon.com at which Plaintiff purchased the Product.

e.    **Why**: Defendant made the false or misleading representation to induce consumers to purchase the Product, to cause them to pay more for the Product, and to take market share and profits from its competitors.

67.    **Knowledge**: Defendant knows that the Product's packaging has significant quantities of nonfunctional slack-fill or empty space, knows that consumers are influenced by the size and volume of the Product container to purchase the Product, knows that consumers believe that it is full, and knows that it is deceiving consumers.

68.    **Intent to defraud**: Defendant intends for consumers to purchase the Product under the mistaken belief that the package is full so that Defendant can capture sales it would not have otherwise received and can increase profits.

69.    **Justifiable reliance**: Plaintiff's reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size.

70.    **Resulting damage**: Plaintiff was damaged by paying more for the Product than Plaintiff would have paid and receiving less Product than Plaintiff expected to receive.  To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the Product) and was damaged by that change of position (by receiving less than Plaintiff paid for and reasonably expected to receive).

## <u>SECOND CAUSE OF ACTION</u>

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### CALIFORNIA CIVIL CODE § 1750, *et seq.*

71.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

72.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

73.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(5) and 1770(a)(9) of the CLRA by: (1) representing the Product has characteristics or quantities that it does not have; and (2) advertising and packaging the Product with intent not to sell it as advertised and packaged.

74.    Defendant deceived Plaintiff by filling the Product's packaging, which includes significant nonfunctional slack-fill, in a misleading manner contrary to California slack-fill statutes including the Sherman Law and the CFPLA.

75.    Defendant packaged the Product in packages that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and all consumers.

76.    Defendant deceived Plaintiff by misrepresenting the Product as having characteristics and quantities that it does not have, *e.g.*, that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

77.    Defendant knew that the Product's packaging was misleading and deceptive.

78.    Defendant's packaging of the Product was a material factor in Plaintiff's decision to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff reasonably believed that Plaintiff would receive more product than actually received. Had Plaintiff known the truth of the matter, Plaintiff would have not have purchased the Product.

79.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's deceptive, unfair, and unlawful conduct. Specifically, Plaintiff paid for Product never received.

80.    On or about December 10, 2024, Plaintiff sent a letter notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct, repair, replace, or provide another appropriate remedy of the violations to the putative class. The notice was in writing and sent by certified mail, return receipt requested to Defendant's state of New York mailing address because Defendant has no principal place of business in California. Defendant's website identifies such mailing address on the bottom footer of its website at https://www.gainful.com.

81.    More than 30 days have elapsed since Plaintiff sent such demand letter to Defendant, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

82.    In addition, Plaintiff filed the original Complaint in this action on January 15, 2025, which provided a specific description of Defendant's wrongdoing in violation of the CLRA, and expressed Plaintiff's intention to amend the Complaint to assert claims on behalf of a putative class if

Defendant failed to take all appropriate remedial measures.  Plaintiff served the original Complaint on February 1, 2025 via substituted service.  More than 30 days have elapsed since Defendant was served with the original Complaint, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

83.     Plaintiff seeks injunctive relief, actual damages, statutory damages, and punitive damages under the CLRA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief on all causes of action as follows:

A.      For an order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

B.      For all available legal, equitable, and declaratory relief;

C.      An order enjoining Defendant from continuing to package and/or label the Product as challenged herein;

D.      Actual, statutory, and punitive damages;

E.      Reasonable attorneys' fees and costs; and

F.      All other relief at law or in equity that may be just and proper.

Dated:  May 2, 2025                          PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott J. Ferrell
Attorneys for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On May 2, 2025, I served the foregoing document described as **FIRST AMENDED CLASS ACTION COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐    (BY MAIL)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY FEDERAL EXPRESS OVERNIGHT)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier.  Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐    (BY HAND DELIVERY)   I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document to be delivered by hand to the addressee(s) designated.

☒    (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email or electronic transmission via USA Legal sent on the date shown below to the email addresses of the persons listed in the attached service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on May 2, 2025, at Newport Beach, California.

_____
Mandy K. Jung

FIRST AMENDED CLASS ACTION COMPLAINT

**SERVICE LIST**

Jacob M. Harper, Esq.                          Attorneys for Defendant
Peter K. Bae, Esq.                             GAINFUL HEALTH INC.
Daniel Imakyure, Esq.
Davis Wright Tremaine LLP
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071
Email: jacobharper@dwt.com
Email: peterbae@dwt.com
Email: danielimakyure@dwt.com

# EXHIBIT G

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GAINFUL HEALTH INC., a Delaware corporation,<br><br>Defendant. | Case No.: 5:25-cv-01373-KK-SP<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR: (1) COMMON LAW FRAUD; (2) VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE § 1750 *ET SEQ.*; (3) VIOLATION OF CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*; AND (4) VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*** |

Plaintiff Annette Cody ("Plaintiff") alleges as follows:

## I.   <u>NATURE OF ACTION</u>

1.     Defendant Gainful Health Inc. ("Defendant") manufactures and sells a popular line of protein powder nutritional supplement food products under the "GAINFUL" brand name.   Plaintiff purchased a particular GAINFUL-branded protein powder product within such product line bundled together as a two-unit package named as "Gainful Whey Protein Powder Build Muscle Bundle, Post Workout Support, Whey Isolate + Concentrate, Low Carb, Unflavored with Chocolate, Vanilla, Strawberry & Variety Pack Flavor Boosts, 28 Servings," (the "Product").   As stated in the name of the Product, the total number of servings of the Product is 28 servings.   Each stand-up

pouch or bag within such bundled package, which included two pouches or bags, contained 14 servings per container.  Each stand-up pouch or bag within such bundled package had a net weight of 14.8 ounces (420 grams) according to the front label.  Plaintiff purchased such bundled package of the Product from Defendant's storefront on Amazon.com.  To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product and its entire line of protein powder products in oversized packaging that does not reasonably inform consumers that they are buying approximately 40 percent of a pouch or bag significantly full of air.  In short, Defendant dupes consumers into paying extra for empty space.

2.  Pictures illustrate the deceptive nature of the packaging and the substantial non-functional slack fill inside the package purchased by Plaintiff.  In summary, actual product only occupies approximately 60% of the exterior space represented by the Product's packaging container purchased by Plaintiff.  Attached hereto as **Exhibit "1"** is a true and correct copy of an image depicting the front label of the Product purchased by Plaintiff.  Attached hereto as **Exhibit "2"** is a true and correct copy of an image depicting the back or rear label of the Product purchased by Plaintiff.  Attached hereto as **Exhibit "3"** is a true and correct copy of an image depicting the level of fill within the two stand-up pouches or bags of the Product purchased by Plaintiff immediately after Plaintiff opened them.

3.  The foregoing conduct not only violates California's common law prohibition against fraud, it also violates:  (1) California's Fair Packaging and Labeling Act ("CFPLA"), Cal. Bus. and Prof. Code § 12601 *et seq.*, which provides, "No food containers shall be made, formed, or ***filled*** as to be misleading," (Cal. Bus. & Prof. Code § 12606.2(b)) (emphasis added); (2) California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, which provides, "Any food is misbranded if its container is so made, formed, or ***filled*** as to be misleading," *id.* § 110690 (emphasis added); (3) California's Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750 *et seq.*; (4) California's

- 2 -

False Advertising Law (the "FAL"), California Business & Professions Code § 17500 *et seq.*; and (5) California's Unfair Competition Law (the "UCL"), California Business & Professions Code § 17200 *et seq.*

## II.    PARTIES

4.      Plaintiff Annette Cody ("Plaintiff") is and was at all times mentioned herein a citizen of the State of California.

5.      Defendant is a Delaware corporation.  Defendant's Notice of Removal states that its principal place of business is New York City, New York.  (Notice of Removal ¶ 12; Doc. 1; Page ID #5.)  Defendant manufactures, distributes, and sells certain food products including the Product addressed herein and the entire line of protein powder nutritional supplement food products under the GAINFUL brand name.

## III.    JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.      Defendant's Notice of Removal states that the estimated cost of the injunction sought by Plaintiff "will [e]xceed $75,000."  (Notice of Removal ¶ 15a; Doc. 1; Page ID #6.)

8.      This Court also has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

9.      Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the acts and events giving rise to the claims occurred in this District.

10.      Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

11.     Defendant engaged in intentional acts by operating its Website and making it available to California residents, deceptively advertising its products via its Website to California residents including Plaintiff, expressly aiming its conduct toward California residents by conducting substantial business with residents of the State of California via its Website, and causing economic harm to California residents that Defendant knew would be likely to be suffered in California.  Plaintiff is informed and believes and thereon alleges that Defendant generates a minimum of eight percent of its revenues from its Website based upon interactions with Californians, such that the Website "is the equivalent of a physical store in California." *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020), *review denied*, No. S264780 (Dec. 9, 2020).  Plaintiff is informed and believes and thereon alleges that Defendant sells products to Plaintiff and other California residents as part of its regular course of business.   Plaintiff is informed and believes and thereon alleges that Defendant sells thousands of products to California residents each year.  Plaintiff is informed and believes and thereon alleges that Defendant exercises at least some level of control over the ultimate distribution of its products sold via its Website to the end consumer including products shipped into California.

## IV.     FACTUAL ALLEGATIONS

### A.     Defendant's Filling of Oversized Packaging Is Misleading to Reasonable Consumers.

12.     While the amount of product inside any product packaging is material to any reasonable consumer seeking to purchase that product, over 60% of consumers report that they felt "duped" or "misled" by food packaging of items that they have purchased.[1]   The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13

---

[1]     https://www.shorr.com/resources/blog/2020-food-packaging-consumer-behavior-report/#:~:text=In%20fact%2C%2066%25%20of%20respondents,and%20food%20packaging%20moving%20forward (last visited Aug. 27, 2025).

- 4 -

seconds deciding whether to make an in-store purchase;[2] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[3]

13.　Defendant chose a certain size package for its Product to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

14.　Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

15.　Defendant misleads consumers regarding the quantity of product in the Product's container, which is opaque.  That is, Defendant packages the Product in a container that does not allow the consumer to fully view its contents.  The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

16.　Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of product meaningfully different from the size of the package.　Low income consumers, like Plaintiff, are most likely to be misled by slack fill misrepresentations.[4]

---

[2] Randall Beard, Make the Most of Your Brand's 20-Second Window, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/ (last visited Aug. 27, 2025).
[3] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).
[4]　https://www.canr.msu.edu/news/americans-pay-attention-to-food-labels-but-are-confused-by-what-information-matters (last visited Aug. 27, 2025).

17.     Prior to the point of sale, the Product's packaging significantly impairs consumers from confirming the volume of the contents of the Product.  As mentioned above, the Product's packaging, which is opaque, precludes a consumer from observing the contents before opening.  That is, Defendant packages the Product in a container that does not allow the consumer to fully view its contents.  Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of significant quantities of nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

18.     The information that Defendant provides about the quantity of product on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size (*i.e.*, volume) of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

19.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Product's packages that would be different from a consumer's expectation that the quantity of product is commensurate with the size of the package.

