Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
**PACIFIC TRIAL ATTORNEYS, APC**
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GAINFUL HEALTH INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:25-cv-01373-KK-SP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Declaration of David W. Reid; Response to Def.'s Request for Judicial Notice; Evidentiary Objections to Declaration of Daniel Imakyure; [Proposed] Order filed concurrently herewith]<br><br>Date:   November 20, 2025<br>Time:  9:30 a.m.<br>Courtroom:  3<br>Judge:  Hon. Kenly Kiya Kato |

PLAINTIFF'S OPPOSITION TO MTD SAC

# **TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................ 1

    A.    The FAC Alleges Fraud with Adequate Particularity. ..................... 1

        1.    The SAC Identifies the Precise Product Purchased by
             Plaintiff. ............................................................................... 2

        2.    The SAC Adequately Pleads Defendant's
             Misrepresentation. ............................................................... 4

    B.    The FAC Sufficiently Alleges Actual Reliance and Justifiable
        Reliance. ......................................................................................... 5

    C.    Defendant's Safe Harbor Arguments Are Without Merit. ............... 6

    D.    The Court Should Not Decide as a Matter of Law that a
        Reasonable Consumer of the Product Understands that the
        Amount of Product Indicated on the Product's Container Is
        Significantly Less Than What Is Suggested by the Size of the
        Container. ...................................................................................... 10

        1.    The Product's Information on the Front and Back
             Panels of the Oversized Container Used for the
             Product's Packaging Does Not Cure the Misleading
             Nature of the Oversized Container. ..................................... 10

    E.    Plaintiff Has Standing to Sue for Injunctive Relief. .................... 16

    F.    As a Class Action Plaintiff, Plaintiff Can Bring Claims for
        Unpurchased Products that Are Similar to the Product
        Purchased by Plaintiff. ................................................................. 18

    G.    Leave to Amend Should Be Granted If a Curable Defect
        Exists. ........................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................3

*Barrett v. Optimum Nutrition*,
  2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) (Gee, J.) .......................7, 9, 11, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................3

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ........................................................2

*Chester v. TJX Cos., Inc.*,
  2016 WL 4414768 (C.D. Cal. Aug. 18, 2018) (Wright, J.)..............................1, 2

*Clevenger v. Welch Foods, Inc.*,
  2021 WL 3616109 (C.D. Cal. Apr. 1, 2021) ........................................18, 19

*Clevenger v. Welch Foods Inc.*,
  2022 WL 16964009 (C.D. Cal. Feb. 25, 2022) .......................................18

*Clevenger v. Welch Foods, Inc.*,
  501 F. Supp. 3d 875 (C.D. Cal. 2020) (Carney, J.) .................................8

*Cody v. Conagra Brands, Inc.*,
  773 F. Supp. 3d 890 (C.D. Cal. 2025) ..........................................5, 7, 10

*Coleman v. Mondelez International Inc.*,
  554 F. Supp. 3d 1055 (2021) ..................................................7, 8, 9, 14

*Cordes v. Boulder Brands USA, Inc.*,
  2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.) ........................6, 12

*Costa v. Reliance Vitamin Co., Inc.*,
  2023 WL 2989039 (N.D. Cal. Apr. 18, 2023).........................................5

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .........................................................17

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...........................................................12, 13, 14, 15

*Escobar v. Just Born, Inc.*,
    2017 WL 5125740 (C.D. Cal. June 12, 2017) (O'Connell, J.)..................5, 8, 12

*Gamez v. Summit Naturals Inc.*,
    2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) (Fischer, J.) ...........................18

*Gordon v. Tootsie Roll Indust., Inc.*,
    2017 WL 4786090 (C.D. Cal. Oct. 4, 2017) (Fischer, J.) ................................19

*Gordon v. Tootsie Roll Indust., Inc.*,
    2017 WL 8292777 (C.D. Cal. July 31, 2017) (Fischer, J.) ........................*passim*

*Hawkins v. Nestle U.S.A. Inc.*,
    309 F. Supp. 3d 696 (E.D. Mo. 2018) ...........................................................8

*Howard v. Senkowski*,
    986 F.2d 24 (2d Cir. 1993) ...........................................................................6

*Ibarra v. Pharmagenics LLC*,
    660 F. Supp. 3d 914 (C.D. Cal. 2023) (Carney, J.) .........................................5, 6

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).................................................12

*Jackson v. General Mills, Inc.*,
    2020 WL 5106652 (S.D. Cal. Aug. 28, 2020).............................................17, 18

*Kamal v. Eden Creamery, LLC*,
    2019 WL 2617041 (S.D. Cal. June 26, 2019) (Bashant, J.) ...........................8, 9

*Kennard v. Lamb Weston Holdings, Inc.*,
    2019 WL 1586022 (N.D. Cal. Apr. 12, 2019).................................................8

*Kline v. Iovate Health Sciences U.S.A., Inc.*,
    2017 WL 1135580 (S.D. Cal. Mar. 27, 2017) .................................................7

*Krause-Pettai v. Unilever United States, Inc.*,
    2021 WL 1597931 (S.D. Cal. Apr. 23, 2021) .................................................12

*Maisel v. Tootsie Roll Industries, LLC*,
    2021 WL 3185443 (N.D. Cal. July 27, 2021) ...................................8, 11, 12, 14

*Matic v. United States Nutrition, Inc.*,
   2019 WL 3084335 (C.D. Cal. Mar. 27, 2019)................................................5, 8, 9

*McMillan v. Lowe's Home Centers, LLC*,
   2016 WL 2346941 (E.D. Cal. May 4, 2016) ............................................................7

*Moralez v. Kern Schools Federal Credit Union*,
   2016 WL 2756427 (E.D. Cal. May 12, 2016) ..........................................................7

*Oh v. Banana Joe, Inc.*,
   2025 WL 1036638 (C.D. Cal. Apr. 3, 2025) .............................................5, 6, 7, 10

*Oh v. Catalina Snacks, Inc.*,
   764 F. Supp. 3d 903, 913 (C.D. Cal. 2025) ..............................................5, 7, 11

*Oh v. Fresh Bellies, Inc.*,
   2024 WL 4500727 (C.D. Cal. Oct. 15, 2024) (Gutierrez, J.) .............................6

