UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-01373-KK-SPx** | Date: | May 19, 2026 |
|---|---|---|---|

| Title: | ***Annette Cody v. Gainful Health Inc.*** |
|---|---|

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order DENYING Defendant's Motion to Dismiss [Dkt. 21]**

## I.
## INTRODUCTION

On December 23, 2025, plaintiff Annette Cody ("Plaintiff") filed the operative Third Amended Class Action Complaint ("TAC") against defendant Gainful Health Inc. ("Defendant"), asserting violations of California law arising from Defendant's allegedly deceptive packaging of a food product.  ECF Docket No. ("Dkt.") 20, TAC.  On January 6, 2026, Defendant filed the instant Motion to Dismiss the TAC ("Motion").  Dkt. 21, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Defendant's Motion is **DENIED**.

## II.
## BACKGROUND

### A.    RELEVANT FACTS

As alleged in the TAC, Plaintiff is a citizen of California.  TAC ¶ 4.  Defendant is a Delaware corporation with its principal place of business in New York.  Id. ¶ 5.  Defendant manufactures and sells protein powder nutritional supplement products.  Id.

On October 26, 2024, Plaintiff purchased "Gainful Whey Protein Powder Build Muscle Bundle, Post Workout Support, Whey Isolate + Concentrate, Low Carb, Unflavored with Chocolate, Vanilla, Strawberry & Variety Pack Flavor Boosts, 28 Servings" (the "Product") from Defendant's online storefront at Amazon.com.  Id. ¶¶ 1, 49.  The Product "included two pouches or bags," each weighing 14.8 ounces and "contain[ing] 14 servings per container," and 28 "Flavor Boost" packets.  Id. ¶¶ 1, 50.  Each pouch was "opaque" and did "not allow the customer to fully view its contents."  Id. ¶ 17.  The nutrition label on the back of each pouch indicated a serving size of "1 scoop (30 g)."  Dkt. 20-2, Ex. 2 at 2.  The instructions for the Product's use, also located on the back of each pouch, directed the consumer to "[e]njoy [their] Personalized Protein Powder . . . in a variety of ways," including by mixing the Product with milk, blending the Product into a smoothie, and "[a]dd[ing] a scoop to your favorite baked good recipe."  Id.; TAC ¶ 32.

Plaintiff purchased the Product with "dual motivations."  Id. ¶ 52.  "First, Plaintiff is a consumer rights 'tester' who creates public benefit by ensuring that companies comply with their obligations under California law.  Second, Plaintiff was genuinely interested in consuming and enjoying the Product, and did so – with disappointment that the package had significant amounts of empty space."  Id.

Before purchasing the Product, Plaintiff saw the image of the Product on Defendant's online storefront, which "depicted a totally opaque Product container that did not allow Plaintiff . . . to see the fill level within such container."  Id. ¶ 49; see also dkt. 20-5, Ex. 5.[1]  The image also showed the "Flavor Boost" packets, "which indicated the far greater size of the Product's container by comparison."  TAC ¶ 51.  The Product listing on Defendant's Amazon.com storefront disclosed the Product contained 28 servings, weighed 30 ounces, and had package dimensions of 10.47 by 9.92 by 4.76 inches.  Dkt. 20-5, Ex. 5 at 2, 6.  However, the Product listing did "not disclose any . . . disclaimer such as a reference to a fill line or other caveat disclosing that the Product's container was not packaged to be substantially full of protein powder."  TAC ¶ 51.

Plaintiff "relied upon" the Product's packaging as depicted on Defendant's online storefront, including the size of the package, to purchase the Product.  Id.  Specifically, based on the Product listing, Plaintiff believed "the Product's container would not contain substantial amounts of empty space" and "the amount of product contained therein was commensurate with the size of the package."  Id.  However, the "actual product only occupie[d] approximately 60 [percent] of the exterior space represented by the Product's packaging container."  Id. ¶ 2.  Plaintiff alleges the remaining 40 percent of the packaging "contain[ed] nonfunctional slack-fill."  Id. ¶ 46.