20.     "[C]omparator products may provide evidence of non-functional slack-fill…."  *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 188 (E.D.N.Y. 2018).  Comparator products have significantly less empty space in similar containers.  For example, one comparator product is the "organic Powdered Sugar" product branded under Albertsons Companies, Inc.'s house brand for Pavilions grocery stores known as "organics," which is distributed by Lucerne Foods, Inc. and sold at Pavilions retail grocery stores (the "Comparator Product") in California.  Like the Product, the

- 6 -

Comparator Product is: (1) a food item; (2) a powder; and (3) packaged in a similar type of stand-up pouch style of packaging as used in the packaging of the Product. The Comparator Product contains approximately 86 percent fill level, which is far greater than the Product's level of fill. An image of the Comparator Product advertised for sale on Pavilions's grocery store website at: https://www.pavilions.com/shop/product-details.960462035.html (last visited Aug. 29, 2024) is as follows:



21.    Another comparator product is the "Blueberry Nut Trail Mix" product branded under Target Corporation's house brand known as "Good & Gather," which is distributed by Target Corporation and sold at Target retail stores (the "Comparator Product"). Like the Product, the Comparator Product is: (1) a food; and (2) packaged

in the same type of stand-up pouch type of packaging as used in the packaging of the Product. The Comparator Product contains approximately 89 percent fill level, which is far greater than the Product's level of fill. An image of the Comparator Product advertised for sale on Target's grocery store website at: https://www.target.com/p/blueberry-nut-trail-mix-12oz-good-38-gather-8482/-/A-81426391#lnk=sametab (last visited Aug. 15, 2024) is as follows:



**B.      None of the Slack-Fill Statutory Exceptions Apply to the Product.**

22.      Under California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, "Any food is misbranded if its container is so made, formed, or ***filled*** as to be misleading." *Id.* § 110690 (emphasis

- 8 -

added).  Similarly, California's Fair Packaging and Labeling Act ("CFPLA"), Cal. Bus. and Prof. Code § 12601 *et seq.*, provides, "No food containers shall be made, formed, or ***filled*** as to be misleading."  (Cal. Bus. & Prof. Code § 12606.2(b) (emphasis added).)

23.    "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill."  *Id.* § 12606.2(c).  "Slack fill is the difference between the actual capacity of a container and the volume of product contained therein."  *Id.*  "Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of [enumerated exceptions]."  *Id.*

**1.    Cal. Bus. & Prof. Code § 12606.2(c)(1) – Protection of the Contents**

24.    The empty space in the Product's container does not protect the contents of the Product, which is whey protein powder.  There is no risk of the powder breaking or sustaining damage if there was less empty space in the Product's container.

**2.    Cal. Bus. & Prof. Code § 12606.2(c)(2) – Requirements of the Machines**

25.    The machines used for enclosing the contents of the package would not be affected if there was more fill of the Product added. At most, a simple recalibration of the machines would be required.  Plaintiff is informed and believes and thereon alleges that adjusting these machines would be rather simple.  Indeed, comparator products that use the same type of stand-up pouch or bag packaging used for the Product show that it is possible to significantly increase the level of fill in the Product.

26.    Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling in a clear and conspicuous manner to inform consumers of the amount of the Product actually in the package.

27.    In other words, the machines used for enclosing the contents of the package have the capacity to add more content to the containers used to enclose the contents of the Product.

- 9 -

**3.** **Cal. Bus. & Prof. Code § 12606.2(c)(3) – Unavoidable Product Settling During Shipping and Handling**

28.    The slack-fill present in the Product's packages is not a result of unavoidable product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

**4.** **Cal. Bus. & Prof. Code § 12606.2(c)(4) – Specific Function of Package**

29.    The package of the Product does not perform a specific function that necessitates the slack-fill "such as where packaging plays a role in the preparation or consumption of a food…." (Cal. Bus. & Prof. Code § 12606.2(c)(4).)  The packages of the Product do not perform a specific function inherent to the nature of the food that necessitates the slack-fill.  And, Defendant has failed to clearly communicate to consumers via the Product's packaging or otherwise the need for the package to perform any specific function.

30.    The Product's packaging literally contains no instructions to consumers that they should mix together the Product's whey protein powder with any Flavor Boost within the Product's pouch container.

31.    The Product's rear label provides instructions on how to use the Product as follows:

"**Enjoy your Personalized Protein Powder (plus a tasty Flavor Boost) in a variety of ways:**

**SHAKE**

Mix with 8oz of ice cold milk or plant-based milk in a shaker.  Then, add your desired Flavor Boost and shake vigorously.  For a sweeter, more flavorful shake, try using less liquid."

**BLEND**

Make a nutrient-packed smoothie by blending with 8oz of your favorite beverage, then add frozen fruit, fresh veggies or nut butter.

**BAKE**

Add a scoop to your favorite baked good recipe to pack a protein punch."

32.     Thus, the Product's instructions on using a Flavor Boost packet or "stick" in combination with the Product's whey protein powder indicate that the Product's powder should be mixed with 8 ounces of ice cold milk or plant-based milk "in a shaker" and then the Flavor Boost packet's contents should be added in such "shaker" and shook vigorously.   In other words, the Product's instructions do not instruct consumers to mix together the contents of any Flavor Boost packet or "stick" into the Product's stand-up pouch or bag container.

33.     Each Flavor Boost packet contains a small amount of Flavor Boost powder, which is approximately the volume of a teaspoon (or slightly less).  Thus, if a hypothetical consumer decided to mix together an individual Flavor Boost packet within the Product's pouch container, then significant headspace at the top of the Product's pouch packaging would be unnecessary to accommodate the contents of a Flavor Boost packet because of the de minimis volume of the contents of each Flavor Boost packet.

**5.     Cal. Bus. & Prof. Code § 12606.2(c)(5) – Reusable Package**

34.     The Product's package is not reusable or of any significant value to the Product independent of its function to hold the Product. The package is intended to be discarded immediately after the Product is consumed.

35.     The Product package is not a durable commemorative package.   The Product's package is not a promotional package.

SECOND AMENDED CLASS ACTION COMPLAINT

**6.    Cal. Bus. & Prof. Code § 12606.2(c)(6) – Inability to Increase Fill or Further Reduce Package Size**

36.    The size of the container is not at some minimum package size necessary to accommodate required food labeling exclusive of any nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

37.    Defendant can easily increase the quantity of the Product in each package (or, alternatively, decrease the size of the packages) significantly.

38.    There is no need to use a larger than required container to provide adequate space for the legible presentation of mandatory and necessary labeling information.

**7.    Cal. Bus. & Prof. Code § 12606.2(c)(7)(A) – Visibility of Product's Dimensions Through Exterior Packaging**

39.    The Product's dimensions are not visible through the exterior packaging because the Product's packaging is opaque.

40.    Moreover, paragraph (7) (A) of subdivision (c) of section 12606.2 of the California Business and Professions Code is inconsistent with any of the safe harbors set forth in 21 C.F.R. § 100.100(a).  Thus, this provision is not consistent with the requirements imposed by Section 403(d) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(d)), or any regulation promulgated pursuant thereto.  Thus, this provision is not operative because it is not identical to the federal requirements. (*See* Cal. Bus. & Prof. Code § 12606.2(f)); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1155 (S.D. Cal. 2021) (finding that California's "mode of commerce" safe harbor at Cal. Bus. & Prof. Code § 12606.2(c)(8) was "not operative" because it was inconsistent with both the FDCA and 21 C.F.R. § 100.100); *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 978 (C.D. Cal. 2024) (Vera, J.) ("the actual size exemption in the CLRA is not identical to the federal requirements and is therefore not operative") (citing *Stewart*, 537 F. Supp. 3d at 1154-56).

**8.     Cal. Bus. & Prof. Code § 12606.2(c)(7)(B) – Depiction of Actual Size of the Product**

41.    The actual size of the Product is not clearly and conspicuously depicted on any side of the exterior packaging, excluding the bottom, accompanied by a clear and conspicuous disclosure that the depiction is the "actual size" of the Product.

42.    Moreover, paragraph (7) (B) of subdivision (c) of section 12606.2 of the California Business and Professions Code is inconsistent with any of the safe harbors set forth in 21 C.F.R. § 100.100(a).  Thus, this provision is not consistent with the requirements imposed by Section 403(d) of FDCA, 21 U.S.C. § 343(d), or any regulation promulgated pursuant thereto.  Thus, this provision is not operative because it is not identical to the federal requirements.  (*See* Cal. Bus. & Prof. Code § 12606.2(f)); *Stewart*, 537 F. Supp. 3d at 1155 (finding that California's "mode of commerce" safe harbor at Cal. Bus. & Prof. Code § 12606.2(c)(8) was "not operative" because it was inconsistent with both the FDCA and 21 C.F.R. § 100.100); *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d at 978 ("the actual size exemption in the CLRA is not identical to the federal requirements and is therefore not operative") (citing *Stewart*, 537 F. Supp. 3d at 1154-56).

**9.     Cal. Bus. & Prof. Code § 12606.2(c)(7)(C) – Fill Line**

43.    A line or a graphic that represents the Product and a statement communicating that the line or a graphic represents the Product such as "Fill Line" are not clearly and conspicuously depicted on exterior packaging of the Product.

**10.    Cal. Bus. & Prof. Code § 12606.2(c)(8) – Mode of Commerce**

44.    The mode of commerce allows the consumer to view or handle the physical container or product.  In particular, the website at amazon.com allows the consumer to view the physical container or product.

**11.    The Operative Slack-Fill Safe Harbor Provisions Do Not Apply Here.**

45.    Because none of the safe harbor provisions in the CFPLA that are operative because they are consistent with the FDCA apply to the Product's container or

- 13 -

packaging, the container contains nonfunctional slack-fill in violation of section 110690 of the California Health and Safety Code and section 12606.2 of the California Business and Professions Code, and are, therefore, misleading as a matter of law.

46.  Defendant's false, deceptive, and misleading filling of the Product containers is unlawful under state consumer protection and packaging laws.

47.  Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

**C.  All Product Packages Have Similar Non-Functional Slack-Fill Regardless of the Protein Base or Formula.**

48.  Defendant manufactures and sells its protein powder nutritional supplement food products under the GAINFUL brand name with different types of protein bases or formula (*e.g.*, Whey, Plant / Vegan, Low Lactose Whey, Ketogenic).

49.  The manufacturing process to fill and seal the containers of protein powder nutritional supplement food products under the GAINFUL brand name is either substantially similar or identical regardless of the specific protein base or formula (*e.g.*, Whey, Plant / Vegan, Low Lactose Whey, Ketogenic) such that all varieties and types of Defendant's protein powder products contain similar amounts of non-functional slack-fill regardless of the specific variety.

**D.  Plaintiff's Transaction**

50.  On October 26, 2024, Plaintiff purchased the Product, which was purchased as part of a bundle containing two units of the Product's stand-up pouches or bags filled with protein powder, for personal use from a commercial website, amazon.com, at a price of $65.00.  Defendant used such amazon.com website as its storefront to advertise and sell the Product directly to consumers.  Attached hereto as **Exhibit "4"** is a true and correct copy of a webpage setting forth the invoice or the order details of Plaintiff's purchase transaction of the Product via Defendant's

- 14 -

storefront on amazon.com, which is redacted solely as to Plaintiff's order number, shipping address (besides disclosing the state of such shipping address as California), and payment card information.