*Oh v. Fresh Bellies, Inc.*,
   2025 WL 6959213 (C.D. Cal. Feb. 25, 2025) (Gutierrez, J.).............................7

*Padilla v. Whitewave Foods Co.*,
   2019 WL 4640399 (C.D. Cal. July 26, 2019) (Kronstadt, J.) ......................7, 12

*Real v. Y.M.I. Jeanswear, Inc.*,
   2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) ......................................................1

*Reyes v. Just Born, Inc.*,
   729 F. Supp. 3d 971 (C.D. Cal. 2024) (Vera, J.) ......................................6, 9, 11

*Samet v. Procter & Gamble Co.*,
   2013 WL 3124647 (N.D. Cal. June 18, 2013)......................................................10

*Schoonover v. Iovate Health Sciences U.S.A. Inc.*,
   2020 WL 5015269 (C.D. Cal. June 18, 2020)......................................................8, 9

*Shimono v. Harbor Freight Tools USA, Inc.*,
   2016 WL 6238483 (C.D. Cal. Oct. 24, 2016) (Snyder, J.)....................................2

*Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.*,
   2023 WL 2324291 (N.D. Cal. Feb. 16, 2023) ....................................................4, 5

*Spacone v. Sanford, LP*,
   2017 WL 6888497 (C.D. Cal. May 11, 2017) (O'Connell, J.)....................*passim*

*Stewart v. Kodiak Cakes, LLC,*
    537 F. Supp. 3d 1103 (S.D. Cal. 2021)........................................................*passim*

*United States v. United Healthcare Ins. Co.,*
    848 F.3d 1161 (9th Cir. 2016) ...................................................................2

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) .........................................................4, 10, 11

**California Cases**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ...............................................................................7

*Hobby Industry Ass'n of America, Inc. v. Younger,*
    101 Cal. App. 3d 358 (1980) ....................................................................16

**U.S. Constitution**

Article III....................................................................................................6

**Federal Regulations**

21 C.F.R. § 100.100 ...............................................................................7, 16

21 C.F.R. § 100.100(a)(1)-(6) ....................................................................7

**California Statutes**

Business & Professions Code
    § 12606......................................................................................7, 14
    § 12606.2(c)(1) ...............................................................................8
    False Advertising Law ....................................................................8
    Unfair Competition Law .............................................................7, 8

Civil Code
    Consumer Legel Remedies Act .............................................5, 8, 16

**Federal Rules**

Rules of Civil Procedure
    Rule 9(b) .......................................................................................2, 5
    Rule 12(b)(6)...............................................................................2, 3, 13

**Other Authorities**

Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123, 64128, 1993 WL 498605 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100) ..........16

PLAINTIFF'S OPPOSITION TO MTD SAC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    ARGUMENT

**A.    The FAC Alleges Fraud with Adequate Particularity.**

Contrary to Defendant's argument, the FAC satisfies the heightened pleading requirements applicable to claims alleging deceptive conduct.  The "who" is Defendant.  (Second Amended Complaint ("SAC") ¶ 1.)  The "where" is the Amazon.com website at: https://www.amazon.com functioning as Defendant's storefront (the "Amazon webstore") at which Plaintiff made her purchase of the "GAINFUL"-branded protein powder product bundled together as a two-unit package named "Gainful Whey Protein Powder Build Muscle Bundle, Post Workout Support, Whey Isolate + Concentrate, Low Carb, Unflavored with Chocolate, Vanilla, Strawberry & Variety Pack Flavor Boosts, 28 Servings" (the "Product").  (SAC ¶ 50 & Ex. 4.)  The "what" is the nonfunctional slack-fill in the packaging of Defendant's Product.  That is, Defendant uses an oversized container to sell its Product, which packaging leads consumers to believe the container contains more of the Product.  (SAC ¶¶ 1-2, 12-21, 50-52); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1133 (S.D. Cal. 2021) ("Regarding the nonfunctional slack fill, the 'what' is that Defendant fills several of its products with substantially less than the container's capacity and the packaging leads consumers to believe the box contains more of the product.").

Regarding the "how" requirement, the SAC alleges that Defendant misrepresents the Product's quantity by filling its opaque containers containing the Product with about 40 percent of non-functional slack fill or empty space, (SAC ¶¶ 1-2); *Stewart*, 537 F. Supp. 3d at 1133 ("Regarding the nonfunctional slack fill theory, the 'how' is that Defendant misrepresents the products' quantities through filling their opaque product boxes with less than half of product for no functional purpose.").  As the court held in *Real v. Y.M.I. Jeanswear, Inc.*, 2017 WL 11675686 (C.D. Cal. Sept. 1, 2017), "a plaintiff must only provide sufficient information to meet the reasonable consumer test for how and why the [representation] was deceptive."  *Id.* at *5.  "The focus is on whether enough facts support a reasonable consumer's reaction to an allegedly deceptive advertisement—***not whether***

*enough facts can definitively prove fraud at the pleading stage*." *Chester v. TJX Cos., Inc.*, 2016 WL 4414768, at *12 (C.D. Cal. Aug. 18, 2018) (Wright, J.) (emphasis added); *Shimono v. Harbor Freight Tools USA, Inc.*, 2016 WL 6238483, at *5 (C.D. Cal. Oct. 24, 2016) (Snyder, J.) (citing *Chester*).  "Instead, simply meeting the 'reasonable consumer test' will suffice to meet the 'how' prong[.]" *Chester*, 2016 WL 4414768, at *13.

The SAC alleges that Plaintiff purchased the Product "[o]n October 26, 2024[.]" (SAC ¶ 50.)  That information satisfies the "when" factor.  *Stewart*, 537 F. Supp. 3d at 1133-34 (finding that Rule 9(b) had been satisfied despite the amended complaint alleging that some named plaintiffs allegedly bought the defendant's products "over the past few years").

Knowledge and intent may be pled generally.  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (Knowledge, however, may be pled generally."); *id.* at 1184 ("As noted, knowledge need not be pled with particularity.").