According to Plaintiff, she "would not have purchased the Product, or would not have paid a price premium for the Product, had [she] known that the size of the package and product label were false or misleading."  Id. ¶ 51.  Plaintiff further asserts she "would not have purchased the Product had [she] known that the Product contained slack-fill that serve[d] no functional or lawful purpose, and would have consumed the entirety of the contents if the package was filled to [her] expectations."  Id. ¶ 54.

---

[1] Defendant asserts the exhibit of the Product listing attached to the TAC is from April 2025, "six months after [Plaintiff's] purchase."  Mot. at 10 n.1.  Nevertheless, Defendant "assumes for the purposes of this Motion that Exhibit 5 represents the Product listing at the time [Plaintiff] made her purchase."  Id.

## B.      PROCEDURAL HISTORY

On January 15, 2025, Plaintiff initiated the instant action by filing a putative Class Action Complaint against Defendant in Riverside County Superior Court.  Dkt. 1-1.  On May 2, 2025, Plaintiff filed a First Amended Class Action Complaint ("FAC").  Dkt. 1 ¶ 4; dkt. 1-10.

On May 30, 2025, Defendant removed the action to this Court.  Dkt. 1.  On August 15, 2025, the Court granted Defendant's Motion to Dismiss the FAC with leave to amend because Plaintiff failed to file an opposition, which the Court deemed as Plaintiff's "consent to the granting of the Motion."  Dkt. 13 at 2 (citing C.D. Cal. L.R. 7-12).

On August 29, 2025, Plaintiff filed a Second Amended Class Action Complaint ("SAC").  Dkt. 14, SAC.  On December 9, 2025, the Court granted Defendant's Motion to Dismiss the SAC with leave to amend.  Dkt. 19.

On December 23, 2025, Plaintiff filed the operative TAC, asserting the following claims:

(1)      **Cause of Action One:** Common Law Fraud;
(2)      **Cause of Action Two:** Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA");
(3)      **Cause of Action Three:** Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. ("FAL"); and
(4)      **Cause of Action Four:** Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL").

TAC ¶¶ 72-106.  Plaintiff seeks to bring these claims on behalf of "[a]ll persons who purchased the Product . . . in California from January 15, 2021 through the date a class is certified for primarily personal, family or household purposes, and not for resale."  Id. ¶ 65.

In support of the TAC, Plaintiff attaches images purporting to depict the front label, back label, and "level of fill within the two stand-up pouches or bags" of the Product purchased by Plaintiff.  Dkts. 20-1 to -3, Exs. 1-3.  Plaintiff also attaches screenshots of the invoice and order details of Plaintiff's purchase of the Product from Defendant's online storefront at Amazon.com and of Defendant's webpage advertising the Product.  Dkts. 20-4 to -5, Exs. 4-5.

On January 6, 2026, Defendant filed the instant Motion, arguing Plaintiff fails to state a claim for any cause of action.  Mot.  In support of the Motion, Defendant submits the Declaration of Katelyn A. Feliciano.  Dkt. 21-1.

On April 9, 2026, Plaintiff filed an Opposition to Defendant's Motion.  Dkt. 22, Opposition.

On April 16, 2026, Defendant filed a Reply in support of its Motion.  Dkt. 23, Reply.

This matter, thus, stands submitted.

///

///

### III.
### <u>LEGAL STANDARD</u>

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).  In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," <u>Capp v. Cnty. of San Diego</u>, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor, <u>Moreno v. UtiliQuest, LLC</u>, 29 F.4th 567, 573 (9th Cir. 2022).  The court, however, need not accept as true "a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Cook v. Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting <u>Iqbal</u>, 556 U.S. at 678).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

### IV.
### <u>DISCUSSION</u>

**A.    PLAINTIFF SUFFICIENTLY ALLEGES MISREPRESENTATIONS UNDER CALIFORNIA'S CONSUMER FRAUD STATUTES AND COMMON LAW FRAUD**

**1.    Applicable Law**

Under California law, the elements of a fraud claim are "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." <u>Conroy v. Regents of Univ. of Cal.</u>, 45 Cal. 4th 1244, 1255 (2009) (citing <u>Small v. Fritz Cos.</u>, 30 Cal. 4th 167, 173 (2003)).  The CLRA, FAL, and UCL similarly "prohibit unlawful, unfair, or fraudulent business practices." <u>Ebner v. Fresh, Inc.</u>, 838 F.3d 958, 963 (9th Cir. 2016).  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts . . . intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  The FAL prohibits false or misleading advertising, which "is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." <u>Id.</u> § 17200.