51. The bundle also contained GAINFUL-branded "Flavor Boost" packets or "sticks" in four different cartons including: (1) Rich Chocolate, (2) Madagascar Vanilla, (3) Strawberry Cream, and (4) Variety Pack flavors. The Variety Pack flavors include Chocolate Peanut Butter, Strawberry Cream, Rich Chocolate, Cookies & Cream, Sea Salt Caramel, Madagascar Vanilla, and Cinnamon Toast. Each "Flavor Boost" carton contains 7 packets or "sticks".

52. In making the purchase, Plaintiff relied upon the packaging (depicted on the amazon.com website), which is opaque, including the size of the package, which was designed to encourage consumers like Plaintiff to purchase the Product. Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Product, or would not have paid a price premium for the Product, had Plaintiff known that the size of the package and product label were false or misleading.

53. Plaintiff had dual motivations for purchasing the product. First, Plaintiff is a consumer rights "tester" who creates public benefit by ensuring that companies comply with their obligations under California law. Second, Plaintiff was genuinely interested in consuming and enjoying the Product, and did so – with disappointment that the package had significant amounts of empty space.

54. Plaintiff's status as a dual motivation tester is both necessary and appropriate. First, it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes. *See Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023). Second, nearly all consumers have dual motives, as there are usually multiple reasons behind their purchasing decisions. *See*

*Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.).

55.    To be clear, Plaintiff would not have purchased the Product had Plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to Plaintiff's expectations.

**E.    Plaintiff's Legal Remedy Is an Inadequate Remedy at Law**

56.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.  *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 n.9 (C.D. Cal. 2021) (Olguin, J.) (holding that alternative pleading at the pleading stage is acceptable) (citing cases).

57.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  *Coleman*, 554 F. Supp. 3d at 1065 (holding that "plaintiff has sufficiently established at this stage that she lacks an adequate remedy at law with respect to her claims for equitable relief" because "the court is persuaded that" "her allegations sufficiently plead that 'restitution under the CLRA or UCL would be more certain, prompt, or efficient' than the monetary damages she seeks, but may ultimately not attain").  In particular, the elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claim under the CLRA.  *See Ostrovskaya v. St. John Knits, Inc.*, 2022 WL 2102895, at *5 (C.D. Cal. Mar. 31, 2022) (Gee, J.) ("The FAL and the UCL provide for only restitutionary and injunctive relief, whereas the CLRA also provides for monetary damages. In many cases, liability under the three statutes will involve the same facts and elements.  But here, Plaintiff predicates her FAL claim largely on a specific statutory provision…. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while still being unable to convince a jury of the more subjective claim that 'members of the public are likely to be deceived,' and therefore fail with respect to her

- 16 -

CLRA claim. Plaintiffs alleges as much in her pleading. Thus, she has shown how restitution—her only available remedy under the FAL—'would be more certain, prompt, or efficient than the legal remedies' available under the CLRA.") (internal citations omitted); *Farmer v. BarkBox, Inc.*, 2023 WL 8522984, at *6 (C.D. Cal. Oct. 6, 2023) ("Plaintiff's CLRA claim includes more 'stringent elements' than her UCL claim, such that she may demonstrate her right to restitution under the UCL but fall short of establishing her right to damages under the CLRA.").

58.    For example, Plaintiff's claims under the UCL and FAL (equitable claims seeking restitution) are predicated on specific statutory provisions under the CFPLA, which prohibits food containers that are "filled as to be misleading." (Cal. Bus. & Prof. Code § 12606.2(b).)   "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill.   Slackfill is the difference between the actual capacity of a container and the volume of product contained therein.   Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following [enumerated reasons]." *Id.* § 12606.2(c).   Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the UCL and FAL, while not being able to prove one or more elements of Plaintiff's legal claim under the CLRA seeking damages governed by the reasonable consumer test.

59.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value.   In contrast, Plaintiff can seek restitution without making this showing.   This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's representations.   Obtaining a full refund at law is less certain than obtaining a refund in equity.

60.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces.   Only an injunction can remedy this threat of future harm.

61.    The injuries of Plaintiff cannot be wholly remedied by monetary relief and such remedies at law are inadequate.  While monetary damages would compensate Plaintiff for past harm, monetary damages alone would be insufficient to remedy the ongoing harm experienced by Plaintiff from Defendant's conduct.  Monetary damages would not guarantee that Plaintiff would avoid being misled by the deceptive practice of filling of Defendant's containers in the future with non-functional empty space. Plaintiff will continue to be misled.

62.    Because retrospective monetary damages will not prevent the future harm only remediable by an injunction ordering Defendant to fill its containers in a non-misleading manner, injunctive relief is being sought herein.  *See, e.g.*, *Linton v. Axcess Financial Servs., Inc.*, 2023 WL 4297568, at *3 (N.D. Cal. June 30, 2023) ("[Defendant] contends that *Sonner* is specifically limited to restitution claims and does not preclude claims for injunctive relief to prevent future harm. The Court agrees— while monetary damages would compensate [Plaintiff] for past loans acquired from [Defendant] under the allegedly unlawful interest rates, they would not guarantee that [Plaintiff] (or other borrowers) can avoid these interest rates in the future. Because retrospective monetary damages will not prevent the future harm only remediable by an injunction ordering [Defendant] to stop issuing loans with unfair interest rates, the Court declines to extend *Sonner*'s inadequate-remedy-at-law requirement to [Plaintiff's] injunctive relief claim. Therefore, the Court has equitable jurisdiction over [Plaintiff's] claim for injunctive relief."); *Kryzhanovskiy v. Amazon.com Services, Inc.*, 2022 WL 2345677, at *4 (E.D. Cal. June 29, 2022) ("While the Ninth Circuit's decision in *Sonner* bars equitable restitution for past harms that are otherwise subject to an adequate legal remedy, it does not bar the issuance of an injunction to prevent *future* harms.") (emphasis in original); *id.* at *6 ("Based on the allegations of plaintiff's FAC and the relevant caselaw, the court concludes that plaintiff's allegations are sufficient to support her claim that she and the putative class lack an adequate remedy at law because monetary damages alone would be insufficient to remedy the alleged ongoing harm.

- 18 -

Accordingly, the court will deny defendants' motion to dismiss plaintiff's UCL claim for injunctive relief to the extent that claim is premised on alleged future harm.") (internal citation omitted); *Johnson v. Estension Logistics, LLC*, 2022 WL 1843213, at *9 (C.D. Cal. Mar. 30, 2022) (Kronstadt, J.) ("Assuming *Sonner* does apply, the Consolidated Complaint sufficiently pleads an inadequate remedy at law with respect to Defendants' alleged continuing unlawful conduct."); *id.* at *10 ("Defendants' challenge to the UCL claim fails because Plaintiffs' allegations are sufficient to support a claim for injunctive relief. By alleging that many of Defendants' unlawful actions are ongoing, Plaintiffs have adequately alleged injuries caused by Defendants that could be redressed by an injunction."); *Barrett v. Optimum Nutrition*, 2022 WL 2035959, at *6 n.8 (C.D. Cal. Jan. 12, 2022) (Gee, J.) ("Plaintiff *has* alleged that she lacks a remedy at law for the possibility of *future* harm, which is addressed by her claims for injunctive relief. The claims therefore survive to the extent they seek injunctive relief (or money damages).") (emphasis in original); *Ford v. Hyundai Motor America*, 2021 WL 7448507, at *28 (C.D. Cal. Oct. 5, 2021) (Aenlle-Rocha, J.) (recognizing the distinction between retrospective and prospective injunctive relief within the confines of whether monetary damages can serve as an adequate remedy at law); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021) ("The holding in *Sonner* applies only to 'equitable *restitution* for *past* harm under the UCL,' not to an *injunction* for *future* harm. 971 F.3d. at 884 (emphasis added). Therefore, Plaintiffs are not barred from seeking equitable relief in the form of an injunction under the UCL.") (emphasis in original); *Stewart*, 537 F. Supp. 3d at 1127-28 ("Plaintiffs face an injury of being unable to rely upon Defendant's 'non-GMO' marketing statements in deciding whether to purchase the product in the future. Unlike the other alleged forms of deception, Plaintiffs cannot check the undisputed serving size, net weight, nutrition facts, or ingredient list on the products to determine if the at-issue ingredients are genetically modified. Plaintiffs face an injury of being unable to rely upon Defendant's 'non-GMO' marketing statements in deciding whether to purchase the product in the future.

- 19 -

Pursuant and similar to *Davidson*, Plaintiffs show a concrete injury that subjects Plaintiffs to an imminent or actual threat of future harm. Therefore, Plaintiffs establish Article III standing to assert their claim for injunctive relief based on their theory of misleading 'non-GMO' marketing statements."); *id.* at 1160 ("Plaintiffs do show future harm as to the "non-GMO" deceptive marketing statements. Thus, Plaintiffs have plausibly shown that they lack an adequate remedy at law to at least some degree. The Court finds this finding sufficient to overcome Defendant's *Sonner* challenge at this stage.") (internal citation omitted); *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at *8 (C.D. Cal. May 18, 2021) (Wright, J.) ("Plaintiff may still amend such [UCL and FAL] claims to the extent they seek injunctive relief"); *Rothman v. Equinox Holdings, Inc.*, 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021) (Snyder, J.) ("with respect to plaintiff's prayer for injunctive relief, the allegations in the FAC provide a basis for the Court to infer that plaintiff cannot, at this stage 'quantify [his] actual damages for future harm' with any certainty"); *Krause-Pettai v. Unilever U.S., Inc.*, 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021) (citing *Spirtos v. Allstate Inc., Co.*, 2003 WL 25900368, at *4 (C.D. Cal. Jan. 10, 2003) (Klausner, J.) (stating plaintiffs' "continual injuries, if proven to exist," may warrant injunction)); *Andino v. Apple, Inc.*, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021) ("The Court however agrees with Plaintiff that *Sonner* does not warrant dismissal of his request for injunctive relief. Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice.") (citing *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("Assuming that *Sonner* applies to injunctive relief, [plaintiff] has shown that monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at. [Plaintiff's] remedy at law, damages, is retrospective. An injunction is prospective. Damages would compensate [Plaintiff] for his past purchases. An injunction would ensure that he (and other consumers) can rely on [Defendant's] representations in the future.  Accordingly, retrospective damages are not an adequate

- 20 -

remedy for that prospective harm.") (internal citation omitted)); *Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at *7 (C.D. Cal. Feb. 10, 2021) (Staton, J.) ("Plaintiffs have alleged ongoing violations of the law that pose a continuing risk of harm to Sunrise residents and the general public….Further, Plaintiffs seek a 'public injunction,' which is available under the UCL and CLRA and is "primarily 'for the benefit of the general public.' " *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85 (2017) ("[P]ublic injunctions benefit 'the public directly by the elimination of deceptive practices[.]") Defendants do not explain how damages will adequately 'benefit the general public' in a manner equivalent to an injunction."); *Dahlin v. Under Armour, Inc.*, 2020 WL 6647733, at *4 (C.D. Cal. July 31, 2020 (Anderson, J.) ("the Court is unable, at this stage, to conclude that Plaintiff has an adequate remedy at law. Indeed, even if Plaintiff could not obtain restitution, she might be able to obtain injunctive relief. As a result, the Court cannot conclude, at this stage, that Plaintiff has an adequate damages remedy that forecloses all equitable relief.").