## 1. The SAC Identifies the Precise Product Purchased by Plaintiff.

Although Defendant contends that Plaintiff has shown an "inability to consistently identify the product at issue," (Def.'s Mem. at 11:16-17), and that the SAC contains "contradictory allegations," (Def.'s Mem. at 8:26-27), Defendant's contentions should be rejected for several reasons.  First, Defendant's contentions are predicated upon Defendant's its argument in its supporting Memorandum that its Amazon.com storefront has only sold versions of Defendant's "GAINFUL"-branded protein powder products with a front label with textual statements identifying the particular version or type of protein powder immediately below the "GAINFUL" brand name.  (Def.'s Mem. at 3:21-25; Def.'s RJN Ex. C at 1.)  Defendant's contention requires that the Court conduct a fact-intensive inquiry of extrinsic facts going beyond the SAC, which is inappropriate for the Court to consider via the instant Motion.  "'In determining the propriety of a Rule 12(b)(6) dismissal, a court *may* not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'"  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original) (quotation omitted).  If the

Court cannot rely upon Plaintiff's memorandum in opposition for new facts not contained in the SAC, then the Court should similarly not rely upon new facts alleged in Defendant's supporting Memorandum.

Second, Exhibits 1 and 4 to the SAC collectively demonstrate the falsity of Defendant's bald contention.  Exhibit 4 is the invoice or order details of Plaintiff's transaction of the Product via Defendant's storefront on amazon.com.  (SAC ¶ 50 & Ex. 4.)  Exhibit 1 is an image depicting the front label of the Product purchased by Plaintiff. (SAC ¶ 2 & Ex. 1.)  Notably, Exhibit 1 to the SAC refers to "BUILD" on the front label below a human arm flexing a bicep muscle in obvious reference to the "Build Muscle Bundle" portion of the Product's name advertised on Defendant's Amazon webstore.  The Court is required to take as true such factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

Third, although Defendant relies upon a purported image of a specific product on Defendant's Amazon.com storefront, (Def.'s RJN Ex. C at 1), such product image is of the "Get Lean Bundle" as demonstrated by the labeling statement, "Whey Isolate Protein for Getting Lean," depicted in such image.  But, that is ***not*** the Product purchased by Plaintiff. Plaintiff purchased the "Build Muscle Bundle" instead.  (SAC ¶¶ 1, 50 & Ex. 4.)  Indeed, ***the fact that Defendant advertised the "Build Muscle Bundle" via its Amazon.com storefront which is even visible on the first page of Exhibit C to Defendant's RJN via the "Build" reference, but it has failed to seek judicial notice of the precise "Build Muscle Bundle" purchased by Plaintiff speaks volumes***.  Defendant's argument and purported extrinsic evidence is nothing more than a disingenuous attempt to mislead the Court via the proverbial smoke and mirrors approach to litigation.

Fourth, Defendant's contention that the SAC contains images of the "Customized Protein" products available only for sale on https://www.gainful.com ("Defendant's

Website"), (Def.'s Mem. at 7:1-2; 8:18-19), is wrong for the same reasons set forth above. As mentioned above, Exhibit 1 to the SAC refers to "BUILD" on the front label below a human arm flexing a bicep muscle in obvious reference to the "Build Muscle Bundle" portion of the Product's name advertised on the Amazon webstore.  In stark contrast, the alleged "Customized Protein" version allegedly sold only on Defendant's Website refers instead to "RECOVERY."  (Def.'s RJN Ex. A.)  Thus, once again, ***Defendant is relying on a purported label of a product that is not the precise "Build Muscle Bundle" product advertised on its Amazon.com storefront*** in a disingenuous attempt to mislead the Court.

Fifth, Defendant's contention that paragraph 3 of the FAC depicts images of the "Customized Protein" products available only for sale on Defendant's Website, (Def.'s Mem. at 6:15-17; 8:15-17), is wrong.  Paragraph 3 of the FAC depicts three images, two of which contain text that is admittedly difficult to read, which are literally identical to the images attached as Exhibits 1-3 to the SAC.

Sixth, Defendant's contention that paragraph 3 of the original Complaint depicts images of the "Customized Protein" products available only for sale on Defendant's Website, (Def.'s Mem. at 5:26-28; 8:8-10), is wrong.  Paragraph 3 of the original Complaint depicts three images, two of which contain text that is admittedly difficult to read, which are literally identical to the images attached as Exhibits 1-3 to the SAC.

## 2.    The SAC Adequately Pleads Defendant's Misrepresentation.

Although Defendant contends that its packaging contains no misrepresentations, (Def.'s Mem. at 12:3-13:1), the size of the packaging of the Product combined with the actual amount of Product in the package constitutes Defendant's misrepresentation.  *See Sinatro v. Mrs. Gooch's Natural Food Markets, Inc.*, 2023 WL 2324291, at *15 (N.D. Cal. Feb. 16, 2023) ("Defendants also argue that Plaintiffs have not stated a cause of action for claims under fraud and intentional misrepresentation because there is no false statement on the packaging of the products at issue.  The Court is not persuaded. Many features of a product's packaging may be deceiving, such as the product's name or a picture on the label. *See Williams[ v. Gerber Prods. Co.]*, 552 F.3d [934, ]939[ (9th Cir. 2008)]. Here, Plaintiffs

alleged that the size of the packaging for the products at issue, combined with the actual amount of product in the package, amounted to Defendants' misrepresentation. The Court finds that this is sufficient at this stage. The nonfunctional slack fill at the heart of this case is inherently connected with the size of the package. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' claims for fraud and intentional misrepresentation.") (internal citations omitted); *Escobar v. Just Born, Inc.*, 2017 WL 5125740, at *11 (C.D. Cal. June 12, 2017) (O'Connell, J.) ("Plaintiff does not admit that the box at issue lacks a false statement or misrepresentation. To the contrary, ***Plaintiff maintains that the size of the Products' box itself misrepresents the amount of Product contained within the box***. Plaintiff alleges that the Products' boxes mislead consumers as to the amount of candy contained therein.") (emphasis added); *Costa v. Reliance Vitamin Co., Inc.*, 2023 WL 2989039, at *6 (N.D. Cal. Apr. 18, 2023) ("Taken together, [slack-fill allegations] [are] sufficient to plead an intentional misrepresentation claim"); *Stewart*, 537 F. Supp. 3d at 1139 (noting the plaintiff's allegation that "the CLRA claim premised on slack fill is viable because ***product size is a misrepresentation***." ) (emphasis added).