The standards for misrepresentation under California's consumer fraud statutes and common law fraud are "substantively distinct." <u>Tarvin v. Olly Pub. Benefit Corp.</u>, 756 F. Supp. 3d 797, 808 (C.D. Cal. 2024) (citation modified) (quoting <u>In re Actimmune Mktg. Litig.</u>, No. C 08-02376 MHP, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009), <u>aff'd</u>, 464 F. App'x 651 (9th Cir. 2011)).  The CLRA, FAL, and UCL prohibit both "advertising which is false" and "advertising

---

**CIVIL MINUTES—GENERAL**                     Initials of Deputy Clerk <u>DC</u>

which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008)). (citation modified) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)). To prevail on a claim under these statutes, the plaintiff must satisfy the "reasonable consumer standard" by showing "members of the public are 'likely to be deceived.'" Panelli v. Target Corp., 172 F.4th 1120, 1124 (9th Cir. 2026) (quoting Williams, 552 F.3d at 938). The reasonable consumer standard "requires 'more than a mere possibility' that the challenged advertising 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" Id. (quoting Ebner, 838 F.3d at 965). Instead, "the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" Id. (quoting Ebner, 838 F.3d at 965). At the motion to dismiss stage, "whether a defendant's practices are deceptive is usually a question of fact that is not appropriate for determination." Oh v. Catalina Snacks, Inc., 764 F. Supp. 3d 903, 914 (C.D. Cal. 2025) (citing Williams, 552 F.3d at 938-39). A plaintiff need not "definitively prove fraud"; rather, a plaintiff must only allege sufficient facts to "support a reasonable consumer's reaction to an allegedly deceptive product." Id. (citation modified) (quoting Chester v. TJX Cos., No. EDCV 15-01437-ODW-DTBx, 2016 WL 4414768, at *12 (C.D. Cal. Aug. 18, 2016)).

In contrast, "[a] common law fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages." In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009) (citation modified) (quoting Day v. AT & T Corp., 63 Cal. App. 4th 325, 332 (1998)). Accordingly, "a 'perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information' may be actionable under consumer protection statutes but not common law fraud." Tarvin, 756 F. Supp. 3d at 808 (quoting Day, 63 Cal. App. 4th at 332-33).

In addition to affirmative misrepresentations, "[o]missions may be the basis of claims under California consumer protections laws." Brown v. Brita Prods. Co., 172 F.4th 1113, 1118 (9th Cir. 2026) (citation modified) (quoting Hodsdon v. Mars, Inc., 891 F.3d 857, 861 (9th Cir. 2018)). To be actionable, an "omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Id. (citation modified) (quoting Hodsdon, 891 F.3d at 861). A duty to disclose a fact arises when, among other things, "the defendant makes representations but fails to disclose other facts that materially qualify the facts disclosed or render the disclosure misleading (i.e., partial concealment)." Rattagan v. Uber Techs., Inc., 17 Cal. 5th 1, 40 (2024).

### 2. Analysis

Here, Plaintiff sufficiently alleges misrepresentations under both California's consumer fraud statutes and common law fraud. In the TAC, Plaintiff alleges Defendant misrepresented the amount of product inside the Product's packaging in two ways. First, Defendant affirmatively misrepresented the amount of product by filling the Product in an opaque and "oversized" container, "which implied . . . that the container had more protein powder than it actually contained." TAC ¶ 74; see also id. ¶ 84 ("The size of the packaging of the Product combined with the actual amount of Product in the package constitutes Defendant's misrepresentation."); id. ¶ 98 (alleging the Product's "containers are oversized and filled as to be misleading"). Second, Defendant failed "to disclose the non-functional slack-fill contained" within the Product's packaging. Id. ¶ 74;

see also id. ¶¶ 87, 98 (alleging Defendant failed to disclose non-functional slack fill in violation of California law).