63. Plaintiff intends to purchase the Product or other GAINFUL-branded protein powder products in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product and other protein powder products is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's packaging of the Product and other protein powder products.

64. Plaintiff would purchase the Product or other GAINFUL-branded protein powder products from Defendant again in the future if Plaintiff could feel sure that Defendant's filling of the Product or other GAINFUL-branded protein powder products is accurate and lawful.

65. But, without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's products are not misleading especially whether such product containers are filled in a misleading manner. Thus, Plaintiff is unable to rely on

Defendant's packaging of the Product or other GAINFUL-branded protein powder products in the future, and so Plaintiff cannot purchase the Product or other GAINFUL-branded protein powder products even though Plaintiff would like to purchase them.

## V.    CLASS ACTION ALLEGATIONS

66.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons who purchased a GAINFUL-branded protein powder product in California from January 15, 2021 through the date a class is certified for primarily personal, family or household purposes, and not for resale.**

67.    Excluded from such class definition are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (3) persons or entities who distribute or resell a Gainful protein powder product; (4) government entities; and (5) claims for personal injury and/or emotional distress.

68.    <u>NUMEROSITY</u>: Plaintiff does not know the number of Class members but believes the number to be in the tens of thousands, at minimum. The exact identities of Class members may be ascertained by the records maintained by Defendant or California retailers.

69.    COMMONALITY: Common questions of fact and law exist as to all Class members, and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

a.    Whether Defendant engaged in the wrongful conduct described above;

b.    Whether Class members are entitled to injunctive relief; and

- 22 -

c.     Whether Plaintiff and Class members are entitled to actual damages and/or restitution in the form of either a full refund or a price premium to be calculated on a classwide basis.

70.     <u>TYPICALITY</u>: As a person located in California who purchased the Product from a retailer, who was misled by the size of the Product's containers, Plaintiff is asserting claims that are typical of the Class.

71.     <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

72.     <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient.  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## VI.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Common Law Fraud

73.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

74.     The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

75.     Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

a. **Who**: The false or misleading representations or omissions were made by the Defendant and the individuals employed by Defendant who make packaging and labeling decisions.

b. **What**: The false or misleading representation was the filling of the Product in an oversized container, which implied to the reasonable consumer that the container had more protein powder than it actually contained. The omission of material facts was the failure to disclose the non-functional slack-fill contained therein.

c. **When**: The false or misleading representation and omission have been made continuously through the statute of limitations period, as it is made each time a package is sold – including when Plaintiff purchased the Product on October 26, 2024.

d. **Where**: The false or misleading representation were made on Defendant's packaging of the Product sold at retailers in California including online retailers including amazon.com at which Plaintiff purchased the Product and Defendant's own website. The omissions relate to the Defendant's packaging and retailer websites.

e. **Why**: Defendant made the false or misleading representation and omission to induce consumers to purchase the Product, to cause them to pay more for the Product, and to take market share and profits from its competitors.

76. **Knowledge**: Defendant knows that the Product's packaging has significant quantities of nonfunctional slack-fill or empty space, knows that consumers are influenced by the size and volume of the Product container to purchase the Product, knows that consumers believe that it is full, and knows that it is deceiving consumers.

77. **Intent to defraud**: Defendant intends for consumers to purchase the Product under the mistaken belief that the package is full so that Defendant can capture sales it would not have otherwise received and can increase profits.

SECOND AMENDED CLASS ACTION COMPLAINT

78. **Justifiable reliance**: Plaintiff's reliance on the size of the package was reasonable, as consumers reasonably expect that a package will be filled commensurate with its size.

79. **Resulting damage**: Plaintiff was damaged by paying more for the Product than Plaintiff would have paid and receiving less Product than Plaintiff expected to receive. To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the Product) and was damaged by that change of position (by receiving less than Plaintiff paid for and reasonably expected to receive).

**SECOND CAUSE OF ACTION**

**Violation of California Consumers Legal Remedies Act**

**California Civil Code § 1750 et seq.**

80. Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

81. Plaintiff is an individual who acquired, by purchase, the Product, which is a "good[]," *i.e.*, a tangible chattel bought for use primarily for personal, family, or household purposes within the meaning of Civil Code § 1761(a).

82. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods or services to any consumer. (Cal. Civ. Code § 1770(a).)

83. The practices described herein, specifically Defendant's packaging, advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate sections 1770(a)(5) and 1770(a)(9) of the CLRA by: (1) representing the Product has characteristics or quantities that it does not have; and (2) advertising and packaging the Product with intent not to sell it as advertised and packaged.

84. Defendant deceived Plaintiff by filling the Product's packaging, which includes significant nonfunctional slack-fill, in a misleading manner contrary to California slack-fill statutes including the Sherman Law and the CFPLA.

85.  Defendant packaged the Product in packages that contain significant nonfunctional slack-fill and made material misrepresentations to deceive Plaintiff and all consumers.  The size of the packaging of the Product combined with the actual amount of Product in the package constitutes Defendant's misrepresentation.  *See Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.*, 2023 WL 2324291, at *15 (N.D. Cal. Feb. 16, 2023); *Escobar v. Just Born, Inc.*, 2017 WL 5125740, at *11 (C.D. Cal. June 12, 2017) (O'Connell, J.) ("Plaintiff does not admit that the box at issue lacks a false statement or misrepresentation. To the contrary, ***Plaintiff maintains that the size of the Products' box itself misrepresents the amount of Product contained within the box***. Plaintiff alleges that the Products' boxes mislead consumers as to the amount of candy contained therein.") (emphasis added); *Costa v. Reliance Vitamin Co., Inc.*, 2023 WL 2989039, at *6 (N.D. Cal. Apr. 18, 2023) ("Taken together, [slack-fill allegations] [are] sufficient to plead an intentional misrepresentation claim"); *Stewart*, 537 F. Supp. 3d at 1139 (noting the plaintiff's allegation that "the CLRA claim premised on slack fill is viable because ***product size is a misrepresentation***." ) (emphasis added).

86.  Defendant deceived Plaintiff by misrepresenting the Product as having characteristics and quantities that it does not have, *e.g.*, that the Product is free of nonfunctional slack-fill when it is not.  In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

87.  "A duty to disclose a material fact can arise if … it is imposed by statute…." *Zeichner v. Nord Security Inc.*, 2024 WL 4951261, at *6 (N.D. Cal. Dec. 2, 2024) (quoting *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40 (2024)).  Here, the CFPLA and Sherman Law both imposed upon Defendant a duty to disclose material facts about the level of fill in food containers to avoid misleading consumers.  For example, by providing various disclosure-based safe harbors in sub-paragraphs (A), (B), and (C) of paragraph (7) of subdivision (c) of section 12606.2 of California's Business

- 26 -

and Professions Code, the Legislature clearly intended to impose a duty to disclose otherwise nonfunctional slack-fill in food containers sold in California.

88.    Defendant violated the foregoing CFPLA requirements by failing to disclose the existence of non-functional slack-fill before selling its protein powder products to California consumers.  Such violations of the CFPLA constitute material omissions by Defendant arising from a statutorily-prescribed duty.

89.    Defendant knew that the Product's packaging was misleading and deceptive.

90.    Defendant's packaging of the Product was a material factor in Plaintiff's decision to purchase the Product. Based on Defendant's packaging of the Product, Plaintiff reasonably believed that Plaintiff would receive more product than actually received. Had Plaintiff known the truth of the matter, Plaintiff would have not have purchased the Product.

91.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's deceptive, unfair, and unlawful conduct. Specifically, Plaintiff paid for Product never received.

92.    On or about December 10, 2024, Plaintiff sent a letter notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct, repair, replace, or provide another appropriate remedy of the violations to the putative class.  The notice was in writing and sent by certified mail, return receipt requested to Defendant's state of New York mailing address because Defendant has no principal place of business in California.  Defendant's website identifies such mailing address on the bottom footer of its website at https://www.gainful.com.

93.    More than 30 days have elapsed since Plaintiff sent such demand letter to Defendant, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

94.     In addition, Plaintiff filed the original Complaint in this action on January 15, 2025, which provided a specific description of Defendant's wrongdoing in violation of the CLRA, and expressed Plaintiff's intention to amend the Complaint to assert claims on behalf of a putative class if Defendant failed to take all appropriate remedial measures.  (*See* Compl. ¶ 32; Doc. 1-1; Page ID #18.)  Plaintiff served the original Complaint on February 1, 2025 via substituted service.  (*See* Stip. for Extension of Time to Respond to Compl. at 2:4-5; Doc. 1-5; Page ID #34.)  More than 30 days have elapsed since Defendant was served with the original Complaint, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

95.     In addition, Plaintiff filed the First Amended Complaint in this action on May 5, 2025, which provided a specific description of Defendant's wrongdoing in violation of the CLRA, and alleged causes of action on behalf of the putative class. Plaintiff served the First Amended Complaint on May 2, 2025.  More than 30 days have elapsed since Defendant was served with the First Amended Complaint, but Defendant failed to respond by correcting, repairing, replacing, or otherwise providing an appropriate remedy of the violations or offering to do so to the entire putative class within a reasonable time.

96.     Plaintiff seeks injunctive relief, actual damages, restitution, statutory damages, and punitive damages under the CLRA.

### THIRD CAUSE OF ACTION

### Violation of False Advertising Law

### Cal. Bus. & Prof. Code § 17500 *et seq.*

97.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

98.     Section 17500 of the California Business and Professions Code states in relevant part, "It is unlawful for any person, firm, corporation or association, or any

- 28 -

employee thereof with ***intent directly or indirectly to dispose of*** real or ***personal property*** or to perform services, professional or otherwise, or anything of any nature whatsoever or ***to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state***, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, ***or any advertising device***, or by public outcry or proclamation, ***or in any other manner or means whatever, including over the Internet, any statement***, concerning that real or ***personal property*** or those services, professional or otherwise, or ***concerning any circumstance or matter of fact connected with the proposed*** performance or ***disposition thereof***, ***which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property*** or those services, professional or otherwise, so advertised at the price stated therein, or ***as so advertised***." (Cal. Bus. & Prof. Code § 17500) (emphasis added).

99.    By committing the acts alleged in this operative Complaint, Defendant has violated Business and Professions Code §§ 17500 *et seq*. In particular, Defendant's filling of its GAINFUL-branded protein powder products are misleading because their containers are oversized and filled as to be misleading, and Defendant fails to disclose non-functional slack-fill in such products' containers in statutorily-prescribed methods consistent with the CFPLA.