Plaintiff has pled the fraud claim with particularity.[1]

## B. The FAC Sufficiently Alleges Actual Reliance and Justifiable Reliance.

The SAC alleges Plaintiff's actual and justifiable reliance on Defendant's misrepresentation causing her to suffer economic injury via a price premium. (SAC ¶¶ 52, 53, 55.) The mere fact that Plaintiff is a "tester," (Def.'s Mem. at 10:23), is insignificant because federal courts have recognized in similar circumstances that "[t]here is nothing facially implausible about [a consumer's] dual motives—consumers are allowed to have multiple reasons behind their purchasing decisions." *Ibarra v. Pharmagenics LLC*, 660 F.

---

[1] *Oh v. Banana Joe, Inc.*, 2025 WL 1036638, at *4-*5 (C.D. Cal. Apr. 3, 2025); *Cody v. Conagra Brands, Inc.*, 773 F. Supp. 3d 890, 895 (C.D. Cal. 2025); *Oh v. Catalina Snacks, Inc.*, 764 F. Supp. 3d 903, 913 (C.D. Cal. 2025); *Stewart*, 537 F. Supp. 3d at 1134 (holding that the plaintiff "plead[s] with the requisite specificity that upholds the purpose behind Rule 9(b)") ("The Court finds that Plaintiffs have provided adequate notice to Defendant in a manner that shows the suit is not merely a fishing expedition for unknown wrongs; does not harm Defendant in the same manner as a speculative, conclusory, or barebones complaint; and does not impose upon the Court, the parties, or society the cost of baseless litigation at this stage of the action."); *Matic v. United States Nutrition, Inc.*, 2019 WL 3084335, at *7 (C.D. Cal. Mar. 27, 2019).

Supp. 3d 914, 922 (C.D. Cal. 2023) (Carney, J.) (citing *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *3 (C.D. Cal. Oct. 17, 2018) (Gutierrez, J.); *Howard v. Senkowski*, 986 F.2d 24, 26 (2d Cir. 1993) ("A person may act for more than one reason."). Indeed, in *Cordes*, a federal court noted, in finding an injury in fact for Article III standing purposes, that "while Plaintiff's allegation that he purchased the Product in part to determine whether it was lawfully filled suggests that he may have *suspected* that the package contained a significant amount of slack-fill, it does not demonstrate that he *knew for certain* about the amount of slack-fill before he purchased and opened the product." *Cordes*, 2018 WL 6714323, at *2 (emphasis in original), *cited in Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 980 (C.D. Cal. 2024) (Vera, J.) (finding that the reasoning in *Cordes* "applies just as forcefully to Plaintiff's burden on justifiable reliance"); *Banana Joe, Inc.*, 2025 WL 1036638, at *5 ("Plaintiff's status as a tester does not preclude her ability to plead a valid injury.").

Notably, a federal court recently held in a similar action alleging unlawful slack-fill in food packaging that similar allegations were "enough to give to a plausible inference that Plaintiff relied on the slack-fill in making her purchase." *Oh v. Fresh Bellies, Inc.*, 2024 WL 4500727, at *8 (C.D. Cal. Oct. 15, 2024) (Gutierrez, J.).

Here, Plaintiff has alleged having a dual motivation to purchase the Product. (SAC ¶ 53.) Plaintiff has alleged that she "was genuinely interested in consuming and enjoying the product, and did so – with disappointment that the package had significant amounts of empty space." *Id.*

If Defendant disputes Plaintiff's allegations, then Defendant should conduct discovery and raise the issue of actual reliance at a proper stage in the proceedings. At present, however, in the present context of the instant Motion, it would be premature for the Court to make credibility determinations in evaluating Plaintiff's allegations of actual reliance.

## C.    Defendant's Safe Harbor Arguments Are Without Merit.

Although Defendant argues that the SAC does not sufficiently address safe harbors that apply to food packaging, (Def.'s Mem. at 13:15-15:21), Defendant's assumption that the SAC must affirmatively plead that none of the food packaging safe harbors applies is wrong. "District courts in California are split as to whether the safe harbor provisions are affirmative defenses … 'or whether their inapplicability is an element that must be pled.'" *Stewart*, 537 F. Supp. 3d at 1154. Plaintiff submits that the case authority holding that the safe harbor provisions are affirmative defenses is more persuasive and should be followed here especially because such case authority relies upon California Supreme Court precedent.[2]

Assuming *arguendo* that the SAC must affirmatively allege that none of the safe harbors applicable to food containers set forth in 21 C.F.R. § 100.100(a)(1)-(6) apply to Defendant's Product, the SAC does so. (*See* SAC ¶¶ 24-44.) Numerous decisions that have held that plaintiffs making similar nonfunctional slackfill allegations had plausibly pled each safe harbor provision as not applicable. *Banana Joe*, 2025 WL 1036638, at *4; *Cody*, 773 F. Supp. 3d at 897-98; *Oh v. Fresh Bellies, Inc.*, 2025 WL 659213, at *3 (C.D. Cal. Feb. 25, 2025); *Catalina Snacks*, 764 F. Supp. 3d at 918-20; *Padilla v. Whitewave Foods Co.*, 2019 WL 4640399, at *13 (C.D. Cal. July 26, 2019) (Kronstadt, J.) ("The allegations of the FAC as to nonfunctionality are not detailed. However, they are sufficient to state the basis for a plausible claim for relief"), *cited in Barrett v. Optimum Nutrition*, 2022 WL 2035959, at *3 (C.D. Cal. Jan. 12, 2022) (Gee, J.) ("here Plaintiff affirmatively and plausibly pleads that each safe harbor provision does not apply"), and *Coleman v.*