### a.    California's Consumer Fraud Statutes

With respect to her CLRA, FAL, and UCL claims, the Court finds Plaintiff adequately alleges a reasonable consumer is likely to be deceived as to the volume of product inside the packaging.  Because a consumer viewing the Product listing on Defendant's online storefront has no "reasonable opportunity prior to purchase to shake or otherwise manipulate" the Product to determine whether the Product's packaging "is filled to the brim," they "may reasonably rely on the size of the packaging and believe that it accurately reflects the amount [they are] purchasing." Escobar v. Just Born Inc., No. CV 17-01826-BRO-PJWx, 2017 WL 5125740, at *10 (C.D. Cal. June 12, 2017); see also Stewart v. Kodiak Cakes, LLC, 537 F. Supp. 3d 1103, 1143 (S.D. Cal. 2021) (noting consumers purchasing products online "cannot visualize or handle the physical product and, thus, may be more susceptible to deceptive advertising").  Therefore, a reasonable consumer could be plausibly deceived by the size and opacity of the Product's packaging as depicted on Defendant's online storefront, which conceals that the "actual product only occupies approximately 60 [percent] of the exterior space represented by the Product's packaging container."  TAC ¶ 2.

Defendant argues no reasonable consumer would be plausibly deceived by the Product's packaging because the Product listing and the physical packaging both disclose the quantity of Product contained inside the packaging.  Mot. at 23-26.  These arguments are unpersuasive.  As an initial matter, Plaintiff did not rely on the Product's physical packaging when purchasing the Product; rather, as Defendant concedes, she relied on the Product listing on Defendant's online storefront.  See TAC ¶ 51; see also Mot. at 25 (acknowledging Plaintiff "alleges she purchased the Product online, where reasonable consumers must read product descriptions before placing their order").  While the Product listing displays the front label of the Product's packaging, it is unclear whether the listing depicts the back label.  See dkt. 20-5, Ex. 5.  Therefore, to the extent the back label of the packaging was not visible on Defendant's Amazon.com storefront when Plaintiff purchased the Product, any information on the back label is irrelevant to determining whether a reasonable consumer is likely to be deceived.  Cf. Williams, 552 F.3d at 939 (holding a reasonable consumer should not be expected "to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box").

Based on the exhibit submitted by Plaintiff and assumed as accurate by Defendant, see Mot. at 10 n.1., the Product listing indicated the package's dimensions, weight, and number of servings, see dkt. 20-5, Ex. 5.  However, these figures "do[] not necessarily provide the reasonable consumer a meaningful metric for how much powder is in the container," Barrett v. Optimum Nutrition, No. CV 21-4398-DMG-SKx, 2022 WL 2035959, at *5 (C.D. Cal. Jan. 12, 2022), as a reasonable consumer is "not necessarily aware" of how a product's weight and number of servings "correlate[] to the product's size," Escobar, 2017 WL 5125740, at *9.  Under these circumstances, a consumer viewing the Product listing may be aware of the weight of the Product but cannot "readily determine the volume of protein powder they were purchasing . . . without first buying the product." Padilla v. Whitewave Foods Co., No. CV 18-09327-JAK-JCx, 2019 WL 4640399, at *8 (C.D. Cal. July 26, 2019).