100.    As a direct and proximate result of Defendant's misleading filling of its products' containers and its failure to disclose non-functional slack-fill in such containers in statutorily-prescribed methods consistent with the CFPLA, Plaintiff and members of the Class have suffered injury in fact and have lost money.

101.    Plaintiff is entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17535 for monies paid by Plaintiff to Defendant. Defendant should be required to

disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class members, from whom they were unlawfully taken.

### FOURTH CLAIM FOR RELIEF

### Violation of Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200 *et seq.*

102.   Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

103.   The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any act prohibited by the FAL.  Cal. Bus. & Prof. Code § 17204 allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

104.   During the Class period, Defendant committed unlawful business acts or practices as defined by the UCL by violating section 12606.2(b) & (c) of the California Business and Professions Code, section 1770(a)(5) & (9) of the California Civil Code, and section 110690 of the California Health and Safety Code.

105.   As a direct and proximate result of Defendant's deceptive, unfair, and unlawful acts or practices described herein, Plaintiff and members of the Class have suffered injury in fact and have lost money.

106.   Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and members of the Class in the form of payments made to purchase either the Product or other products.   Defendant has profited from its unlawful acts or practices in the amount of those payments and interest accrued thereon.

107.   Plaintiff is entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17203 for monies paid by Plaintiff to Defendant.   Defendant should be required to

- 30 -

disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class members, from whom they were unlawfully taken.

**VII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief on all causes of action as follows:

A.   For an order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

B.   For all available legal, equitable, and declaratory relief;

C.   An order enjoining Defendant from continuing to package and/or label the Product and/or Defendant's entire line of GAINFUL-branded protein powder products as challenged herein;

D.   Actual damages;

E.   Statutory damages under section 1780(a)(1) of the California Civil Code;

F.   Punitive damages;

G.   Reasonable attorneys' fees and costs; and

H.   All other relief at law or in equity that may be just and proper.


Dated:  August 29, 2025                    PACIFIC TRIAL ATTORNEYS, APC



                                           By: _/s/ Scott J. Ferrell___
                                           Scott J. Ferrell
                                           Attorneys for Plaintiff and the Proposed Class

# Exhibit 1



# Exhibit 2



**Nutrition Facts**

14 servings per container
Serving size 1 scoop (30g)

Amount Per Serving
**Calories** 110

% Daily Value*

| | |
|---|---|
| Total Fat 1g | 1% |
| Saturated Fat 0.5g | 4% |
| Trans Fat 0g | |
| Cholesterol 30mg | 10% |
| Sodium 45mg | 2% |
| Total Carbohydrate 4g | 2% |
| Dietary Fiber 0g | 0% |
| Total Sugars <1g | |
| Includes 0g Added Sugars | 1% |
| Protein 23g | 43% |

| | |
|---|---|
| Vitamin D 0.2mcg | 0% |
| Calcium 110mg | 2% |
| Iron 0.5mg | 2% |
| Potassium 560mg | 2% |
| Vitamin A 60mcg | 4% |
| Vitamin C 0mg | 6% |
| Magnesium 20mg | 4% |
| | 4% |

Enjoy your Personalized Protein Powder
(plus a tasty Flavor Boost) in a variety of ways:

**SHAKE**
Mix with 8oz of ice cold milk or plant-based milk
in a shaker. Then, add your desired Flavor Boost
and shake vigorously. For a sweeter,
more flavorful shake, try using less liquid.

**BLEND**
Make a nutrient-packed smoothie by blending
with 8oz of your favorite beverage, then add
frozen fruit, fresh veggies or nut butter.

**BAKE**
Add a scoop to your favorite baked good recipe
to pack a protein punch.

Reach out to your Registered Dietitian at
rd@gainful.com for more tips and follow us
@gainful for recipe inspiration!

**GAINFUL**

Questions? Visit help.gainful.com

**NOTICE**
Use this product as a food supplement only. Gainful is
intended for healthy, active adults over the age of 18.
Store in a cool, dark, dry place for up to 1 year.

# Exhibit 3



Exhibit 4



## Final Details for Order #

Print this page for your records.

**Order Placed:** October 26, 2024
**Amazon.com order number:**
**Order Total:** $59.53

---

### Shipped on October 27, 2024

| Items Ordered | Price |
|---|---|
| 1 of: *Gainful Whey Protein Powder Build Muscle Bundle, Post Workout Support, Whey Isolate + Concentrate, Low Carb, Unflavored with Chocolate, Vanilla, Strawberry & Variety Pack Flavor Boosts, 28 Servings* | $65.00 |

Sold by: Gainful Health (seller profile)

Supplied by: Gainful Health (seller profile)

Condition: New

**Shipping Address:**
Annette Cody

▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮, CA ▮▮▮▮
United States

**Shipping Speed:**
FREE Prime Delivery

---

### Payment information

| | |
|---|---|
| **Payment Method:** | Item(s) Subtotal: $65.00 |
| ▮▮▮▮▮▮▮▮ | Shipping & Handling: $0.00 |
| | Your Coupon Savings: -$9.75 |
| **Billing address** | ----- |
| Annette Cody | Total before tax: $55.25 |
| ▮▮▮▮▮▮▮▮ | Estimated tax to be collected: $4.28 |
| ▮▮▮▮, CA ▮▮▮▮ | ----- |
| United States | **Grand Total: $59.53** |
| **Credit Card transactions** | ▮▮▮▮▮▮: October 27, 2024: $59.53 |

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2024, Amazon.com, Inc. or its affiliates

Back to top

English          United States          Help

Conditions of Use    Privacy Notice    Consumer Health Data Privacy Disclosure    Your Ads Privacy Choices
© 1996-2024, Amazon.com, Inc. or its affiliates