---

[2] *Spacone v. Sanford, LP*, 2017 WL 6888497, at *7 n.8 (C.D. Cal. May 11, 2017) (O'Connell, J.) ("Defendant suggests that Plaintiff bears the burden of pleading sufficient facts negating each of the fifteen possible enumerated reasons for which section 12606 makes nonfunctional slack fill acceptable….The Court disagrees that Plaintiff bears this burden.") (citing *McMillan v. Lowe's Home Centers, LLC*, 2016 WL 2346941, at *6 (E.D. Cal. May 4, 2016) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999))); *Moralez v. Kern Schools Federal Credit Union*, 2016 WL 2756427, at *2 (E.D. Cal. May 12, 2016) ("The safe harbor doctrine is treated as an affirmative defense to a UCL claim.") (citing *Cel-Tech*, 20 Cal. 4th at 182-83); *id.* at *2 n.2 ("the California Supreme Court treated the safe harbor doctrine as imposing a limit on the scope of the UCL, not an additional pleading requirement.") (citing *Cel-Tech*, 20 Cal. 4th at 182); *Kline v. Iovate Health Sciences U.S.A., Inc.*, 2017 WL 1135580, at *3 (S.D. Cal. Mar. 27, 2017) ("Defendant has not established it is entitled to one or more safe harbors contained in either [21] C.F.R. § 100.100 or Cal. Bus. & Prof. Code § 12606.").

*Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1062 (C.D. Cal. 2021) (Olguin, J.) ("These 'affirmative allegations are enough to plausibly allege that the [challenged] safe harbor provisions' do not apply."); *Maisel v. Tootsie Roll Industries, LLC*, 2021 WL 3185443, at *4 (N.D. Cal. July 27, 2021) ("Contrary to Defendant's assertion that Plaintiff's allegations regarding nonfunctional slack-fill are conclusory, Plaintiff's FAC sets forth detailed allegations… in support of the claim that the slack-fill in the Products' boxes is nonfunctional."); *Stewart*, 537 F. Supp. 3d at 1154 ("Plaintiffs sufficiently plead that the safe harbor provisions do not apply"); *Clevenger v. Welch Foods, Inc.*, 501 F. Supp. 3d 875, 884 (C.D. Cal. 2020) (Carney, J.) ("Plaintiff alleges specific facts demonstrating that the boxes' empty space is nonfunctional because it does not fall within the statutorily approved reasons for slack fill."); *Schoonover v. Iovate Health Sciences U.S.A. Inc.*, 2020 WL 5015269, at *2 (C.D. Cal. June 18, 2020) ("Plaintiff specifically alleges why the slack-fill is non-functional."); *Kamal v. Eden Creamery, LLC*, 2019 WL 2617041, at *9 (S.D. Cal. June 26, 2019) ("Plaintiffs allege conduct that, if true, violates the federal slack-fill standard."); *Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022, at *10 (N.D. Cal. Apr. 12, 2019)("plaintiff sufficiently alleges that the Alexia product's slack fill is nonfunctional"); *Matic*, 2019 WL 3084335, at *6 (concluding that "Plaintiff's complaint adequately pleads that the safe harbor provisions do not apply"); *Hawkins v. Nestle U.S.A. Inc.*, 309 F. Supp. 3d 696, 703 & n.3 (E.D. Mo. 2018) (stating that plaintiff had alleged that six exceptions to slack-fill in federal regulation did not apply); *Gordon v. Tootsie Roll Indust., Inc.*, 2017 WL 8292777, at *5 (C.D. Cal. July 31, 2017) (Fischer, J.) ("The Court finds Plaintiff has provided sufficient concrete facts, which when coupled with the images in Plaintiff's complaint, plausibly allege that Junior Mints' packaging contains nonfunctional slack-fill."); *Escobar v. Just Born, Inc.*, 2017 WL 5125740, at *12 (finding similar allegations sufficient to adequately plead nonfunctional slack-fill in support of UCL, FAL, and CLRA claims); *Spacone*, 2017 WL 6888497, at *6-*7.

    Defendant's reliance on the "[p]rotection of the contents of the package" safe harbor in Cal. Bus. & Prof. Code § 12606.2(c)(1), (Def.'s Mem. at 14:11-12), is nonsensical given

that the Product's container contains whey protein powder, which has no risk of "breaking" unlike items like potato chips or pretzels.  (SAC ¶ 24.)

The SAC alleges, "The slack-fill present in the Product's packages is not a result of unavoidable product settling during shipping and handling.  Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill.  No measurable product settling occurs during subsequent shipping and handling."[3]  (SAC ¶ 28.)  These allegations of fact regarding the absence of unavoidable product settling safe harbor are required to be assumed as true as opposed to a conclusion for purposes of the instant Motion.  Multiple federal courts have held that similar allegations are sufficient to withstand a motion to dismiss.  *See Reyes*, 729 F. Supp. 3d at 978; *Barrett*, 2022 WL 2035958, at *3; *Coleman*, 554 F. Supp. 3d at 1062; *Schoonover*, 2020 WL 5015269, at *2; *Matic*, 2019 WL 3084335, at *6 (holding that the affirmative allegation that "it is unrealistic that a product would settle down to nearly 40% slack-fill" to be sufficient to plausibly allege the nonapplicability of the safe harbor regarding unavoidable product settling during shipping and handling).

*Matic* noted in regards to the defendant's argument that slack-fill is necessary for "heat-sealing the package," the following:  "The Court believes that it is reasonable to infer from the large amount of empty space alone that ***all*** of this space is not necessary for sealing the package."  *Matic*, 2019 WL 3084335, at *6 (emphasis added).  Although the analysis therein was in the specific context of "heat-sealing the package," it is equally applicable to the safe harbors pertaining to:  (1) protection of the contents; and (2) settling.  That is, while ***some*** empty space may be included in the Product's packaging as a result of such safe harbors, such empty space does not explain why an approximately 60 percent fill level exists.

---

[3] The federal "slack-fill regulation asks whether the settling is 'unavoidable.'"  *Kamal*, 2019 WL 2617041, at *9.  Thus, if the settling is avoidable during shipping and handling, it is excluded from the applicable safe harbor.

Notably, Defendant has failed to cite any guidance or case authority addressing the maximum amount of settling that occurs regarding protein powder or similar powder products.

Finally, Defendant's meager attempt to distinguish the existence of the comparator product with powder, (SAC ¶ 20), is unpersuasive. (Def.'s Mem. at 15:12-16.) It shows that machines can be recalibrated to increase the fill level of the Product's pouches.