Further, even assuming Plaintiff could view the back label of the Product's packaging when purchasing the Product, the information on the back label does not establish it is "impossible" for

---

Plaintiff to show "a reasonable consumer was likely to be deceived." Cody v. Conagra Brands, Inc., 773 F. Supp. 3d 890, 896 (C.D. Cal. 2025) (citation modified) (quoting Kennard v. Lamb Weston Holdings, Inc., No. 18-CV-04665-YGR, 2019 WL 1586022, at *3 (N.D. Cal. Apr. 12, 2019)).  As noted, the back label disclosed a serving size is "1 scoop (30 g)." Dkt. 20-2, Ex. 2 at 2.  The back label also contained instructions for the Product's use directing a consumer to mix the Product "with 8oz of ice cold milk or plant-based milk in a shaker," blend the product "with 8oz of [their] favorite beverage" and "frozen fruit, fresh veggies[,] or nut butter," and "[a]dd a scoop to [their] favorite baked good recipe to pack a protein punch." Id.; TAC ¶ 32.  Defendant contends this information accurately conveys "that each bag yields 14 servings of 8 oz beverages using one scoop of protein." Mot. at 25.  In support of this argument, Defendant cites several cases finding "no reasonable consumer would be plausibly deceived" where a package "provide[s] a consumer with a 'rough estimate' of the amount of final product that can be made from its contents." Id. at 24 (quoting Buso v. ACH Food Cos., 445 F. Supp. 3d 1033, 1038 (S.D. Cal. 2020)).

However, this case is distinguishable from Defendant's cited cases, each of which "involved products that were discrete, countable goods, the number of which were disclosed on the label." Barrett, 2022 WL 2035959, at *3; see also Cantu v. Gen. Mills, Inc., No. CV 24-10664-GW-PDx, 2025 WL 942609, at *6 (C.D. Cal. Mar. 21, 2025) ("Notably, there appears to be a salient distinction drawn within the caselaw between information that merely conveys weight or serving size, which a reasonable consumer could find abstract as compared to the product's physical size in forming expectations as to product quantity, and information that conveys yield."), adopted, No. CV 24-10664-GW-PDx, 2025 WL 942610 (C.D. Cal. Mar. 24, 2025).  Contrary to Defendant's argument, the back label of the Product did not disclose "the number and size of beverages that can be made" from the Product. Mot. at 25 (citation modified) (quoting Gamez v. Zero Day Nutrition Co., No. EDCV 22-1655-JGB-KKx, 2023 WL 12168700, at *7 (C.D. Cal. May 3, 2023)).  Specifically, the instructions on the back label did not indicate how much protein powder a consumer should mix with 8 oz of milk or plant-based milk or blend with 8 oz of the consumer's "favorite beverage."[2] See dkt. 20-2, Ex. 2 at 2.  Similarly, while the packaging contained 28 "Flavor Boost" packets, the instructions did not indicate how much "Flavor Boost" a consumer should mix with milk, blend into a smoothie, or add into a baked good. See id.  Thus, the back label failed to indicate the number and size of beverages a reasonable consumer could expect to produce from the Product. Cf. Catalina Snacks, Inc., 764 F. Supp. 3d at 915 (finding a package's disclosure of weight and number of servings was insufficient for dismissal under the reasonable consumer standard because "consumers understand that the serving size on a nutrition label does not necessarily correspond with how much cereal consumers typically eat in one serving").

Moreover, while the back label suggested a consumer could "[a]dd a scoop" of the Product to their "favorite baked good recipe," the back label did not specify the type or amount of baked goods to which a scoop of the Product should be added. See dkt. 20-2, Ex. 2 at 2.  Without reference to the amount of baked goods that can be produced from the Product, a "scoop" of protein powder "is not an intrinsically meaningful metric of quantity," even when "the consumer can calculate the approximate weight of each scoop." Barrett, 2022 WL 2035959, at *3 (citation

---

[2] For this reason, the Court finds this case distinguishable from Gamez, where the packaging at issue directed a consumer to mix a scoop of protein powder with 10 ounces of liquid, thereby clearly indicating "the number and size of beverages that can be made." 2023 WL 12168700, at *7 (quoting Costa v. Reliance Vitamin Co., No. 3:22-cv-04679-WHO, 2023 WL 2989039, at *4 (N.D. Cal. Apr. 18, 2023)).

modified) (quoting Padilla, 2019 WL 4640399, at *12); see also Padilla, 2019 WL 4640399, at *12 ("A label that states a cannister contains 20 scoops of protein powder communicates materially less information to a consumer than a label stating that a cannister contains 20 cookies."). Thus, the back label did not meaningfully convey the quantity of baked goods "pack[ed] [with] a protein punch" that a consumer could reasonably expect to be made from the Product. See dkt. 20-2, Ex. 2 at 2; cf. Buso, 445 F. Supp. 3d at 1038 (finding no reasonable deception where a label disclosed a box "contain[ed] enough cornmeal mix to make 'one 8-in square "loaf" of cornbread or 12 standard cornbread muffins'").