# EXHIBIT H

## Claims Brought By Annette Cody and Pacific Trial Attorneys

| No. | Plaintiff | Defendant | Case No. | Court | Filed On | Claim Type |
|-----|-----------|-----------|----------|-------|----------|-----------|
| 1 | Annette Cody | DOLLAR SHAVE CLUB INC. | 2022-01272183 | OC Superior Ct | 7/28/22 | CIPA § 638 (pen/trap) |
| 2 | Annette Cody | Tiffany & Co. | 30-02022-01272211 | OC Superior Ct | 7/28/22 | CIPA § 638 (pen/trap) |
| 3 | Annette Cody | Columbia Sportswear Co. | 30-02022-01273036 | OC Superior Ct | 8/2/22 | CIPA § 638 (pen/trap) |
| 4 | Annette Cody | Warby Parker, Inc. | 30-02022-01273354 | OC Superior Ct | 8/2/22 | CIPA § 638 (pen/trap) |
| 5 | Annette Cody | Boscovs, Inc. | 8:22-cv-1434 | C.D. Cal | 8/2/22 | CIPA § 638 (pen/trap) |
| 6 | Annette Cody | Promises Behavioral Health, Llc | 8:22cv1529 | C.D. Cal | 8/16/22 | CIPA § 638 (pen/trap) |
| 7 | Annette Cody | Athletic Propulsion Labs Llc | 8:22cv1627 | C.D. Cal | 9/1/22 | CIPA § 638 (pen/trap) |
| 8 | Annette Cody | Movado Group, Inc. | 37-02022-00047956 | SD Superior Court | 11/30/22 | CIPA § 638 (pen/trap) |
| 9 | Annette Cody | Ashley Furniture Industries, LLC | 07-02022-00048182 | SD Superior Court | 12/1/22 | CIPA § 638 (pen/trap) |
| 10 | Annette Cody | PAULA'S CHOICE, LLC | 2022-01298397 | OC Superior Ct | 12/21/22 | CIPA § 638 (pen/trap) |
| 11 | Annette Cody | Paulas Choice, Llc | 30-2022-01298397 | OC Superior Ct | 12/21/22 | CIPA § 638 (pen/trap) |
| 12 | Annette Cody | Lacoste Usa, Inc. | 8:23cv235 | C.D. Cal | 2/7/23 | CIPA § 638 (pen/trap) |
| 13 | Annette Cody | Ring LLC | 3:23cv562 | N.D. Cal | 2/8/23 | CIPA § 638 (pen/trap) |
| 14 | Annette Cody | SKULLCANDY INC. | 23STCV06828 | LA Superior Court | 3/29/23 | CIPA § 638 (pen/trap) |
| 15 | Annette Cody | Abt Electronics, Inc. | 23STCV06834 | LA Superior Court | 3/29/23 | CIPA § 638 (pen/trap) |
| 16 | Annette Cody | VISUALLY, INC. | 23STCV07556 | LA Superior Court | 4/5/23 | CIPA § 638 (pen/trap) |
| 17 | Annette Cody | P.C. Richard And Son Service Company, Inc. | 23STCV07578 | LA Superior Court | 4/5/23 | CIPA § 638 (pen/trap) |
| 18 | Annette Cody | E. Gluck Corporation | 4:23cv2286 | N.D. Cal | 5/10/23 | CIPA § 638 (pen/trap) |
| 19 | Annette Cody | ZWIFT, INC | 23STCV12329 | LA Superior Court | 6/1/23 | CIPA § 638 (pen/trap) |
| 20 | Annette Cody | UNITED TIME GROUP LLC | 23STCV19524 | LA Superior Court | 8/15/23 | CIPA § 638 (pen/trap) |
| 21 | Annette Cody | SMARTDRAW SOFTWARE, LLC | 23STCV19827 | LA Superior Court | 8/18/23 | CIPA § 638 (pen/trap) |
| 22 | Annette Cody | Glasses Usa, Inc. | 8:23cv1545 | C.D. Cal | 8/19/23 | CIPA § 638 (pen/trap) |
| 23 | Annette Cody | MODANI HOLDINGS, LLC | 23STCV27495 | LA Superior Court | 11/8/23 | CIPA § 638 (pen/trap) |
| 24 | Annette Cody | Harman International Industries, Inc. | 23STCV28901 | LA Superior Court | 11/27/23 | CIPA § 638 (pen/trap) |
| 25 | Annette Cody | B & H FOTO & ELECTRONICS CORP. | 24STCV00032 | LA Superior Court | 1/2/24 | CIPA § 638 (pen/trap) |
| 26 | Annette Cody | BACKYARD DESIGN USA, LLC | 24STCV00067 | LA Superior Court | 1/2/24 | CIPA § 638 (pen/trap) |
| 27 | Annette Cody | SUNDANCE HOLDINGS GROUP, LLC | 24STCV01046 | LA Superior Court | 1/16/24 | CIPA § 638 (pen/trap) |
| 28 | Annette Cody | RK HOLDINGS, LLP | 24STCV01111 | LA Superior Court | 1/16/24 | CIPA § 638 (pen/trap) |
| 29 | Annette Cody | BH SECURITY, LLC | 24STCV01627 | LA Superior Court | 1/22/24 | CIPA § 638 (pen/trap) |
| 30 | Annette Cody | BRIGHT MARKET, LLC | 24STCV01660 | LA Superior Court | 1/22/24 | CIPA § 638 (pen/trap) |
| 31 | Annette Cody | INDUSTRIAL COLOR, INC. | 24STCV02809 | LA Superior Court | 2/2/24 | CIPA § 638 (pen/trap) |
| 32 | Annette Cody | DOLLS KILL, INC. | 24STCV04715 | LA Superior Court | 2/26/24 | CIPA § 638 (pen/trap) |
| 33 | Annette Cody | SCHOOL SPECIALTY, LLC | 24STCV14379 | LA Superior Court | 6/10/24 | CIPA § 638 (pen/trap) |
| 34 | Annette Cody | STORMWATERONE LLC | 24STCV19464 | LA Superior Court | 8/5/24 | CIPA § 638 (pen/trap) |
| 35 | Annette Cody | YELLOWBRICK DATA INC. | 25STCV23484 | LA Superior Court | 8/11/25 | CIPA § 638 (pen/trap) |
| 36 | Annette Cody | TAPESTRY, INC. | 2024-01448563 | OC Superior Ct | 12/26/24 | Reference Pricing |
| 37 | Annette Cody | BBBY ACQUISITION CO. LLC | CVRI2500377 | Riverside Superior Court | 1/27/25 | Reference Pricing |
| 38 | Annette Cody | KONG CAPITAL LLC | 25STCV05781 | LA Superior Court | 3/3/25 | Reference Pricing |
| 39 | Annette Cody | Jill Acquisition LLC | 25CU013438C | SD Superior Court | 3/14/25 | Reference Pricing |
| 40 | Annette Cody | BAREWEB, INC. | 25STCV08356 | LA Superior Court | 3/24/25 | Reference Pricing |
| 41 | Annette Cody | FULLBEAUTY BRANDS INC. | 25cv1334 | C.D. Cal | 5/27/25 | Reference Pricing |
| 42 | Annette Cody | TITLE 9 SPORTS INC. | 25STCV17567 | LA Superior Court | 6/17/25 | Reference Pricing |
| 43 | Annette Cody | Diamond Foods, LLC | 24STCV19905 | LA Superior Court | 8/7/24 | Slack Fill Claim |
| 44 | Annette Cody | Black Rifle Coffee Company, LLC | 24STCV21048 | LA Superior Court | 8/19/24 | Slack Fill Claim |
| 45 | Annette Cody | IDAHOAN FOODS LLC | 24STCV20995 | LA Superior Court | 8/19/24 | Slack Fill Claim |
| 46 | Annette Cody | The J. M. Smucker Company | 24STCV21080 | LA Superior Court | 8/20/24 | Slack Fill Claim |
| 47 | Annette Cody | Cooper Street Cookies, Llc | 24STCV21642 | LA Superior Court | 8/26/24 | Slack Fill Claim |
| 48 | Annette Cody | JJ'S SWEETS, INC. | 24STCV22125 | LA Superior Court | 8/28/24 | Slack Fill Claim |
| 49 | Annette Cody | Nature'S Path Foods | 24STCV22086 | LA Superior Court | 8/29/24 | Slack Fill Claim |
| 50 | Annette Cody | SUGAR FOODS, LLC | 24STCV22083 | LA Superior Court | 8/29/24 | Slack Fill Claim |
| 51 | Annette Cody | Conagra Brands, Inc. | 24STCV22337 | LA Superior Court | 8/30/24 | Slack Fill Claim |
| 52 | Annette Cody | ROSINA FOOD PRODUCTS, INC. | 24STCV22375 | LA Superior Court | 8/30/24 | Slack Fill Claim |
| 53 | Annette Cody | BOB EVANS FARMS, LLC | 24STCV23325 | LA Superior Court | 9/10/24 | Slack Fill Claim |
| 54 | Annette Cody | CAULIPOWER, LLC | 24STCV23675 | LA Superior Court | 9/13/24 | Slack Fill Claim |
| 55 | Annette Cody | LEANER CREAMER, LLC | 24STCV24270 | LA Superior Court | 9/19/24 | Slack Fill Claim |
| 56 | Annette Cody | JOJO'S CHOCOLATE LLC | 24STCV24974 | LA Superior Court | 9/26/24 | Slack Fill Claim |
| 57 | Annette Cody | Muddy Bites, Inc. | 24STCV26749 | LA Superior Court | 10/14/24 | Slack Fill Claim |
| 58 | Annette Cody | TRIBE 9 FOODS LLC | 24STCV28162 | LA Superior Court | 10/28/24 | Slack Fill Claim |
| 59 | Annette Cody | John B. Sanfilippo & Son, Inc. | 24STCV30572 | LA Superior Court | 11/20/24 | Slack Fill Claim |
| 60 | Annette Cody | QUIRCH FOODS LLC | 2024-01444095 | OC Superior Ct | 12/2/24 | Slack Fill Claim |
| 61 | Annette Cody | SEAPOINT FARMS, LLC | 2024-01445173 | OC Superior Ct | 12/6/24 | Slack Fill Claim |
| 62 | Annette Cody | CVS PHARMACY, INC. | 24STCV33023 | LA Superior Court | 12/13/24 | Slack Fill Claim |
| 63 | Annette Cody | VITAMIN SHOPPE PROCUREMENT SERVICES LLC | 24STCV33078 | LA Superior Court | 12/16/24 | Slack Fill Claim |
| 64 | Annette Cody | DR. PRAEGER'S SENSIBLE FOODS LLC | 25STCV15425 | LA Superior Court | 5/28/25 | Slack Fill Claim |
| 65 | Annette Cody | KRAFT HEINZ FOODS COMPANY | 25STCV15811 | LA Superior Court | 5/30/25 | Slack Fill Claim |
| 66 | Annette Cody | SOMETHING BETTER FOODS INC. | 25STCV22526 | LA Superior Court | 7/22/25 | Slack Fill Claim |
| 67 | Annette Cody | GLOBAL VILLAGE FRUIT INC | 25STCV21494 | LA Superior Court | 7/22/25 | Slack Fill Claim |
| 68 | Annette Cody | IMLAK'ESH ORGANICS INC. | 25STCV22001 | LA Superior Court | 7/25/25 | Slack Fill Claim |
| 69 | Annette Cody | EVERGREEN USA LLC | 25STCV25318 | LA Superior Court | 8/27/25 | Slack Fill Claim |

## Slack-Fill Cases Brought by Scott Ferrell and Pacific Trial Attorneys

| No. | Plaintiff | Defendant | Case No. | Court | Filed On |
|-----|-----------|-----------|----------|-------|----------|
| 1 | Anthony Buso | Henkel Corp. | 17-cv-01132 | S.D. Cal | 6/5/2017 |
| 2 | Anthony Buso | Just Born, Inc. | 17CV1630 | S.D. Cal | 8/11/2017 |
| 3 | Anthony Buso | Ach Food Companies, Inc | 3:17cv1872 | S.D. Cal | 9/14/2017 |
| 4 | Michael Gonzales | Fusion Brands America, Inc. | 17-cv-01598 | C.D. Cal | 9/14/2017 |
| 5 | Anthony Buso | Penguin Trading, Inc. | 17-cv-07025 | C.D. Cal | 9/22/2017 |
| 6 | Kaveh Fasih | Unilever United States, Inc. | 18-cv-01032 | S.D. Cal | 5/23/2018 |
| 7 | Dallas Pottish | Plantain Products Company | 18-cv-00904 | S.D. Cal | 5/24/2018 |
| 8 | James Reider | Immaculate Baking Co. | 8:18cv1085 | C.D. Cal | 6/9/2018 |
| 9 | Anthony Buso | Vigo Importing Co. | 3:18-cv-01328 | S.D. Cal | 6/19/2018 |
| 10 | Miltita Casillas | Windmill Health Products LLC | 18-cv-05484 | C.D. Cal | 6/20/2018 |
| 11 | Mark Cordes | Boulder Brands USA, Inc. | 18-cv-06534 | C.D. Cal | 7/29/2018 |
| 12 | Angela Kennard | Lamb Weston Holdings, Inc. | 18-cv-04665 | N.D. Cal | 8/2/2018 |
| 13 | Anthony Buso | Taste of Nature Inc. | 2018-00030055 | SD Superior Court | 8/9/2018 |
| 14 | Howard Clark | Justin's Nut Butter, LLC | 18-cv-06193 | N.D. Cal | 10/10/2018 |
| 15 | Steve Perry | Calbee America Inc. | 2018-00054125 | SD Superior Court | 10/24/2018 |
| 16 | Charlene Jackson | Beneral Mills Inc. | 2018-00052079 | SD Superior Court | 11/19/2018 |
| 17 | Lius Licea | Brown Sugar LLC | 20STCV24404 | LA Superior Court | 6/29/2020 |
| 18 | Emily Schoonover | Iovate Health Sciences U.S.A. Inc | 20CV01487 | C.D. Cal | 12/13/2020 |
| 19 | Michael Gonzales | Kaged Muscle LLC | 22stcv21890 | LA Superior Court | 6/6/2022 |
| 20 | Arisha Bryars | Unreal Brands Inc. | 22STCV21917 | LA Superior Court | 7/6/2022 |
| 21 | Jasmine Gamez | Summit Naturals Inc. | 22STCV22841 | LA Superior Court | 7/15/2022 |
| 22 | Michael Gonzalez | Glanbia Performance Nutrition | 22STCV22913 | LA Superior Court | 7/18/2022 |
| 23 | Arisha Bryars | PHD Fitness | 22STCV23965 | LA Superior Court | 7/25/2022 |
| 24 | Michael Gonzales | Alter Ecos Americas Inc. | 2022-01276171 | OC Superior Ct | 8/19/2022 |
| 25 | Jasmine Gamez | Lilys Sweets, LLC | 22-cv-01665 | C.D. Cal | 9/21/2022 |
| 26 | April Reyes | Purus Labs Inc. | 2022-00043647 | SD Superior Court | 10/31/2022 |
| 27 | Michael Gonzalez | Axe and Sledge Supplements, Inc. | 2022-01289011 | OC Superior Ct | 10/31/2022 |
| 28 | April Reyes | Woodbolt Distribution LLC | 2022-00046797 | SD Superior Court | 11/21/2022 |
| 29 | April Reyes | Nutradried Food Company, LLC | 2022-01292646 | OC Superior Ct | 11/21/2022 |
| 30 | April Reyes | Dang Foods Company | 2022-01297647 | OC Superior Ct | 12/16/2022 |
| 31 | Michael Gonzalez | Ghost L.L.C. | 2022-00051206 | SD Superior Court | 12/21/2022 |
| 32 | Bonnie Reyes | L'Occitane Inc. | 3:23-cv-00203 | S.D. Cal | 12/29/2022 |
| 33 | April Reyes | Kneipp Corporation Of America Inc | 2023-00000725 | SD Superior Court | 1/9/2023 |
| 34 | Jasmine Gamez | Zero Day Nutrition Company Et Al | 5:22cv1655 | C.D. Cal. | 4/10/2023 |
| 35 | April Reyes | Dermalogica, LLC | 2023-01300813 | OC Superior Ct | 5/25/2023 |
| 36 | April Reyes | Purely Elizabeth LLC | 2022-01297834 | OC Superior Ct | 6/2/2023 |
| 37 | Michael Gonzales | Sway Fitness LLC | 23STCV22310 | LA Superior Court | 9/15/2023 |
| 38 | Jasmine Gamez | DE II, LLC | 23STCV22477 | LA Superior Court | 9/18/2023 |
| 39 | Jasmine Gamez | GNC Holdings Inc. | 23STCV22878 | LA Superior Court | 9/21/2023 |
| 40 | Bonnie Reyes | Caudalie USA Inc. | 2023-00004940 | SD Superior Court | 9/25/2023 |
| 41 | Bonnie Reyes | Orveon Global US LLC | 2023-01351084 | OC Superior Ct | 9/25/2023 |
| 42 | Bonnie Reyes | Peter Thomas Roth Labs | 23STCV23090 | LA Superior Court | 9/25/2023 |
| 43 | Henry Kouyoumdjian | Tender & True Pet Nutrition | 23STCV24993 | LA Superior Court | 10/12/2023 |
| 44 | Michael Gonzales | King Arthur Baking Co. | 23STCV25653 | LA Superior Court | 10/20/2023 |
| 45 | Henry Kouyoumdjian | LRW Holdings Inc. | 23STCV25864 | LA Superior Court | 10/23/2023 |
| 46 | April Reyes | Nestle USA, Inc. | 23STCV26992 | LA Superior Court | 11/3/2023 |
| 47 | Bonnie Reyes | Taste of Nature, Inc. | 23STCV27032 | LA Superior Court | 11/3/2023 |
| 48 | April Reyes | Ferrara Candy Company | CIVSB2328535 | San Bernardino Superior | 11/6/2023 |
| 49 | April Reyes | Tootsie Roll Industries, Inc. | 23STCV27601 | LA Superior Court | 11/9/2023 |
| 50 | April Reyes | Just Born, Inc. | 23STCV27609 | LA Superior Court | 11/9/2023 |
| 51 | Michael Gonzales | Genepro Protein Inc. | 23STCV27597 | LA Superior Court | 11/9/2023 |
| 52 | Jessica Argueta | Raw Sugar, LLC | 23STCV28725 | LA Superior Court | 11/22/2023 |
| 53 | Jessica Argueta | Eli Sauce Haircare LLC | 23STCV28776 | LA Superior Court | 11/22/2023 |
| 54 | April Reyes | Frankford Candy & Chocolate Co., Inc. | 23STCV28866 | LA Superior Court | 11/27/2023 |