**D.    The Court Should Not Decide as a Matter of Law that a Reasonable Consumer of the Product Understands that the Amount of Product Indicated on the Product's Container Is Significantly Less Than What Is Suggested by the Size of the Container.**

Defendant's argument that the Court should decide as a matter of law that Plaintiff cannot satisfy the reasonable consumer test is without merit. "[T]he amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage." *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013); *Cody*, 773 F. Supp. 3d at 897; *Banana Joe*, 2025 WL 1036638, at *4.

**1.    The Product's Information on the Front and Back Panels of the Oversized Container Used for the Product's Packaging Does Not Cure the Misleading Nature of the Oversized Container.**

Although Defendant relies upon the front panel of the Product's container stating the net weight of the Product (14.8 oz/420 g) and the rear panel of the Product's container stating the serving size (1 scoop or 30g)[4] and the number of servings per container ("14 servings per container") as purportedly dispelling any deception caused by Defendant's oversized packaging of its Product's container, (Def.'s Mem. at 16:23-27), it is improper to rely upon such information as the basis for disregarding the deceptive nature of the oversized pouch used to package the Product. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) (holding that district court erred by relying on labeling

---

[4] Defendant's purported quotation of page 2 of Exhibit A to its RJN to "[a]dd one scoop [of protein] to 8 oz of cold milk or plant-milk in a shaker," (Def.'s Mem. at 3:8-10), is false. Page 2 only depicts a "Nutrition Facts" label with no usage or dosage instructions. Moreover, Exhibit A does not reflect the Product purchased by Plaintiff.
Exhibit 2 to the SAC contains usage instructions, which do not actually refer to 1 scoop for either a shake or a smoothie. (SAC Ex. 2.) Thus, Defendant's attempt to imply otherwise, (Def.'s Mem. at 17:2-4), is mistaken.

statements on packaging of containers either contradicting or correcting misrepresentations contained elsewhere on such same packaging).

As a matter of common sense, there is nothing to indicate that information about the serving size can be readily translated in the mind of the average consumer to a relatively low percentage of the exterior space represented by the package. What are 14.8 ounces or 420 grams supposed to look like in terms of volume? *Reyes*, 729 F. Supp. 3d at 974 ("The Court finds almost absurd the assumption that even a math major could rapidly (in a candy aisle of a supermarket) multiply the number of servings to come up with a total candy count *and then estimate the three-dimensional volume of each piece based on an image* to calculate the total ratio of candy volume to box volume.") (emphasis in original); *id.* at 977 ("where candy pieces are unusually small or oddly shaped or where a package is quite bulky—it may be more rational for a consumer to rely on the size of the container in assessing their purchase than their own ability to image the volume of 12.5 servings of 17 pieces of candy"); *Catalina Snacks*, 764 F. Supp. 3d at 915 ("[T]he packaging in this case does not inform consumers how many bowls of cereal are contained within the packaging. Rather, it just states the total weight of the packaging. This does little to inform consumers of how much cereal is contained inside."); *Barrett*, 2022 WL 2035959, at *3 ("'a reasonable consumer purchasing candy may not necessarily be aware of how the weight of product or ***number of pieces*** correlates to the physical amount of product'") (emphasis added) (quoting *Gordon*, 2017 WL 8292777, at *4; *Maisel*, 2021 WL 3185443, at *3 (noting that the court in *Gordon* could not "find as a matter of law that a reasonable consumer of candy products understands that the amount of product indicated on the label is significantly less tha[n] is suggested by the size of the packaging") (quoting *Gordon*, 2017 WL 8292777, at *4); *id.* at *4 ("The Court agrees with *Gordon* that a reasonable consumer might not necessarily comprehend the differential between the size of the box and the amount of the candy contained inside, ***even with that amount listed numerically***. The size of the box suggests something to the average person that a recitation of numbers might not be sufficient to overcome; the common experience of opening up an expensive box of movie theater candy

to reveal a paltry few pieces inside speaks to that fact.") (emphasis added); *Krause-Pettai v. Unilever United States, Inc.*, 2021 WL 1597931, at *3 (S.D. Cal. Apr. 23, 2021) ("the net weight alone provides little, if any meaningful information to the consumer about the actual size or amount of deodorant inside the container") (citing *Escobar*, 2017 WL 5125740, at *9); *id.* at *4 ("Given the specific facts alleged in this case, the opaque nature of the packaging, the limited value of the net weight listing, ... the consumer is left to reply primarily on the size of the container as representative of the amount of deodorant inside the package"); *Padilla*, 2019 WL 4640399, at *11 ("Although the packaging lists the weight and approximate number of servings in each container, the containers' size may provide consumers with a more salient means by which to assess the quantity of product they are purchasing and its value."); (*Cordes*, 2018 WL 6714323, at *7) ("The Court finds it at least plausible that a consumer could be deceived by a package filled with forty percent air, *regardless of whether the number of pretzels in the package is displayed on the ingredient list*.") (emphasis added); *Escobar*, 2017 WL 5125740, at *9 ("In the Court's view, a reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size."); *id.* at *10 ("even if a product's packaging accurately displays its weight, it does not mean that the way in which the product was packaged may not be misleading"); *Spacone*, 2017 WL 6888497, at *9 ("In the Court's view, a reasonable consumer is not necessarily aware of the weight or volume of a product and how that weight or volume compares to the product's size."); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *6-*7 (S.D.N.Y. Oct. 26, 2016) (denying motion to dismiss claim concerning slack-filled candy boxes; reasonable consumer could be misled even if candy box displayed net weight and *listed number of pieces inside*).

As the court explained in *Escobar*, "consumers may reasonably rely on the size of the packaging and believe that it accurately reflects the amount she is purchasing." *Escobar*, 2017 WL 5125740, at *10, *quoted in Stewart*, 537 F. Supp. 3d at 1141.