Therefore, even if Plaintiff viewed the physical packaging before purchasing the Product, the back label did not adequately "provide a clear statement of yield that a reasonable consumer would understand." Costa, 2023 WL 2989039, at *3; see also Conagra Brands, Inc., 773 F. Supp. 3d at 897 (finding packaging was plausibly deceptive to a reasonable consumer where the packaging disclosed the approximate number of pieces of cauliflower and the net weight). Hence, the Court finds Plaintiff sufficiently alleges a reasonable consumer is likely to be deceived as to the volume of product inside the packaging.

### b. Common Law Fraud

With respect to her common law fraud claim, the Court also finds Plaintiff adequately alleges an actionable misrepresentation. As an initial matter, Plaintiff fails to allege an affirmative misrepresentation as to the volume of protein powder contained within the Product's packaging. Plaintiff asserts "the filling of the Product in an oversized container . . . implied to the reasonable consumer that the container had more protein powder than it actually contained." TAC ¶ 74. However, Plaintiff does not allege Defendant affirmatively represented the Product's package as filled with a significant amount of "empty space." Id. ¶ 1. Rather, Plaintiff alleges the size and opacity of the package "misrepresent[ed] the Product as . . . free of nonfunctional slack-fill when it is not." Id. ¶ 85. While, as discussed above, the package may deceive a reasonable consumer as to the quantity of protein powder contained therein, such misrepresentation does not amount to a "false affirmation of fact" necessary to state a common law fraud claim. Tarvin, 756 F. Supp. 3d at 808; see also Day, 63 Cal. App. 4th at 332 ("[T]he concept encompassed in the phrase 'likely to be deceived' has no relationship to the concept of common law fraud[.]").

Nevertheless, Plaintiff sufficiently alleges an actionable omission – namely, Defendant's "failure to disclose the non-functional slack-fill contained" within the Product's packaging. Defendant argues Plaintiff's omission theory fails because she "identifies no fact that [Defendant] was required to disclose." Mot. at 20. This argument is unpersuasive. Plaintiff does not allege Defendant's failure to disclose the amount of non-functional slack-fill is a "pure omission." Hodsdon, 891 F.3d at 860. Rather, Plaintiff alleges Defendant's failure to disclose the slack fill was deceptive in light of Defendant's representations regarding the size and opacity of the Product's packaging as depicted on Defendant's online storefront, which plausibly misled Plaintiff into believing the packaging was filled with protein powder. See TAC ¶ 51. Because Plaintiff alleges Defendant "ma[de] representations but fail[ed] to disclose other facts that materially qualify the facts disclosed or render the disclosure misleading (i.e., partial concealment)," Plaintiff plausibly alleges an omission actionable under common law fraud. Rattagan, 17 Cal. 5th at 40.

Accordingly, the Court finds Plaintiff sufficiently alleges misrepresentations actionable under both her statutory and common law fraud claims.