| 55 | Kevin Fasih | Vidal Candies USA Inc. | 23STCV28734 | LA Superior Court | 11/27/2023 |
| 56 | Kevin Fasih | Snaxsational Brands LLC | 23STCV28801 | LA Superior Court | 11/27/2023 |
| 57 | Jessica Argueta | Henkel Corp. | 23STCV29072 | LA Superior Court | 11/29/2023 |
| 58 | Bonnie Reyes | Mars, Inc | 23STCV29301 | LA Superior Court | 11/30/2023 |
| 59 | Henry Kouyoumdjian | Mondelez International, Inc. | 23STCV29313 | LA Superior Court | 11/30/2023 |
| 60 | Kaveh Fasih | Iconic Candy LLC | 23STCV29402 | LA Superior Court | 12/1/2023 |
| 61 | Jessica Argueta | Sally Beauty Holdings, Inc. | 23STCV29779 | LA Superior Court | 12/5/2023 |
| 62 | Jessica Argueta | American International Industries | 23STCV29784 | LA Superior Court | 12/6/2023 |
| 63 | Judy Oh | Beautymark International, LLC | 23STCV31028 | LA Superior Court | 12/19/2023 |
| 64 | Judy Oh | Eva-NYC LLC | 23STCV31146 | LA Superior Court | 12/20/2023 |
| 65 | Judy Oh | Beauty Solutions, Ltd. | 23STCV31158 | LA Superior Court | 12/20/2023 |
| 66 | Kaveh Fasih | Goetze's Candy Company, Inc. | 23STCV31212 | LA Superior Court | 12/21/2023 |
| 67 | Bonnie Reyes | Sweet Candy Company | 23STCV31670 | LA Superior Court | 12/27/2023 |
| 68 | Bonnie Reyes | Morris National, Inc. | 23STCV31682 | LA Superior Court | 12/27/2023 |
| 69 | Bonnie Reyes | Jelly Belly Candy Company | 23STCV31698 | LA Superior Court | 12/27/2023 |
| 70 | April Reyes | R.M. Palmer Company, LLC | 24STCV00680 | LA Superior Court | 1/9/2024 |
| 71 | Bonnie Reyes | Morinaga America Inc. | 24STCV00675 | LA Superior Court | 1/9/2024 |
| 72 | April Reyes | Ce De Candy, Inc. | 24STCV00963 | LA Superior Court | 1/12/2024 |
| 73 | Judy Oh | Duke Cannon Supply Company | 24STCV01580 | LA Superior Court | 1/22/2024 |
| 74 | Michael Gonzales | Vega US, LLC | 24STCV01827 | LA Superior Court | 1/24/2024 |
| 75 | Michael Gonzales | Raw Sport Supplement Company LLC | 24STCV02357 | LA Superior Court | 1/30/2024 |
| 76 | Michael Gonzales | Gorilla Mind LLC | 24STCV02817 | LA Superior Court | 2/2/2024 |
| 77 | Miltita Casillas | Promotion In Motion, Inc. | 24STCV03753 | LA Superior Court | 2/14/2024 |
| 78 | Jessica Argueta | Tru Fru LLC | 24STCVO3927 | LA Superior Court | 2/16/2024 |
| 79 | Jessica Argueta | Garza Food Ventures, LLC | 24STCV03933 | LA Superior Court | 2/16/2024 |
| 80 | Jessica Argueta | PepsiCo, Inc. | 24STCV04490 | LA Superior Court | 2/22/2024 |
| 81 | Michael Gonzales | Natural Factors Nutritional Products | 24STCV04508 | LA Superior Court | 2/22/2024 |
| 82 | Simon Oh | Abraco Group LLC | 25STCV05309 | LA Superior Court | 2/25/2024 |
| 83 | Jessica Argueta | Ghirardelli Chocolate Company | 24STCV05439 | LA Superior Court | 3/4/2024 |
| 84 | Jessica Argueta | Tate's Bake Shop, Inc. | 24STCV05444 | LA Superior Court | 3/4/2024 |
| 85 | Michael Gonzales | Kos Naturals, LLC | 24STCV05442 | LA Superior Court | 3/4/2024 |
| 86 | Kaveh Fasih | The Purple Mixer, Inc. | 24STCV08425 | LA Superior Court | 4/4/2024 |
| 87 | Kaveh Fasih | Rhythm Superfoods, LLC | 24STCV08432 | LA Superior Court | 4/4/2024 |
| 88 | Judy Oh | Otto's Naturals LLC | 24STCV08987 | LA Superior Court | 4/10/2024 |
| 89 | Judy Oh | Banana Joe | 24STCV09001 | LA Superior Court | 4/10/2024 |
| 90 | Judy Oh | Wehah Farm, Inc. | 24STCV09098 | LA Superior Court | 4/11/2024 |
| 91 | Judy Oh | I Won Nutrition Co. | 24STCV09596 | LA Superior Court | 4/17/2024 |
| 92 | Judy Oh | Zach's Mighty Inc. | 24STCV09603 | LA Superior Court | 4/17/2024 |
| 93 | Bonnie Reyes | Choczero, Inc. | 24STCV09930 | LA Superior Court | 4/19/2024 |
| 94 | Judy Oh | Nurture, LLC | 24STCV12583 | LA Superior Court | 5/20/2024 |
| 95 | Judy Oh | Pipsnacks LLC | 24STCV12956 | LA Superior Court | 5/23/2024 |
| 96 | Judy Oh | Fresh Bellies, Inc. | 24STCV12965 | LA Superior Court | 5/23/2024 |
| 97 | Bonnie Reyes | Artisan Tropic LLC | 24STCV13753 | LA Superior Court | 6/3/2024 |
| 98 | Dallas Pottish | Freeland Foods Inc. | 24STCV13706 | LA Superior Court | 6/3/2024 |
| 99 | Kaveh Fasih | Lesserevil LLC | 24STCV13702 | LA Superior Court | 6/3/2024 |
| 100 | Kaveh Fasih | Campbell Soup Company | 24STCV13708 | LA Superior Court | 6/3/2024 |
| 101 | Kaveh Fasih | The Hain Celestial Group, Inc. | 24STCV14077 | LA Superior Court | 6/5/2024 |
| 102 | Kaveh Fasih | Simple Mills, Inc. | 24STCV14128 | LA Superior Court | 6/5/2024 |
| 103 | Simon Oh | Quinoa Corporation | 24STCV14184 | LA Superior Court | 6/6/2024 |
| 104 | Simon Oh | Earthly Treats, Inc. | 24STCV14276 | LA Superior Court | 6/6/2024 |
| 105 | Simon Oh | Hometown Food Company | 24STCV14665 | LA Superior Court | 6/12/2024 |
| 106 | Judy Oh | Kenover Marketing Corp. | 24STCV15640 | LA Superior Court | 6/24/2024 |
| 107 | Judy Oh | Louisville Vegan Jerky Co. L.L.C. | 24STCV15652 | LA Superior Court | 6/24/2024 |
| 108 | Judy Oh | Humanco LLC | 24STCV15654 | LA Superior Court | 6/24/2024 |
| 109 | Judy Oh | Ricks Picks LLC | 24STCV16683 | LA Superior Court | 7/2/2024 |
| 110 | Judy Oh | International Desserts and Delicacies | 24STCV16527 | LA Superior Court | 7/3/2024 |
| 111 | Judy Oh | Momomilk, LLC | 24STCV16541 | LA Superior Court | 7/3/2024 |