The decision in *Gordon*, 2017 WL 8292777, at *4, is directly on point especially because the court expressly distinguished *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016),

as inapposite.  In *Gordon*, the court denied the defendant's motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) in a similar consumer protection action involving allegations of nonfunctional slack-fill in a food product.  The court explained its reasoning as follows:

> "Plaintiff alleges that Junior Mints' packaging states that it contains 3.5 ounces of product and that the Nutrition Facts state that there are approximately 16 pieces of candy per serving and approximately 2.5 servings of candy per box. FAC ¶ 35. Unlike the situation in *Ebner*, ***the Court cannot find as a matter of law that a reasonable consumer purchasing candy in an opaque box necessarily expects there to be significant empty space in the box***.  This is illustrated by the Boston Baked Beans box included in Plaintiff's complaint, which appears to have a much smaller amount of slack fill than Junior Mints' packaging. ***Additionally, a reasonable consumer purchasing candy may not necessarily be aware of how the weight of product or number of pieces correlates to the physical amount of product, and thus may still expect a package to be more than 55% full despite accurate weight and product count labeling on the package.***  *Ebner* is also distinguishable because the lip product in *Ebner* was merely difficult to access, but was not alleged to be nonexistent. *Ebner*, 838 F.3d at 961.  Furthermore, the *Ebner* court found that the portion of product that was inaccessible had a functional purpose. ***Here, the Court cannot find as a matter of law that the empty space in Junior Mints' packaging served a strictly functional purpose.***
>
> Junior Mints' packaging accurately indicates the weight and number of pieces of candy in the box, but it does not necessarily convey to a reasonable consumer that Junior Mints' package will not be full of candy.  In light of Plaintiff's allegations, ***the Court cannot find as a matter of law that a reasonable consumer of candy products understands that the amount of product indicated on the label is significantly less than is suggested by the size of the packaging***."

*Gordon*, 2017 WL 8292777, at \*4 (emphasis added).[5]    Notably, Defendant makes no attempt to distinguish, let alone, address *Gordon* despite its clear relevance here. Defendant's omission speaks volumes.

Multiple recent decisions have cited *Gordon* for its holding with approval. *Barrett*, 2022 WL 2035959, at \*3 ("'a reasonable consumer purchasing candy may not necessarily be aware of how the weight of product or number of pieces correlates to the physical amount of product'") (quoting *Gordon*, 2017 WL 8292777, at \*4); *Maisel*, 2021 WL 3185443, at \*3 (noting that the court in *Gordon* could not "find as a matter of law that a reasonable consumer of candy products understands that the amount of product indicated on the label is significantly less that is suggested by the size of the packaging") (quoting *Gordon*, 2017 WL 8292777, at \*4); *id.* at \*4 ("The Court agrees with *Gordon* that a reasonable consumer might not necessarily comprehend the differential between the size of the box and the amount of the candy contained inside, ***even with that amount listed numerically***. The size of the box suggests something to the average person that a recitation of numbers might not be sufficient to overcome; the common experience of opening up an expensive box of movie theater candy to reveal a paltry few pieces inside speaks to that fact.") (emphasis added). Notably, *Maisel* characterized *Gordon* as the "***case [that] most closely tracks governing California law on whether decision on demurrer is appropriate in the context of a false advertising claim***." *Maisel*, 2021 WL 3185443, at \*3 (emphasis added).

*Spacone* also provides helpful guidance. In *Spacone*, the plaintiff sued the seller of the Krazy Glue brand all-purpose adhesive alleging that such product was packaged in an opaque plastic container several times larger than the Krazy Glue tube containing the glue. *Id.* at \*1. Such outer tube is referred to as the "Stay Fresh Container." *Id.* at \*1 n.1. The plaintiff alleged that the opaque container has a significant amount of nonfunctional slack fill in violation of section 12606. *Id.* at \*1. In denying the defendant's motion to dismiss, the court explained its reasoning under the reasonable consumer standard as follows:

---

[5] *Ebner* was similarly distinguished based on the unique factual circumstances regarding the lip balm dispenser at issue therein in *Coleman*, 554 F. Supp. 3d at 1063; *see also Stewart*, 537 F. Supp. 3d at 1143 (distinguishing *Ebner* based on "unique mechanics of a lip balm dispenser").

"The Court declines to read *Ebner* as Defendant suggests, i.e., broadly holding that so long as a product's packaging indicates the product's accurate weight it can never be misleading. In the Court's view, ***a reasonable consumer is not necessarily aware of the weight or volume of a product and how that weight or volume compares to the product's size.*** In other words, the fact that the Krazy Glue's packaging accurately indicated that a consumer would receive two grams or 0.07 ounces of glue does not, on its own, indicate to a reasonable consumer that the Stay Fresh Container must not be full of glue and that, instead, there must be a smaller tube of glue held inside; rather, a reasonable consumer may believe that two grams or 0.07 ounces of glue is equivalent to an amount approximately the size of the Stay Fresh Container.

…

Here, nothing on the packaging—other than the weight—indicates the amount of the glue the consumer will receive. Thus, the consumer may reasonably rely on the size of the packaging and the Stay Fresh Container and believe that it accurately reflects the amount she is purchasing.

Further, in *Ebner*, the court found that the reasonable consumer understands that any lip product contains a mechanical stop device and, therefore, the weight contained on the package that included the weight of the device was not misleading. But here, the Court cannot find as a matter of law that a reasonable consumer of Krazy Glue or permanent glue products understands that the weight displayed on the glue's packaging will measure a significantly smaller tube of glue held within the larger outer packaging. The Court finds that this practice, unlike the use of a mechanical stop device in lip products, is not so common, frequent, or expected as to manifest an expectation in consumers that, regardless of the size of a permanent glue's packaging, the packaging will include a much smaller tube of glue inside.

Thus, even if a product's packaging accurately displays its weight, it does not mean that the way in which the product was packaged may not be misleading. … Accordingly, the Court finds that Plaintiff has plausibly alleged that Krazy Glue's packaging may have misled a reasonable consumer and caused her to believe that two grams or 0.07 ounces of glue constituted a larger amount of glue than was provided inside of the Stay Fresh Container."

*Spacone*, 2017 WL 6888497, at \*9-\*10.  *Spacone* is persuasive.