## B.    PLAINTIFF SUFFICIENTLY ALLEGES ACTUAL RELIANCE

### 1.    Applicable Law

Like a plaintiff alleging a claim for fraud, "[a] plaintiff alleging claims under the CLRA, FAL, or UCL, must allege actual reliance." Stewart v. Kodiak Cakes, LLC, 537 F. Supp. 3d 1103, 1135 (S.D. Cal. 2021).  To establish actual reliance, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct.  However, a plaintiff is not required to allege that the challenged misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1020 (9th Cir. 2020) (citation modified) (quoting Kwikset Corp. v. Superior Ct., 51 Cal. 4th 310, 328 (2011)).  Under this standard, a plaintiff may show actual reliance by alleging she "(1) was exposed to (e.g., heard, read, or saw) a defendant's representation regarding a product, (2) that was false and/or misleading, (3) to which a reasonable person would attach importance (materiality), and (4) incurred economic injury as a result (e.g., by purchasing the product for more money than the plaintiff would have (or not purchasing the product at all) but for the misrepresentation)." Gonzales v. Nat. Factors Nutritional Prods. Inc., No. CV 24-02584-DSF-ASx, 2024 WL 4609853, at *6 (C.D. Cal. June 28, 2024) (citation modified) (quoting Stewart v. Electrolux Home Prods., Inc., No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *5 (E.D. Cal. Apr. 13, 2018)).

### 2.    Analysis

Here, Plaintiff adequately alleges actual reliance.  Plaintiff alleges she was exposed to the "opaque" and "oversized" representations of the Product's packaging by viewing the images of the Product on Defendant's Amazon.com storefront.  TAC ¶¶ 1, 15, 51.  Additionally, Plaintiff alleges she "would not have purchased the Product, or would not have paid a price premium for the Product," had she known the Product contained a significant amount of slack fill.  Id. ¶ 51.  Taken as true, these allegations give rise to a plausible inference that Plaintiff reasonably relied on the opaque and oversized packaging to purchase the Product.

Specifically, while the size of the Product's packaging is not "immediately apparent" from the image of the Product, the Product listing provides the dimensions of the package.  See dkt. 20-5, Ex. 5 at 6.  Further, the Product listing includes images of the Product next to a hand pouring a scoop of powder into a cup and the Product on a bench next to a group of three individuals.  See id. at 3-4.  These images, thus, provide an additional "indication of the packages' size." Catalina Snacks, Inc., 764 F. Supp. 3d at 916.  Therefore, Plaintiff plausibly alleges she relied on the size and opacity of the Product's packaging, as depicted on Defendant's online storefront, to determine the quantity of protein powder contained inside before purchasing the Product.

Defendant argues Plaintiff fails to allege actual reliance because the Product listing and the physical packaging "accurately disclos[ed] its contents."  Mot. at 16.  However, as discussed above, Defendant's disclosure of the Product's weight, number of servings, and serving size did not provide sufficient "information about the final product output." Stewart, 537 F. Supp. 3d at 1143. Therefore, a consumer may reasonably "rely on the size of the container," rather than "their own ability to imagine the volume" of a given weight and number of scoops of protein powder, "in assessing their purchase" of the Product. Reyes v. Just Born, Inc., 729 F. Supp. 3d 971, 977 (C.D. Cal. 2024).

Defendant also argues Plaintiff cannot plausibly allege reliance as a "serial 'tester' litigant." Mot. at 18 (quoting TAC ¶ 52). However, Plaintiff's status as a consumer "tester" is irrelevant to whether she sufficiently alleges reliance in the TAC. See Conagra Brands, Inc., 773 F. Supp. 3d at 898 ("The fact [Plaintiff] is a 'tester' does not mean as a matter of law that [Plaintiff] did not rely on the alleged misrepresentation in this case."); accord Reyes, 729 F. Supp. 3d at 979-80 (rejecting the argument that a consumer rights tester cannot demonstrate justifiable reliance). Because Plaintiff alleges she relied on the opacity and size of the Product's packaging and would not have purchased the Product had she known the packaging contained nonfunctional slack fill, Plaintiff adequately alleges actual reliance on Defendant's alleged misrepresentations as to the quantity of protein powder inside the packages. See Oh v. Fresh Bellies, Inc., No. CV 24-5417-PSG-JPRx, 2024 WL 4500727, at *8 (C.D. Cal. Oct. 15, 2024) (finding the plaintiff plausibly alleged she "relied on the slack-fill" as misrepresented by "the packaging itself").

Accordingly, the Court finds Plaintiff sufficiently alleges actual reliance.