| 112 | Judy Oh | Whisps Acquisition Corp. | 24STCV16551 | LA Superior Court | 7/3/2024 |
|---|---|---|---|---|---|
| 113 | Judy Oh | Panos Brands, LLC | 24STCV16563 | LA Superior Court | 7/3/2024 |
| 114 | Judy Oh | Falcon Trading Company | 24STCV16590 | LA Superior Court | 7/3/2024 |
| 115 | Judy Oh | Brandstorm Inc. | 24STCV16812 | LA Superior Court | 7/8/2024 |
| 116 | Judy Oh | Freestyle Snacking, LLC | 24STCV17301 | LA Superior Court | 7/11/2024 |
| 117 | Judy Oh | Grandy Organics, LLC | 24STCV17423 | LA Superior Court | 7/15/2024 |
| 118 | Judy Oh | Cedar's Mediterranean Foods, Inc. | 24STCV17541 | LA Superior Court | 7/15/2024 |
| 119 | Judy Oh | Sun-Maid Growers of California | 24STCV19467 | LA Superior Court | 8/5/2024 |
| 120 | Judy Oh | CJ Cheiljedang Corp. | 24STCV19474 | LA Superior Court | 8/5/2024 |
| 121 | Annette Cody | Diamond Foods, LLC | 24STCV19905 | LA Superior Court | 8/7/2024 |
| 122 | Jesse Cantu | Undercover Chocolate Company Inc. | 24STCV21051 | LA Superior Court | 8/19/2024 |
| 123 | Jesse Cantu | MTB-GTS LLC | 24STCV21055 | LA Superior Court | 8/19/2024 |
| 124 | Annette Cody | Black Rifle Coffee Company, LLC | 24STCV21048 | LA Superior Court | 8/19/2024 |
| 125 | Annette Cody | IDAHOAN FOODS LLC | 24STCV20995 | LA Superior Court | 8/19/2024 |
| 126 | Jesse Cantu | General Mills, Inc. | 24STCV21212 | LA Superior Court | 8/20/2024 |
| 127 | Annette Cody | The J. M. Smucker Company | 24STCV21080 | LA Superior Court | 8/20/2024 |
| 128 | Jesse Cantu | Unilever United States, Inc. | 24STCV21609 | LA Superior Court | 8/26/2024 |
| 129 | Annette Cody | Cooper Street Cookies, Llc | 24STCV21642 | LA Superior Court | 8/26/2024 |
| 130 | Silvia Garcia | TH Foods, Inc | 24STCV21747 | LA Superior Court | 8/27/2024 |
| 131 | Annette Cody | JJ'S SWEETS, INC. | 24STCV22125 | LA Superior Court | 8/28/2024 |
| 132 | Silvia Garcia | Strumba Media LLC | 24STCV22087 | LA Superior Court | 8/29/2024 |
| 133 | Silvia Garcia | Pilgrim's Pride Corp. | 24STCV22096 | LA Superior Court | 8/29/2024 |
| 134 | Annette Cody | Nature'S Path Foods | 24STCV22086 | LA Superior Court | 8/29/2024 |
| 135 | Annette Cody | SUGAR FOODS, LLC | 24STCV22083 | LA Superior Court | 8/29/2024 |
| 136 | Annette Cody | Conagra Brands, Inc. | 24STCV22337 | LA Superior Court | 8/30/2024 |
| 137 | Annette Cody | ROSINA FOOD PRODUCTS, INC. | 24STCV22375 | LA Superior Court | 8/30/2024 |
| 138 | Simon Oh | Catalina Snacks | 24STCV22839 | LA Superior Court | 9/5/2024 |
| 139 | Simon Oh | Sunfood Corporation | 24STCV22876 | LA Superior Court | 9/5/2024 |
| 140 | Simon Oh | Twelve Grapes of California Inc | 24STCV23333 | LA Superior Court | 9/10/2024 |
| 141 | Annette Cody | BOB EVANS FARMS, LLC | 24STCV23325 | LA Superior Court | 9/10/2024 |
| 142 | Silvia Garcia | Meiji America Inc. | 24STCV23400 | LA Superior Court | 9/11/2024 |
| 143 | Silvia Garcia | Calbee America Incorporated | 24STCV23418 | LA Superior Court | 9/11/2024 |
| 144 | Simon Oh | Outstanding Foods Inc. | 24STCV23396 | LA Superior Court | 9/11/2024 |
| 145 | Silvia Garcia | Red Robin International Inc | 24STCV23658 | LA Superior Court | 9/12/2024 |
| 146 | Judy Oh | A Dozen Cousins | 24STCV23663 | LA Superior Court | 9/13/2024 |
| 147 | Simon Oh | Ancient brands LLC | 24STCV23705 | LA Superior Court | 9/13/2024 |
| 148 | Annette Cody | CAULIPOWER, LLC | 24STCV23675 | LA Superior Court | 9/13/2024 |
| 149 | Annette Cody | LEANER CREAMER, LLC | 24STCV24270 | LA Superior Court | 9/19/2024 |
| 150 | Silvia Garcia | Mars Inc. | 24STCV24478 | LA Superior Court | 9/20/2024 |
| 151 | Simon Oh | B Boys Inc. | 24STCV24408 | LA Superior Court | 9/20/2024 |
| 152 | Simon Oh | Mauna Loa Macadamia Nut Company LLC | 24STCV25013 | LA Superior Court | 9/25/2024 |
| 153 | Jessie Cantu | Milton's Baking Company LLC | 24STCV25023 | LA Superior Court | 9/26/2024 |
| 154 | Judy Oh | Wild Things Snacks Inc. | 24STCV24991 | LA Superior Court | 9/26/2024 |
| 155 | Silvia Garcia | Chung's Products LP | 24STCV25065 | LA Superior Court | 9/26/2024 |
| 156 | Annette Cody | JOJO'S CHOCOLATE LLC | 24STCV24974 | LA Superior Court | 9/26/2024 |
| 157 | Judy Oh | New Frontier Foods Inc. | 24STCV25739 | LA Superior Court | 10/3/2024 |
| 158 | Silvia Garcia | The Pictsweet Company | 24STCV25707 | LA Superior Court | 10/3/2024 |
| 159 | Silvia Garcia | Hippeas Inc. | 24STCV26532 | LA Superior Court | 10/11/2024 |
| 160 | Judy Oh | Reiga Foods LLC | 24STCV26726 | LA Superior Court | 10/14/2024 |
| 161 | Silvia Garcia | Snack Innovations Inc. | 24STCV26762 | LA Superior Court | 10/14/2024 |
| 162 | Annette Cody | Muddy Bites, Inc. | 24STCV26749 | LA Superior Court | 10/14/2024 |
| 163 | Bonnie Reyes | Saraya USA Inc. | 24STCV28237 | LA Superior Court | 10/28/2024 |
| 164 | Annette Cody | TRIBE 9 FOODS LLC | 24STCV28182 | LA Superior Court | 10/28/2024 |
| 165 | Kaveh Fasih | Hu Master Holdings LLC | 24STCV28319 | LA Superior Court | 10/29/2024 |
| 166 | Michael Gonzales | Quest Nutrition | 24STCV28241 | LA Superior Court | 10/29/2024 |
| 167 | Jesse Cantu | Beefree | 24STCV28427 | LA Superior Court | 10/30/2024 |
| 168 | Judy Oh | Rind Snacks Inc. | 24STCV29770 | LA Superior Court | 11/13/2024 |

| | | | | | |
|---|---|---|---|---|---|
| 169 | Bonnie Reyes | Euro American Brands LLC | 24STCV30021 | LA Superior Court | 11/14/2024 |
| 170 | Silvia Garcia | Stellar Snacks LLC | 24STCV30604 | LA Superior Court | 11/20/2024 |
| 171 | Annette Cody | John B. Sanfilippo & Son, Inc. | 24STCV30572 | LA Superior Court | 11/20/2024 |
| 172 | Annette Cody | QUIRCH FOODS LLC | 2024-01444095 | OC Superior Ct | 12/2/2024 |
| 173 | Annette Cody | SEAPOINT FARMS, LLC | 2024-01445173 | OC Superior Ct | 12/6/2024 |
| 174 | Bonnie Reyes | Lenny & Larry's LLC | 24STCV32275 | LA Superior Court | 12/9/2024 |
| 175 | Bonnie Reyes | EHPLabs LLC | 24STCV32284 | LA Superior Court | 12/9/2024 |
| 176 | Simon Oh | Hayden Valley Foods, Inc. | 24STCV32256 | LA Superior Court | 12/9/2024 |
| 177 | Annette Cody | CVS PHARMACY, INC. | 24STCV33023 | LA Superior Court | 12/13/2024 |
| 178 | Bonnie Reyes | Maximum Human Performance LLC | 24STCV33122 | LA Superior Court | 12/16/2024 |
| 179 | Annette Cody | VITAMIN SHOPPE PROCUREMENT SERVICES LLC | 24STCV33078 | LA Superior Court | 12/16/2024 |
| 180 | Silvia Garcia | Somos Amigos Inc. | 24CU029886C | San Diego County Super | 12/19/2024 |
| 181 | Silvia Garcia | Amorpha International | 24STCV33607 | LA Superior Court | 12/19/2024 |
| 182 | Simon Oh | Enjoy Life Natural Brands, LLC | CVRI2407274 | Riverside County Superi | 12/19/2024 |
| 183 | Simon Oh | Flock Foods LLC | 24STCV34128 | LA Superior Court | 12/26/2024 |
| 184 | Simon Oh | West Thomas Partners LLC | 24STCV34383 | LA Superior Court | 12/30/2024 |
| 185 | Silvia Garcia | Love Brands Inc. | CVRI2500082 | Riverside Superior Court | 1/3/2025 |
| 186 | Silvia Garcia | Ashapops Llc | 2025CUBT036968 | Ventura Superior Court | 1/7/2025 |
| 187 | Judy Oh | Banza Llc | 25STCV03970 | LA Superior Court | 2/13/2025 |
| 188 | Jessie Cantu | DAS Labs LLC | 25STCV04407 | LA Superior Court | 2/14/2025 |
| 189 | Geneva Gonzales | E.L.F. Cosmetics, Inc. | 2:25cv1580 | C.D. Cal | 2/25/2025 |
| 190 | Judy Oh | PlantB LLC | 25CU027328C | SD Superior Court | 5/19/2025 |
| 191 | Annette Cody | DR. PRAEGER'S SENSIBLE FOODS LLC | 25STCV15425 | LA Superior Court | 5/28/25 |
| 192 | Annette Cody | KRAFT HEINZ FOODS COMPANY | 25STCV15811 | LA Superior Court | 5/30/25 |
| 193 | Bonnie Reyes | PEPSICO, INC. | 25cv4951 | C.D. Cal | 6/1/2025 |
| 194 | Judy Oh | Goosefoot Acres, Inc | 25cv5140 | C.D. Cal | 6/5/2025 |
| 195 | Silvia Garcia | JOVIAL FOODS, INC. | 25STCV13415 | C.D. Cal | 6/13/2025 |
| 196 | Geneva Gonzales | Gourmet Nut Inc. | 25cv6108 | C.D. Cal | 7/6/2025 |
| 197 | Simon Oh | Sweet Oak Parent LLC | 25cv6553 | C.D. Cal | 7/17/2025 |
| 198 | Annette Cody | SOMETHING BETTER FOODS INC. | 25STCV21524 | LA Superior Court | 7/22/25 |
| 199 | Annette Cody | GLOBAL VILLAGE FRUIT INC | 25STCV21494 | LA Superior Court | 7/22/25 |
| 200 | Silvia Garcia | ZURU LLC | 25cv1908 | C.D. Cal | 7/25/2025 |
| 201 | Simon Oh | TARGET BRANDS, INC | 25cv6843 | C.D. Cal | 7/25/25 |
| 202 | Annette Cody | IMLAK'ESH ORGANICS INC. | 25STCV22001 | LA Superior Court | 7/25/25 |
| 203 | Silvia Garcia | Vogue International LLC | 25cv1987 | C.D. Cal | 8/3/2025 |
| 204 | Silvia Garcia | Function Inc | 25CU040676C | SD Superior Court | 8/4/2025 |
| 205 | Annette Cody | EVERGREEN USA LLC | 25STCV25318 | LA Superior Court | 8/27/25 |
| 206 | Jessica Argueta | Unilever United States, Inc. | 25cv8260 | C.D. Cal | 9/2/2025 |