*Stewart*, which supports Plaintiff's position, also provides important guidance.  After reviewing the dueling set of case law, *Stewart* held:

> "In assessing a product, whether a reasonable consumer would be deceived often depends on the circumstances. Substantial, nonfunctional empty space may be a factor that could plausibly mislead a reasonable consumer.…The reasonable consumer does not don Sherlock Holmes garb to scrutinize an entire aisle filled with shelves of a various pancakes by comparing the exact weight of each box's content with the price across a dozen brands or shaking and manipulating each box to detect the nature of the hidden culinary treasure. Although consumers take into consideration certain labels and information provided on the packaging, consumers plausibly do not perform intense word-by-word detective work for each product they toss in their shopping cart."

*Stewart*, 537 F. Supp. 3d at 1141-42.  *Stewart* then found that "exaggerated box size and slack fill allegations can form the basis for a CLRA claim."  *Id.* at 1145 ("a reasonable consumer could plausibly assume that the size of an opaque, nonpliable package bears some relationship to the amount of product inside").

"***Clear disclosures on labels***, scale drawings, and other informative matter ***may not counteract the impression created by the size of the package***, and in this sense slack fill can be viewed as inherently deceptive."  *Hobby Industry Ass'n of America, Inc. v. Younger*, 101 Cal. App. 3d 358, 368 (1980) (emphasis added).

The Court should consider the FDA's guidance in 21 C.F.R. § 100.100 as to the effect of an accurate weight statement on packaging that contains nonfunctional slackfill.[6]

**E.    Plaintiff Has Standing to Sue for Injunctive Relief.**

---

[6] The FDA's final rule states that the "FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading."  *See* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123, 64128, 1993 WL 498605 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100).

Defendant's contention that Plaintiff lacks standing to pursue injunctive relief is without merit. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961 (9th Cir. 2018) (holding as a matter of first impression that a previously deceived consumer could have standing to seek an injunction against false advertising or labeling). The SAC alleges:

> "Plaintiff intends to purchase the Product or other GAINFUL-branded protein powder products in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product and other protein powder products is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's packaging of the Product and other protein powder products."

(SAC ¶ 63.) This allegation is similar to the allegations found to be sufficient in *Davidson* for the named plaintiff to have standing to seek injunctive relief. 889 F.3d at 970-71; *id.* at 971 ("[Plaintiff] has alleged that she desires to purchase [Defendant's] flushable wipes."). The SAC is devoid of any grounds to discount Plaintiff's stated intent to purchase the Product in the future. *Id.* at 971.

Defendant's reliance upon *Jackson v. General Mills, Inc.*, 2020 WL 5106652, at *6 (S.D. Cal. Aug. 28, 2020), is misplaced because *Jackson* is unpersuasive. *Jackson* relied heavily upon the proposition that the plaintiff therein "now knows she can ascertain the amount of cereal she is buying by looking at the label." *Id.* at *5. This begs the question, however, whether a reasonable consumer is likely to be misled by the size of the packaging itself despite labeling information setting forth the weight of the product and similar information on the principal display panel. *Jackson* assumes without any cogent analysis that a reasonable consumer could not be misled by packaging volume when faced with the knowledge of net weight information on a product's label despite the court's observation that "the SAC does not suggest any reason why customers would believe a particular number of grams of cereal consistently translates into a particular volume." *Id.* at *4.

Given that it would be entirely premature for this Court to determine as a matter of law that a reasonable consumer could not rely upon packaging volume to discern the amount

of product contained therein based upon labeling information, it would be equally premature for the Court to rely upon *Jackson* to hold that Plaintiff can rely upon the packaging label's **weight** information as setting forth the amount of **volume** of product contained therein in the future. *Reyes*, 729 F. Supp. 3d at 975-77.

**F.    As a Class Action Plaintiff, Plaintiff Can Bring Claims for Unpurchased Products that Are Similar to the Product Purchased by Plaintiff.**

Defendant contends that Plaintiff lacks standing to sue for products besides the specific Product that Plaintiff purchased. (Def.'s Mem. at 18:20-19:22.) "'The prevailing view in the Ninth Circuit is to allow class action plaintiffs to bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar.'" *Gamez v. Summit Naturals Inc.*, 2022 WL 17886027, at *6 (C.D. Cal. Oct. 24, 2022) (Fischer, J.) (quotation omitted). "Under the substantial similarity test, courts consider whether the products at issue and alleged misrepresentations are substantially similar." *Id.* (citation omitted). "The relevant factors in this inquiry include similarity in products, claims, and injury to customers." *Id.* (citation omitted). "Products are substantially similar where the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.* (quotation omitted). *Gamez* is directly on point.

As the Court held in *Gordon*, "Plaintiff must allege facts demonstrating **sufficient similarities between the composition** of Junior Mints and Sugar Babies (or any other products Plaintiff seeks to include in the action), such that the functional versus nonfunctional slack-fill analysis likely would be the same for both products." *Gordon*, 2017 WL 4786090, at *2 (emphasis added), *cited in Clevenger v. Welch Foods Inc.*, 2022 WL 16964009, at *4 (C.D. Cal. Feb. 25, 2022) ("When applying the substantial similarity test to nonfunctional-slack-fill claims, courts have considered whether the **composition** of the products are so similar that the slack-fill analysis would likely be the same for both products.") (emphasis added).

The various protein powders alleged in the SAC are substantially similar to each other because the "slack fill analysis likely would be the same for both products." *Clevenger v.*

*Welch Foods, Inc.*, 2021 WL 3616109, at *2 (C.D. Cal. Apr. 1, 2021) (quoting *Gordon*, 2017 WL 4786090, at *2); SAC ¶¶ 48-49.  That is, all versions are composed of protein powders, and contain a net weight of 14.8 ounces. (SAC ¶ 48-49.) Further, the SAC alleges, "The manufacturing process to fill and seal the containers of protein powder nutritional supplement food products under the GAINFUL brand name is either substantially similar or identical regardless of the specific protein base or formula…." (SAC ¶ 49.)

**G.      Leave to Amend Should Be Granted If a Curable Defect Exists.**

Leave to Amend should be granted if the Court finds that a curable defect exists.

Dated:  October 30, 2025                    PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated:  October 30, 2025

*/s/ Scott J. Ferrell*
Scott J. Ferrell