## C.    PLAINTIFF SUFFICIENTLY ALLEGES INTENT

### 1.    Applicable Law

Under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), allegations of fraud must be stated "with particularity." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

### 2.    Analysis

Here, Plaintiff alleges "Defendant intends for consumers to purchase the Product under the mistaken belief that the package is full so that Defendant . . . can increase profits." TAC ¶ 76. Contrary to Defendant's assertions, "Rule 9(b) does not require 'any particularity in connection with an averment of intent, knowledge or condition of the mind.'" In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994) (en banc) (quoting Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973)), superseded by statute on other grounds, 15 U.S.C. § 78u-4(b)(1), as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Accordingly, the Court finds Plaintiff sufficiently alleges the intent element of her fraud claim.

## D.    PLAINTIFF SUFFICIENT ALLEGES NON-FUNCTIONAL SLACK FILL

### 1.    Applicable Law

Section 12606.2 of the California Business and Professions Code ("Section 12606.2") prohibits "food containers . . . made, formed, or filled as to be misleading." Cal. Bus. & Prof. Code § 12606.2(b). Section 12606.2 provides "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." Id. § 12606.2(c). Section 12606.2 further provides safe harbors for empty space serving any of the following functions:

(1) Protection of the contents of the package.
(2) The requirements of the machines used for enclosing the contents in the package.

(3) Unavoidable product settling during shipping and handling.

(4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.

(6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

Id. § 12606.2(c)(1)-(6).

### 2.    Analysis

Here, Plaintiff sufficiently alleges the slack fill in the Product's packaging is nonfunctional.[3] Defendant argues Plaintiff's allegations regarding the slack fill are conclusory. Mot. at 21-23. This argument is unconvincing. Among other things, Plaintiff alleges (1) "[t]here is no risk of the powder breaking or sustaining damage if there was less empty space in the Product's container," TAC ¶ 25, (2) "the machines used for enclosing the contents of the package have the capacity to add more content to the containers used to enclose the contents of the Product," and "[a]t most, a simple recalibration of the machines would be required," id. ¶¶ 26, 28, (3) "any settling" of the Product "occurs immediately at the point of fill" because of "the Product's density, shape, and composition," id. ¶ 29, (4) the Product's packaging "contains no instructions to consumers that they should mix together the Product's whey protein powder with any Flavor Boost within the Product's pouch container," id. ¶ 31, (5) "[t]he package is intended to be discarded immediately after the Product is consumed" and is not a "durable commemorative package" or "promotional package," id. ¶¶ 35-36, and (6) "Defendant can easily increase the quantity of the Product in each package (or, alternatively, decrease the size of the packages) significantly," id. ¶ 38. Thus, contrary to Defendant's assertions, Plaintiff does not offer mere "legal conclusions and unwarranted inferences." Mot. at 22. Instead, Plaintiff plausibly alleges specific facts demonstrating none of the safe harbor provisions apply. Barrett, 2022 WL 2035959, at *3 (finding similar allegations sufficient); Conagra Brands, Inc., 773 F. Supp. 3d at 898 (same); Reyes, 729 F. Supp. 3d at 978 (same).

---

[3] The Court notes "[d]istrict courts in California are split as to whether the safe harbor provisions are affirmative defenses or 'or whether their inapplicability is an element that must be pled.'" Stewart, 537 F. Supp. 3d at 1154 (quoting Jackson v. Gen. Mills, Inc., No. 18-cv-2634-LAB (BGS), 2020 WL 5106652, at *6 (S.D. Cal. Aug. 28, 2020)); cf. Cody v. Chaucer Foods, Inc., No. CV 25-01497-RGK-KESx, 2025 WL 4036431, at *4 (C.D. Cal. June 3, 2025) (finding the slack-fill safe harbor is an affirmative defense that "Plaintiff does not bear the burden of pleading"). Because the Court finds Plaintiff sufficiently alleges that the safe harbor provision does not apply, the Court need not resolve this split in authority.

Accordingly, the Court finds Plaintiff sufficiently alleges the slack fill contained in the Product's packaging is nonfunctional.

**V.**
**<u>CONCLUSION</u>**

For the reasons set forth above, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED**.